UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-CV-20965

DINA GOLDSTEIN,

     Plaintiff,

vs.

TOWN OF SURFSIDE, FLORIDA,
ENRIQUE DOCE, and
MARK BLUMSTEIN,

     Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiff, Dina Goldstein, sues Defendants, Town of Surfside, Florida, Enrique Doce, and Mark Blumstein, as follows:

### *Nature of the Action*

1.     This is an action for damages pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, the United States Constitution, the Florida Constitution, and the common law of Florida against Defendants for committing acts, under color of state law, with the intent and for the purpose of depriving Mrs. Goldstein of rights afforded by the Constitution and the laws of the United States, and for defaming her through statements, written an oral, that were knowingly false.

### *Parties, Jurisdiction, and Venue*

2.     **Plaintiff, Dina Goldstein**, is over 18 years old and has been a *sui juris* resident of Miami-Dade County, Florida, at all times material.

3.     Mrs. Goldstein worked as an employee of the Town from approximately March 31, 2008, to November 7, 2024, when the Town terminated her employment.

1

4.      During the relevant time, Mrs. Goldstein claim worked as an "Executive Assistant" and then as the "Senior Executive Assistant" for the Town's Chief(s) of Police.

5.      **Defendant, Town of Surfside, Florida ("Town"),** is a *sui juris* political subdivision of the State of Florida and a Florida municipal corporation that was authorized to conduct and actually conducted business in this District.

6.      The Town is a "person" within the meaning of 42 U.S.C. § 1983, and a commission-manager system of local government under which the City Manager has final decision and policy-making authority.

7.      **Defendant, Enrique "Henry" Doce**, was the Town's Chief of Police at all times material to this action, a resident of Miami-Dade County, Florida, *sui juris*, and, from time to time, also served as its Acting Town Manager, and both a decisionmaker and policymaker

8.      The Town hired Doce as its Chief of Police on April 1, 2024. Doce then resigned from his position on December 11, 2024. The Town rehired him as its Chief of Police on January 10, 2025, and demoted him to Deputy Chief of Police on or about May 20, 2025.

9.      **Defendant, Mark Blumstein**, is a resident of Surfside, Miami-Dade County, Florida, and *sui juris.*

10.      Blumstein served as Interim Town Attorney as of March 24, 2024, under Resolution No. 2024-3279. The Town then hired him as Town Attorney under Resolution No. 2024-3328 on September 10, 2024. The Town then hired Blumstein as its Interim Town Manager under Resolution No. 2024-3344 on December 2, 2024, and as its Town Manager under Resolution No. 2025-3379 on February 21, 2025, before his employment with the Town terminated on October 22, 2025, following a "Vote of No Confidence" by FOP Lodge 135 on October 20, 2025. While employed by the Town, Blumstein was a decisionmaker and policymaker.

2

11.     At all times material to this Complaint, the individuals associated with the Town, as more fully described and identified below, were employees and public officials of the Town.

12.     From April to August 2024, Mrs. Goldstein worked under/reported to Doce as her superior in the Town's Police Department.

13.     As a result of the incidents described herein, Mrs. Goldstein experienced severe mental anguish, emotional distress, embarrassment, shame, humiliation, damage to her professional standing, damage to her reputation, and other damages as more fully described below.

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 in that this is an action to redress violations of Plaintiff's federally protected Constitutional rights and pendent jurisdiction over her Florida common law claim(s).

15.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b), as all events giving rise to this cause of action occurred in this judicial district and because the Town is located in Miami-Dade County, Florida.

16.     Any conditions precedent to filing this lawsuit occurred and/or were satisfied by Plaintiff.

17.     Plaintiff retained the undersigned counsel and agreed to pay a reasonable fee for all services rendered.

***Background Facts***

**Dina Goldstein**

18.     Mrs. Goldstein was a stellar employee of the Town and, throughout its leadership changes, a constant within its Police Department.

19.     Every evaluator who rated Mrs. Goldstein considered her an exceptional employee across all aspects of her annual performance reviews while working for the Town.

3

    a.  Mrs. Goldstein was rated "Above Satisfactory" in every category, the highest possible rating, in the (last) employee performance evaluation completed for October 1, 2022, to September 30, 2023.

    b.  Mrs. Goldstein was rated as "Above Satisfactory" in every category of the Employee Performance Evaluation for October 1, 2021, to September 30, 2022.

20.    Mrs. Goldstein was awarded Civilian of the Month twenty-eight (28) times and Civilian of the Year seven (7) times during her employment with the Town.

21.    Mrs. Goldstein received numerous other awards, letters of recognition, commendations from supervisors, and accolades praising her initiative and dedication to the Town, all of which were included in her personnel file maintained by the Town.

22.    Town employees can only be terminated for "cause" after they complete two years of full-time employment.

**The Preliminary, "Other Investigation"**

23.    The Town's Police Department identifies two types of internal investigations of its employees:

    a.  <u>Internal Affairs Investigations</u> – which are investigated by a person appointed by the Chief of Police and usually involve complaints of a serious nature, such as, but not limited to any violations of criminal statutes, including arrests, corruption violations, or questions of moral turpitude; and

    b.  <u>Shift Level Investigations</u> – which are investigated by a supervisor where the employee is assigned and usually complaints of a much less serious nature involving a misunderstanding of procedure, demeanor, or rudeness allegations.

24.    Although its policies and procedures only identify two types of investigations, as stated above, Doce and Blumstein had the Town's Police Department conduct an investigation of Mrs. Goldstein that was not an Internal Affairs Investigation or a Shift Left Investigation, which will be referred to hereafter as an "Other Investigation," for actions allegedly occurring over a year

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884  FAX 305.230.4844
*www.fairlawattorney.com*

before, actions that she had consistently taken based on the direction of her supervisors, and on phantom allegations.

25.     The "Other Investigation" of Mrs. Goldstein was not guided by any policies or procedures, did not identify the complainant, or afford any protections of the sort afforded by the policies and procedures governing Internal Affairs or Shift Level Investigations at the Town's Police Department.

26.     Although Mrs. Goldstein made a request under Chapter 119, Florida Statutes, fo the Town to produce its files for her, including her personnel file and all Internal Affairs files/investigations of her, the Town *did not produce* any documents identifying when the "Other Investigation" was commenced, who initiated it, or any logs in which it was documented, producing only the final report with redactions and selected text messages between Doce and Blumstein regarding the "Other Investigation."

27.     In early July (2 or 3) 2024, Blumstein texted Doce to see how the "investigation" of Mrs. Goldstein was proceeding.

28.     Doce responded by text message to Blumstein later that same day that the "investigation" was "going well" and that he was having the internal affairs office of the Town's Police Department meet with him "for an overview" of the investigation of Mrs. Goldstein.

29.     The Town's Police Department had no provision, police, procedure, or mechanism for the Doce, as the Interim Town Manager and Chief of Police, to meet with the internal affairs investigator other than as a witness, complainant, or to initiate an internal affairs investigation, not to check in on the status of or interfere with an investigation.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

30.     Likewise, there was no mechanism, policy, or procedure in place at the Town's police department that would entitle the Interim Town Manager or Chief of Police to obtain status updates of a pending, incomplete investigation, which is normally confidential until completed.

31.     Doce went on to tell Blumstein that Mrs. Goldstein and several of the Town's police officers were engaged in a "scam" and that Mrs. Goldstein "knew exactly what she was doing" to indicate that she had intentionally engaged in unlawful, criminal conduct.

32.     Meanwhile, Doce received a call from a homeowner who claimed to have seen a Nextdoor post stating that Doce handled dispatch in the middle of the night.

33.     Doce attributed Mrs. Goldstein with disclosing this fact, contending it was sensitive, privileged, and not to be repeated.

34.     Rather than have someone from Internal Affairs or a member of the Town's Police Department interview the homeowner, as would be the proper procedure, Doce had a clandestine meeting with this homeowner.

35.     Doce did not make or keep records of the homeowner he claims to have called about the Nextdoor post, nor about his subsequent in-person meeting with the homeowner (lasting over an hour); he did not record or otherwise document the encounter; and did not personally see any Nextdoor post or reproduction of any Nextdoor post regarding his taking dispatch (or any other digital evidence related to that post).

36.     The "Other Investigation" orchestrated by Doce and Blumstein resulted in the completion of a document entitled "Investigation Report: Unauthorized Compensation and Violations in the Town of Surfside" which lacked a case number, the name of the complainant, the identity of the investigator(s) or employee(s) completing or participating in the investigation or

6

the "Investigation Report," but which contained Findings, Additional Findings, a Conclusion, and a Summary of Findings, and which included a proposed letter to Mrs. Goldstein dated July 9, 2024.

37.     The proposed letter to Mrs. Goldstein, dated July 9, 2024, indicated that its purpose was to inform her that she was being "relieved of [her] duties as Senior Executive Secretary with the Surfside Police Department pending a thorough investigation" into:

> a.  Violation of Comp Time Policy (claiming that as a result of her actions, "the Town of Surfside [is] liable and subject to Civil Fines by the Fair Labor Standards Act (FLSA)";
>
> b.  Trust and Confidentiality Issues (claiming that Mrs. Goldstein "leaked sensitive information compromising the integrity and security of the police department's operations" over "multiple instances");
>
> c.  Lack of Competence in Job Responsibilities; and
>
> d.  Potential Payroll Fraud (claiming "There are serious allegations of potential payroll fraud" and that "This matter is currently under investigation.")

38.     Further, in response to a public records request made to the Town, it did not produce or identify any documents identifying the complainant for the "Other Investigation" orchestrated by Doce and Blumstein, nor a case number assigned to it.

39.     After conducting this "Other Investigation" and obtaining its results in writing (in a document "dina.docx", Doce finally directed that an internal affairs investigation be opened against Mrs. Goldstein.

**<u>The Ramos Report</u>**

40.     Deputy Chief Holbrook then spoke with Oswaldo Ramos, a City of Miami Beach Police Department Sergeant, on August 1, 2024, to request an in-person meeting.

41.     Doce and Deputy Chief Wayne Holbrook met with Ramos later that day to discuss matters involving Mrs. Goldstein and the investigation that was to be conducted.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

42.     On August 4, 2024, Doce informed Mrs. Goldstein that she was being suspended pending an investigation, and that she would be contacted by the State Attorney's Office.

43.     Deput Chief Wayne Holbrook sent Mr. Ramos an email on August 4, 2024, indicating that Mrs. Goldstwin was relieved of her work duties, alleged to have violated the compensatory leave time policy for several of the Town's police officers, leaked sensitive operational information, lacked competence in her job duties, and committed potential payroll fraud, and attached a copy of the "Detailed findings and evidence" in a document entitled "Dina.docx" (the document referred to above as generated from the "Other Investigation").

44.     The Town engaged Oswaldo Ramos from the Miami Beach Police Department to conduct an Internal Affairs investigation of Mrs. Goldstein, SPD Case No. 2024-2092 to conduct an "administrative investigation" of the allegations identified above against Mrs. Goldstein.

45.     Doce signed a document informing Mrs. Goldstein that she was suspended and relieved her of her work duties with pay, placed her on virtual "house arrest" by requiring that she remain at her home from 0900 to 1700 as of August 6, 2024, requiring she obtain authorization from the Captain of Police or his designee and use accrued leave time, and precluding her from earning/receiving holiday pay while relieved of duty with pay.

46.     Before he performed any investigation, Ramos first contacted the Miami-Dade State Attorney's Office to request that it prosecute Mrs. Goldstein on August 26, 2024, presumably based on the results of the "Other Investigation" and his discussions with Doce and Deputy Chief Wayne Holbrook, but it declined to initiate a criminal prosecution of Mrs. Goldstein.

47.     Ramos again contacted the Miami-Dade State Attorney's Office to plead for them to criminally prosecute Mrs. Goldstein on September 5, 2024, but they decided not to prosecute the matter criminally.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

48.     Deputy Chief Wayne Holbrook then sent an email to Ramos on September 12, 2024, requesting that the investigation be expanded to include Mrs. Goldstein's handling of parking permits to the scope of the investigation and directed that, "We ask you clear this matter with the State Attorney's Office to ensure there is no criminal liability involved," copying Doce and Blumstein on the email (as the individuals who requested that Mrs. Goldstein be criminally prosecuted) and indicating their positions as Chief of Police (Doce) and Town Attorney (Blumstein), respectively.

49.     Later that day, September 12, 2024, Ramos followed directions given to him and contacted the Miami-Dade State Attorney's Office to request they prosecute Mrs. Goldstein due to "new information" purportedly received, but it again decided it would not prosecute her.

50.     Ramos's "investigation" involved speaking with Doce and Deputy Chief Wayne Holbrook, reviewing the materials they sent over, and then interviewing Mrs. Goldstein.

51.     Ramos did not take a recorded statement of Doce or Deput Chief Wayne Holbrook as part of his Internal Affairs investigation.

52.     Although the Internal Affairs investigation considered the time submitted by several of the Town's police officers, Ramos did not contact them or the supervisor who approved their time at issue in the investigation for which a claim was made against Mrs. Goldstein.

53.     Ramos made one phone call to (the wrong number for) Mayte Gamiotea, the former Town finance employee who had firsthand knowledge of the issues relating to the police officer time banks, the guardrails that existed and were subsequently removed from the timekeeping system, and the parking permits at issue. Although Ms. Gamiotea left the Town to work for North Bay Village (a neighboring municipality), Ramos did not leave a message, did not make any other

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

attempt to speak with her, such as sending an email to her, calling her again during work hours, or contacting her superiors to request they coordinate for Ms. Gamiotea to call him.

54.     Ramos also made one phone call to a number he believed was for John DiCenso, a former Chief of Police for the Town, but it was not the number given to him for DiCenso (it was a wrong number). Ramos made no further attempt to contact DiCenso before concluding his report.

55.     In the end, Ramos conducted a "sham" of an investigation that did not follow the Town's or the City of Miami Beach's protocol for internal affairs investigations, and the only "witness" from whom he took a recorded statement before completing his report was Mrs. Goldstein.

56.     Besides containing a summary of Mrs. Goldstein's recorded interview, wherein she reasonably explained all actions taken and gave no basis to find the claims against her had merit, the Ramos Report was basically a repackaged summary of the materials provided to him by Doce and Holbrook.

57.     The Ramos Report did not identify any evidence supporting the claims made against Mrs. Goldstein, as it identified: no written policy or procedure that she violated, no personal gain that she obtained in her actions, no verbal directive from a superior that she ignored, no evidence that she was derelict or incompetent in her job duties, and no evidence that she improperly divulged any confidential or sensitive information.

58.     Nonetheless, having gotten what they wanted from Ramos in a Report repackaging their baseless claims to oust Mrs. Goldstein, Doce, Blumstein, and the Town received the Ramos Report and used it as a basis to find "cause" to initiate proceedings to terminate Mrs. Goldstein's employment with the Town.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

59. On November 7, 2024, and Peter Jankowski relied on the Ramos Report generated in connection with SPD Case No. 2024-2092, and, on behalf of the Town used it as the basis to find Mrs. Goldstein "in violation of the Town's Compensatory Leave Policy," that she "divulged sensitive, privileged information to the public that [she] could only have only learned from [her] employment with the Town and role with SPD, and that [she] did so without authorization, and "oversight of the Parking Program referenced in the Report to be at least a neglect of duty, incompetence, the result of poor judgment, and/or a violation of Town Code, its policies and procedures, resulting in a significant financial loss to the Town spanning years."

60. Mrs. Goldstein timely appealed the termination of her employment to the Town's Personnel Appeals Board pursuant to Section 2-151 of the Town's Code of Ordinances.

61. The Town held a Personnel Appeals Board hearing, which commenced on February 28, 2025, and resumed on March 10, 2025.

**The Personnel Appeals Board Hearing**

62. After he initiated and/or participated in the "Other Investigation" involving Mrs. Goldstein as the Town Attorney and then the Internal Affairs Investigation by Ramos as the Town Attorney, Blumstein appeared at the "hearing" before the Personnel Appeals Board as the Town Manager and, in essence, its prosecutor.

63. Blumstein further disparaged Mrs. Goldstein before the Personnel Appeals Board by making baseless claims against her and by asserting unsupported presumptions as facts sufficient to uphold his/the decision to terminate her employment for cause.

64. Doce engaged in similar tactics at the Personnel Appeals Board by continuing to espouse a false narrative about Mrs. Goldstein to support his/the decision to terminate her employment for cause.

11

65.    The evidence at the hearing established that Defendants had engaged in a witch hunt against Mrs. Goldstein, that she did not violate any laws, rules, or regulations, and that no cause existed to terminate her employment.

66.    When the Personnel Appeals Board voted, it determined that the Town lacked cause to terminate Mrs. Goldstein's employment at the portion of the hearing held on February 28, 2025, and asked the parties to reconvene if they were unable to resolve the matter amongst themselves.

67.    The Personnel Appeals Board resumed its hearing on the termination of Mrs. Goldstein's employment on March 10, 2025, at which it upheld the termination of her employment notwithstanding the findings it made on February 28, 2025.

68.    The Town's decision was rendered without due process of law, departed from the essential requirements of the law, and was not supported by competent, substantial evidence.

69.    The Town adopted the findings of the Personnel Appeals Board to uphold the termination of Mrs. Goldstein's employment for cause in Resolution No. 2025-3386 on March 11, 2025, when Blumstein presented to the Town's Commission for a vote as an add-on to its agenda.

70.    The Town adopted Resolution No. 2025-3386, adopting the decision by its Appeals Board on March 10, 2025: 1) finding that the Town had a basis for the adverse employment decision with respect to Goldstein; 2) finding that the Town Manager or his designee acted with cause in terminating Goldstein; and 3) dismissing the Appeal on the merits on March 10, 2025, while failing to mention the decision(s) it reached on February 28, 2025.

## COUNT I – VIOLATION OF 42 U.S.C. §1981
### (Against the Town and Doce)

Plaintiff, Dina Goldstein, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

12

71.     The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), makes it unlawful to discriminate against an employee because of race:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

72.     The Town and Doce discriminated against Mrs. Goldstein by failing to treat her the same as or similarly to its non-Hispanic employees because of her race.

73.     Mrs. Goldstein is White/non-Hispanic, and she was treated differently (worse than) her Hispanic counterparts.

74.     Doce, who worked for the Town as its Chief of Police and Interim Town Manager, is Hispanic and had decision-making and policymaking authority at all times material.

75.     Doce treated Mrs. Goldstein differently (worse) than her non-Hispanic colleagues, including by yelling at her, embarrass her in front of colleagues, and would hold conversations at work in Spanish knowing that Mrs. Goldstein did not speak Spanish.

76.     Mrs. Goldstein complained about the treatment she was receiving at work because of her race to Yamileth Slate-McCloud, Human Resources for the Town, who responded that there was nothing that could be done until a formal complaint was filed against Doce.

77.     Mrs. Goldstein escalated her complaint to Marisol Vargas, Acting Town Manager, who spoke to Doce about the issues raised by Mrs. Goldstein, but did not result in any positive change; in fact, things escalated.

78.     Jose "Jay" Matelis, Julio Torres, and Jose Valino were the police officers who were allowed to "bank" additional time beyond 300 hours, and all of them are Hispanic (although none

13

took any adverse actions against Mrs. Goldstein and are identified herein to establish how they were treated differently than her because of her race).

79.   Mrs. Goldstein received no financial or other benefit from Matelis, Torres, and Valino exceeding 300 hours of banked time, unlike each of them, who, arguably, received the benefit of this additional banked time.

80.   Before April 2024, the Town did not review issues, actions, concerns, and/or inactions involving its employees that occurred more than a year earlier (without being prompted by a complaint from a fellow employee or citizen) as a basis for conducting an investigation into that employee, taking an adverse employment action against an employee, suspending that employee, or terminating that employee.

81.   Because of her race (as a non-Hispanic), Doce sought out ways to take adverse actions against Mrs. Goldstein by one or more of the following:

a.   Requiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform;

b.   Improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility;

c.   Making false claims against Mrs. Goldstein;

d.   Contending actions occurring more than a year before, and resulted in her receipt of a stellar annual review, were problematic; and

e.   Other ways to be uncovered through discovery.

82.   The Town took adverse actions against Mrs. Goldstein on August 6, 2024, when it suspended her, relieved her of her duties, and placed her on "house arrest" pending a final employment determination.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

83.     After Doce initiated the investigation(s) of Mrs. Goldstein, he requested that the Town hire several full-time employees to fill administrative positions within its police department, and all three of his hires were Hispanic.

84.     Although the Town had not terminated Mrs. Goldstein's employment or completed any internal affairs investigation of her, Doce believed it was a foregone conclusion that Mrs. Goldstein would not be returning, due to his active participation, involvement, influence, and decision-making, and wanted to hire others who were Hispanic to permanently replace her.

85.     He hired Michell Sanchez, Maria Teresa Fernandez Alvarez, and Stephanie Kamer, all of whom are Hispanic.

**Michell Sanchez**

86.     Doce knew Michell Sanchez from when they both worked at the City of Miami Beach Police Department.

87.     Michell Sanchez is Hispanic.

88.     The City of Miami Beach Police Department recommended the termination of Michell Sanchez's employment after an internal affairs investigation sustained findings that she committed rule and ethics violations involving $911.25 she took from its evidence room, for which she was responsible.

89.     Doce knew about the allegations against Michell Sanchez and was on the 3-person panel that recommended terminating her employment with the City of Miami Beach.

90.     Doce urged Michell Sanchez to apply for employment with the Town, which resulted in her submitting an application for employment to the Town on August 11, 2024, shortly after Mrs. Goldstein was suspended with pay, indicating that she left her employment with the City of Miami Beach due to "Resignition [sp]" and indicated that she was asked to resign because the

15

"Investigation that was not validated." She further denied ("No") that she was a witness, suspect, or subject of a police investigation.

91.     Although her checkered employment history should have disqualified Michell Sanchez from employment with the Town, Doce recommended that the Town hire her, and he then signed a letter extending a written offer of employment to her on August 16, 2024, which she countersigned to accept on August 19, 2024.

92.     Doce interviewed Michell Sanchez and, thereafter, conducted an in-person interview with her, such that the Town has (and/or produced) no notes reflecting the interview; the result of the interview was Doce's recommendation that Michell Sanchez be hired.

93.     When hiring a civilian employee to work for its Police Department, the Town's standard operating procedure is to review the candidate's personnel file from their prior employers, including when the employer was a municipality, and to run their fingerprints through a criminal records database before extending an offer of employment.

94.     The Town did not follow its standard operating procedure by reviewing Michell Sanchez's employment file from the City of Miami Beach, by conducting the customary background check, running her fingerprints before extending her an offer of employment, or otherwise, because she is Hispanic, and based on Doce's recommendation and approval of her hiring.

95.     In fact, no one from the Town's Police Department reviewed Michell Sanchez's personnel file from the City of Miami Beach or ran her fingerprints before extending the offer of employment to her.

**Stephanie Michelle Kamer**

96.     Stephanie Michelle Kamer is Hispanic and

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

97.     Stephanie Michelle Kamer applied for an Administrative Aide position with the Town's Police Department on August 20, 2024.

98.     The Town quickly its a background investigation for Stephanie Michelle Kamer on October 8, 2024.

99.     The Town offered Stephanie Michelle Kamer an Administrative Aide position for its Police Department on November 6, 2024, the day it terminated Mrs. Goldstein's employment, pursuant to a written offer letter

100.    Stephanie Michelle Kamer accepted the offer of employment on November 7, 2024, and the Town hired her to perform job duties previously performed by Mrs. Goldstein that day.

**Maria Teresa Fernandez Alvarez**

101.    Maria Teresa Fernandez Alvarez, who is also Hispanic, submitted an Application for Employment with the Town on October 2, 2024, while Mrs. Goldstein was suspended.

102.    The Town quickly completed its a background investigation for Maria Teresa Fernandez Alvarez on October 8, 2024.

103.    The Town offered Maria Teresa Fernandez Alvarez an Administrative Aide position for its Police Department on November 6, 2024, the day it terminated Mrs. Goldstein's employment, pursuant to a written offer letter.

104.    Maria Teresa Fernandez Alvarez accepted the offer of employment on November 7, 2024, and the Town hired her to perform job duties previously performed by Mrs. Goldstein that day.

**Stephanie Michelle Kamer**

105.    The Town replaced Mrs. Goldstein with three Hispanic women.

17

106. In addition, the investigations into Mrs. Goldstein, the statements, decisions, and actions made and taken by Doce; the subsequent suspension and termination of Mrs. Goldstein's employment; the disparaging, demeaning, and untrue statements made about her and placed into her personnel and internal affairs file; and the differential treatment that Mrs. Goldstein receive from Doce and the Town because of her race constitute one or more adverse employment actions within the meaning of Section 1981, for which Section 1981 provides legal recourse against the Town and Doce.

107. These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

108. Defendants' actions were malicious and demonstrated a reckless indifference to the rights of Mrs. Goldstein and constituted an ultimate employment decision.

109. The aforementioned acts of commission and omission by Defendants were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

110. Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, emotional distress, mental anguish, loss of dignity, and other intangible injuries.

111. Pursuant to 42 U.S.C. § 1981, Mrs. Goldstein is entitled to recover her attorney's fees and costs from Defendants, in addition to all consequential damages suffered.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendants, Town of Surfside, Florida and Enrique Doce, after a trial by jury, declaring that the they violated 42 U.S.C. § 1981, awarding her compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish and emotional distress, loss of dignity, other intangible injuries, granting her a permanent injunction against these

18

Defendants from engaging in discriminatory employment practices on the basis of race, promoting her to the position to which she should be holding if she were not discriminated against, and awarding her taxable costs and attorney's fees.

## COUNT II – RETALIATION IN VIOLATION OF 42 U.S.C. §1981
### (Against the Town and Doce)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 70 as though set forth fully herein and further alleges as follows:

112. The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), makes it unlawful to retaliate against an employee who complains about being discriminated against because of her race.

113. The Town and Doce discriminated against Mrs. Goldstein by failing to treat her the same as or similarly to its non-Hispanic employees because of her race.

114. Mrs. Goldstein is White/non-Hispanic, and she was treated differently (worse than) her Hispanic counterparts.

115. Doce, who worked for the Town as its Chief of Police and Interim Town Manager, is Hispanic, and had decision-making and policymaking authority at all times material.

116. Doce treated Mrs. Goldstein differently (worse) than her non-Hispanic colleagues, including yelling at her, embarrassing her in front of colleagues, and holding conversations at work in Spanish, knowing that Mrs. Goldstein did not speak Spanish.

117. Mrs. Goldstein complained to Yamileth Slate-McCloud, Human Resources for the Town, about the treatment she was receiving at work because of her race, who responded that nothing could be done until a formal complaint was filed against Doce.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

118.     Mrs. Goldstein escalated her complaint to Marisol Vargas, Acting Town Manager, who spoke to Doce about the issues raised by Mrs. Goldstein, but this did not result in any positive change; in fact, things escalated.

119.     The adverse employment actions Doce and the Town took against Mrs. Goldstein began shortly after she complained about being discriminated against because of her race.

120.     After and as a direct and proximate result of her complaints to the Town about Doce, Mrs. Goldstein was subjected to additional adverse actions that included:

   a.   Requiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform;

   b.   Improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility;

   c.   Making false claims against Mrs. Goldstein;

   d.   Contending actions occurring more than a year before, and resulted in her receipt of a stellar annual review, were problematic; and

   e.   Other ways to be uncovered through discovery.

121.     Doce and the Town took additional adverse actions against Mrs. Goldstein on August 6, 2024, when it suspended her, relieved her of her duties, and placed her on "house arrest" pending a final employment determination, and threatened her that the State Attorney's Office would be contacting her.

122.     Thereafter, Doce and the Town engaged in additional retaliatory actions, as identified and described above, which ultimately resulted in the (improper) termination of Mrs. Goldstein's employment for cause.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

123.     Town employees terminated for cause after two years of continuous employment can appeal their termination to the Town's Personnel Appeals Board according to Chapter 6.D of the Handbook

124.     Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01, which resulted in an Opinion finding as follows:

a. The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

b. The Town did not afford Mrs. Goldstein due process.

c. Any due process was, "at best, illusory."

d. The Town violated Mrs. Goldstein's due process rights.

e. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

f. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

125.     The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025, which was tantamount to a finding that the adverse actions taken against Mrs. Goldstein were improper, unfounded, and should not have occurred.

126.     These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

127.     Defendants' actions were malicious and demonstrated a reckless indifference to the rights of Mrs. Goldstein and constituted an ultimate employment decision.

128.     The aforementioned acts of commission and omission by Defendants were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

21

129.     Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, emotional distress, mental anguish, loss of dignity, and other intangible injuries.

130.     Pursuant to 42 U.S.C. § 1981, Mrs. Goldstein is entitled to recover her attorney's fees and costs from Defendants in addition to all consequential damages suffered.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendants, Town of Surfside, Florida and Enrique Doce, after a trial by jury, declaring that the they violated 42 U.S.C. § 1981 by retaliating against her, awarding her compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish and emotional distress, loss of dignity, other intangible injuries, granting her a permanent injunction against these Defendants from engaging retaliatory practices against those who complain about race discrimination, promoting her to the position to which she should be holding if she were not discriminated against, and awarding her taxable costs and attorney's fees.

## COUNT III – VIOLATION OF TITLE VII
### (Against the Town)

Plaintiff, Dina Goldstein, reincorporates and re-alleges all paragraphs 1 through 70 as though set forth fully herein and further alleges as follows:

131.     Title VII of the Civil Rights Act provides as follows:

**(a)Employer practices**

It shall be an unlawful employment practice for an employer—

> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> **(2)** to limit, segregate, or classify his employees or applicants for employment in

22

any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S. Code § 2000e–2.

132.   The Town was at all times material Mrs. Goldstein's "employer", as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(1).

133.   Mrs. Goldstein was at all times material an "employee" of the Town, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

134.   The Town discriminated against Mrs. Goldstein by failing to treat her the same or similarly to its Hispanic employees as a result of her race.

135.   Mrs. Goldstein is White/non-Hispanic, and she was treated differently (worse than) her Hispanic counterparts.

136.   Doce, who worked for the Town as its Chief of Police and Interim Town Manager, is Hispanic, and he had decision-making authority at all times material.

137.   Doce treated Mrs. Goldstein differently (worse) than her non-Hispanic colleagues, including yelling at her, embarrassing her in front of colleagues, and holding conversations at work in Spanish, knowing that Mrs. Goldstein did not speak Spanish.

138.   Mrs. Goldstein complained about the treatment she was receiving at work because of her race to Yamileth Slate-McCloud, Human Resources for the Town, who responded that there was nothing that could be done until a formal complaint was filed against Doce.

139.   Mrs. Goldstein escalated her complaint to Marisol Vargas, Acting Town Manager, who spoke to Doce about the issues raised by Mrs. Goldstein, but this did not result in any positive change; in fact, things escalated.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

140.     Jose "Jay" Matelis, Julio Torres, and Jose Valino were the police officers who were allowed to "bank" additional time beyond 300 hours, and all of them are Hispanic (although none took any adverse actions against Mrs. Goldstein and are identified herein to establish how they were treated differently than her because of her race).

141.     Mrs. Goldstein received no financial or other benefit from Matelis, Torres, and Valino exceeding 300 hours of banked time, unlike each of them, who, arguably, received the benefit of this additional banked time.

142.     Before April 2024, the Town did not review issues, actions, concerns, and/or inactions involving its employees that occurred more than a year earlier (without being prompted by a complaint from a fellow employee or citizen) as a basis for conducting an investigation into that employee, taking an adverse employment action against an employee, suspending that employee, or terminating that employee.

143.     Because of her race (as a non-Hispanic), The Town (through Doce) sought out ways to take adverse actions against Mrs. Goldstein by one or more of the following:

a.   Requiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform;

b.   Improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility;

c.   Making false claims against Mrs. Goldstein;

d.   Contending actions occurring more than a year before, and resulted in her receipt of a stellar annual review, were problematic; and

e.   Other ways to be uncovered through discovery.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

144. The Town took adverse actions against Mrs. Goldstein on August 6, 2024, when it suspended her, relieved her of her duties, and placed her on "house arrest" pending a final employment determination.

145. After Doce initiated the investigation(s) of Mrs. Goldstein for the Town, he requested that the Town hire several full-time employees to fill administrative positions within its police department, and all three of his hires were Hispanic.

146. Although the Town had not terminated Mrs. Goldstein's employment or completed any internal affairs investigation of her, Doce believed it was a foregone conclusion that Mrs. Goldstein would not be returning, due to his active participation, involvement, influence, and decision-making, and wanted to hire others who were Hispanic to permanently replace her.

147. Doce had the Town hire Michell Sanchez, Maria Teresa Fernandez Alvarez, and Stephanie Kamer, all of whom are Hispanic.

**Michell Sanchez**

148. Doce knew Michell Sanchez from when they both worked at the City of Miami Beach Police Department.

149. Michell Sanchez is Hispanic.

150. The City of Miami Beach Police Department recommended the termination of Michell Sanchez's employment after an internal affairs investigation sustained findings that she committed rule and ethics violations involving $911.25 she took from its evidence room, for which she was responsible.

151. Doce knew about the allegations against Michell Sanchez and was on the 3-person panel that recommended terminating her employment with the City of Miami Beach.

152.    Doce urged Michell Sanchez to apply for employment with the Town, which resulted in her submitting an application for employment to the Town on August 11, 2024, shortly after Mrs. Goldstein was suspended with pay, indicating that she left her employment with the City of Miami Beach due to "Resignition [sp]" and indicated that she was asked to resign because the "Investigation that was not validated." She further denied ("No") that she was a witness, suspect, or subject of a police investigation.

153.    Although her checkered employment history should have disqualified Michell Sanchez from employment with the Town, Doce recommended that the Town hire her, and he then signed a letter extending a written offer of employment to her on August 16, 2024, which she countersigned to accept on August 19, 2024.

154.    Doce interviewed Michell Sanchez and, thereafter, conducted an in-person interview with her, such that the Town has (and/or produced) no notes reflecting the interview; the result of the interview was Doce's recommendation that Michell Sanchez be hired.

155.    When hiring a civilian employee to work for its Police Department, the Town's standard operating procedure is to review the candidate's personnel file from their prior employers, including when the employer was a municipality, and to run their fingerprints through a criminal records database before extending an offer of employment.

156.    The Town did not follow its standard operating procedure by reviewing Michell Sanchez's employment file from the City of Miami Beach, by conducting the customary background check, running her fingerprints before extending her an offer of employment, or otherwise, because she is Hispanic, and based on Doce's recommendation and approval of her hiring.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

157.    In fact, no one from the Town's Police Department reviewed Michell Sanchez's personnel file from the City of Miami Beach or ran her fingerprints before extending the offer of employment to her.

**Stephanie Michelle Kamer**

158.    Stephanie Michelle Kamer is Hispanic and

159.    Stephanie Michelle Kamer applied for an Administrative Aide position with the Town's Police Department on August 20, 2024.

160.    The Town quickly its a background investigation for Stephanie Michelle Kamer on October 8, 2024.

161.    The Town offered Stephanie Michelle Kamer an Administrative Aide position for its Police Department on November 6, 2024, the day it terminated Mrs. Goldstein's employment, pursuant to a written offer letter

162.    Stephanie Michelle Kamer accepted the offer of employment on November 7, 2024, and the Town hired her to perform job duties previously performed by Mrs. Goldstein that day.

**Maria Teresa Fernandez Alvarez**

163.    Maria Teresa Fernandez Alvarez, who is also Hispanic, submitted an Application for Employment with the Town on October 2, 2024, while Mrs. Goldstein was suspended.

164.    The Town quickly completed its a background investigation for Maria Teresa Fernandez Alvarez on October 8, 2024.

165.    The Town offered Maria Teresa Fernandez Alvarez an Administrative Aide position for its Police Department on November 6, 2024, the day it terminated Mrs. Goldstein's employment, pursuant to a written offer letter.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884  FAX 305.230.4844
www.fairlawattorney.com

166.     Maria Teresa Fernandez Alvarez accepted the offer of employment on November 7, 2024, and the Town hired her to perform job duties previously performed by Mrs. Goldstein that day.

**Stephanie Michelle Kamer**

167.     The Town replaced Mrs. Goldstein with three Hispanic women.

168.     In addition, the investigations into Mrs. Goldstein, the statements, decisions, and actions made and taken by Doce; the subsequent suspension and termination of Mrs. Goldstein's employment; the disparaging, demeaning, and untrue statements made about her and placed into her personnel and internal affairs file; and the differential treatment that Mrs. Goldstein receive from Doce and the Town because of her race constitute one or more adverse employment actions within the meaning of Section 1981, for which Section 1981 provides legal recourse against the Town and Doce.

169.     These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

170.     Defendants' actions were malicious and demonstrated a reckless indifference to the rights of Mrs. Goldstein.

171.     The aforementioned acts of commission and omission by Defendants were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

172.     Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, emotional distress, mental anguish, loss of dignity, and other intangible injuries.

173.     Pursuant to Title VII of the Civil Rights Act, Mrs. Goldstein is entitled to recover her attorney's fees and costs from Defendants, in addition to all consequential damages suffered.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after a trial by jury, declaring that the it violated Title VII of the Civil Rights Act, awarding her compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish and emotional distress, loss of dignity, other intangible injuries, granting her a permanent injunction against the Town from engaging in discriminatory employment practices on the basis of race, promoting her to the position to which she should be holding if she were not discriminated against, and awarding her taxable costs and attorney's fees.

## COUNT IV – RETALIATION IN VIOLATION OF TITLE VII
### (Against the Town)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 70 as though set forth fully herein and further alleges as follows:

174.    Title VII of the Civil Rights Act makes it unlawful to retaliate against an employee who complains about being discriminated against because of her race.

175.    The Town was at all times material Mrs. Goldstein's "employer", as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(1).

176.    Mrs. Goldstein was at all times material an "employee" of the Town, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

177.    The Town and Doce discriminated against Mrs. Goldstein by failing to treat her the same as or similarly to its non-Hispanic employees because of her race.

178.    Mrs. Goldstein is White/non-Hispanic, and she was treated differently (worse than) her Hispanic counterparts.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

179.     Doce, who worked for the Town as its Chief of Police and Interim Town Manager, is Hispanic, and he had decision-making authority at all times material.

180.     Doce treated Mrs. Goldstein differently (worse) than her non-Hispanic colleagues, including by yelling at her, embarrass her in front of colleagues, and would hold conversations at work in Spanish, knowing that Mrs. Goldstein did not speak Spanish.

181.     Mrs. Goldstein complained to Yamileth Slate-McCloud, Human Resources for the Town, about the treatment she was receiving at work because of her race, who responded that nothing could be done until a formal complaint was filed against Doce.

182.     Mrs. Goldstein escalated her complaint to Marisol Vargas, Acting Town Manager, who spoke to Doce about the issues raised by Mrs. Goldstein, but this did not result in any positive change; in fact, things escalated.

183.     The adverse employment actions Doce and the Town took against Mrs. Goldstein began shortly after she complained about being discriminated against because of her race.

184.     After and as a direct and proximate result of her complaints to the Town about Doce, Mrs. Goldstein was subjected to additional adverse, retaliatory actions that included:

   a.  Requiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform;

   b.  Improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility;

   c.  Making false claims against Mrs. Goldstein;

   d.  Contending actions occurring more than a year before, and resulted in her receipt of a stellar annual review, were problematic; and

   e.  Other ways to be uncovered through discovery.

30

185.    The Town took additional adverse actions against Mrs. Goldstein on August 6, 2024, when it suspended her, relieved her of her duties, and placed her on "house arrest" pending a final employment determination, and threatened her that the State Attorney's Office would be contacting her.

186.    Thereafter, the Town engaged in additional retaliatory actions, as identified and described above, which ultimately resulted in the (improper) termination of Mrs. Goldstein's employment for cause.

187.    Town employees terminated for cause after two years of continuous employment can appeal their termination to the Town's Personnel Appeals Board according to Chapter 6.D of the Handbook

188.    Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01, which resulted in an Opinion finding as follows:

a.  The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

b.  The Town did not afford Mrs. Goldstein due process.

c.  Any due process was, "at best, illusory."

d.  The Town violated Mrs. Goldstein's due process rights.

e.  The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

f.  "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

189.    The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025, which was tantamount to a finding that the adverse actions taken against Mrs. Goldstein were improper, unfounded, and should not have occurred.

190.    These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

191.    Defendants' actions were malicious and demonstrated a reckless indifference to the rights of Mrs. Goldstein and constituted an ultimate employment decision.

192.    The aforementioned acts of commission and omission by Defendants were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

193.    Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, emotional distress, mental anguish, loss of dignity, and other intangible injuries.

194.    Pursuant to Title VII of the Civil Rights Act, Mrs. Goldstein is entitled to recover her attorney's fees and costs from Defendants in addition to all consequential damages suffered.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after a trial by jury, declaring that the it violated Title VII of the Civil Rights Act by retaliating against her, awarding her compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish and emotional distress, loss of dignity, other intangible injuries, granting her a permanent injunction against the Town from engaging in retaliatory practices against those who complain about race discrimination, promoting her to the position to which she should be holding if she were not discriminated against, and awarding her taxable costs and attorney's fees.

## COUNT V – VIOLATION OF 42 U.S.C. §1983

32

**(Due Process Property Interest Claim Against the Town, Doce, and Blumstein)**

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 70 as though set forth fully herein and further alleges as follows:

195.    Mrs. Goldstein had a property interest in her continued employment with the Town as guaranteed by the United States Constitution and Chapter 6, Section B.2 of the Town's Handbook.

196.    Town employees terminated for cause after two years of continuous employment can appeal their termination to the Town's Personnel Appeals Board according to Chapter 6.D of the Handbook

197.    Chapter 6.E. of the Town's Handbook addresses the purpose and procedure for its Appeals Board, as follows:

> 12. The decision of the Board must be based on whether the Town's discharge or reduction in pay or rank of the employee was for cause. In order for the Board to find the Town Manager or his/her designee acted without cause, the Board must find there *was no basis* for the adverse employment action. The Board shall then take one or more of the following actions: order a new hearing; dismiss the appeal on the merits; order reinstatement of the employee, absolutely or on terms or conditions; or require such other action as may be just.

> 13. The decision of the Board, if concurred by four members, shall be binding on the Town and the employee shall be recorded by resolution.

198.    The Town was required to afford Mrs. Goldstein her due process rights, as guaranteed by the 5th and 14th Amendments to the United States Constitution.

199.    The Town, Doce, and Blumstein violated Mrs. Goldstein's due process rights by taking adverse actions against her, as identified above, and also by the following actions:

> a.    Initiating an "Other Investigation" against her and including it in her personnel and/or other file(s) as maintained by the Town;

> b.    Placing her on leave with pay on August 6, 2024;

33

    c.  Terminating her employment on November 7, 2024;

    d.  Failing to conduct a Personnel Appeals Board hearing that afforded her due process under the standards, policies, and procedures established by the Town;

    e.  Upholding the decision to terminate Mrs. Goldstein's employment for cause notwithstanding the determination(s) by the Personnel Appeals Board that no cause existed to terminate her employment;

    f.  Confiscating the sick leave she accrued but did not use as of November 7, 2024;

    g.  Other manners to be learned through discovery.

200.    Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01, which resulted in an Opinion finding as follows:

    a.  The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

    b.  The Town did not afford Mrs. Goldstein due process.

    c.  Any due process was, "at best, illusory."

    d.  The Town violated Mrs. Goldstein's due process rights.

    e.  The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

    f.  "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

201.    The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

202.    Since then, the Town has not notified Mrs. Goldstein about any resumed Personnel Appeals Board hearing, has not resumed any Personnel Appeals Board hearing, has not reinstated

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

her employment, or taken any actions favorable to Mrs. Goldstein with regard to the matters addressed herein.

203.    Moreover, Town purports to give its Personnel Appeals Board the ability to make decision that are arbitrary and capricious in Rule 11 of the Section 2-152 of the Town's Code of Ordinances by allowing it to "order reinstatement of the employee, absolutely or on terms or conditions; or require such action as may be just" without requiring any objectivity, connection to the evidence at the hearings, or guiding standards.

204.    The Town lacks a procedure by which its Personnel Appeals Board addresses a situation after an appeals court quashes or reverses its decision, and any remedy attendant to reinstatement without any bounds would only subject Mrs. Goldstein to an illusory remedy that will, as before, deprive her of her due process rights as inadequate.

205.    The Town has, accordingly, deprived Mrs. Goldstein of her property interest in her continued employment without affording her the due process of law required by the United States Constitution.

206.    As a direct and proximate result of the Town's actions, as aforesaid, Mrs. Goldstein suffered damages in the form of being subjected to "house confinement," the loss of her wages, benefits, reputation, identity, and other damages.

207.    Plaintiff is entitled to recover from the Defendant all overtime wages but not timely paid, plus an equal amount as liquidated damages, plus all attorney's fees and costs.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after trial by jury, declaring and determining that it violated her due process rights, reinstating her, awarding her damages, including for damages to her reputation, lost past and future wages and employment-related benefits, mental anguish and

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

emotional distress damages, to have all offending information removed from her personnel and internal affairs files, a hearing to have her name and file(s) cleared, corrected, and addressed, awarding her attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT VI – VIOLATION OF 42 U.S.C. §1983
### (Liberty Interest Claim Against All Defendants)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 70 as though set forth fully herein and further alleges as follows:

208.    The Fourteenth Amendment prohibits the Town from depriving a person like Mrs. Goldstein of liberty or property without due process of law.

209.    The concept of liberty recognizes two particular interests of a public employee: (a) the protection of her good name, reputation, honor, and integrity, and (b) her freedom to take advantage of other employment opportunities.

210.    In connection with the adverse actions taken against Mrs. Goldstein and her employment with the Town, the Town made and disseminated false statements of fact as set forth above.

211.    The purposes of including the stigmatizing statements identified and described above in Mrs. Goldstein's personnel file and in an internal affairs file included making it difficult for Mrs. Goldstein to obtain comparable employment (with comparable wages and benefits) to the employment she held with the Town, to impugn her integrity, to embarrass and humiliate her, and to publicly denigrate her without justification and with no connection to Doce's or Blumstein's official duties or of those others employed by the Town.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

212.    Although Mrs. Goldstein was given the opportunity to engage in a hearing with the Town's Personnel Appeals Board, that hearing was an illusory, sham proceeding that did not give Mrs. Goldstein a meaningful opportunity to address each of the disparaging remarks that made their way into her personnel and/or internal affairs files prior to the hearing.

213.    Thereafter, the Town gave Mrs. Goldstein no opportunity to clear her name with regard to the Town's Resolution No. 2025-3386, passed and adopted on March 11, 2025, which adopted the findings of the Personnel Appeals Board "1) finding the Town had a basis for the adverse employment decision with respect to [her]; 2) finding that the Town Manage or his designee acted with cause in terminating [her]; and 3) dismissing the Appeal on the merits."

214.    Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01.

215.    Meanwhile, Blumstein received notice on October 20, 2025, that FOP Lodge 135 issued a unanimous "Vote of No Confidence" in him as the Town's Manager.

216.    During a meeting of the Town's Commission on October 22, 2025, Blumstein made false, derogatory statements about Mrs. Goldstein as the Town's Manager, knowing that she had not engaged in any improprieties, knowing that the Personnel Appeals Board had determined that she had not engaged in any improprieties that would support a finding that she be terminated for cause, and knowing that the Circuit Court for Miami-Dade County had made the findings regarding Mrs. Goldstein (and the Personnel Appeals Board) as set forth above.

   a.   Blumstein created a false narrative that Officer Tammy Campbell of the Town's Police Department was behind the "Vote of No Confidence" for her own purposes, which included assisting her friend, Mrs. Goldstein, regain employment with the Town (but without specifying how that would be

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

accomplished), and to gain leverage in renegotiating the FOP's agreement with the Town.

b.  Blumstein went on to contend that Mrs. Goldstein has "done everything in her power to get her job back" after being terminated, including by mischaracterizing Mrs. Goldstein's negotiations with the Town following the (improper and since reversed) termination of her employment as "appealing" to him, when he succeeded the prior town manager who terminated her.

c.  Blumstein went on to contend that Officer Campbell wanted Blumstein fired because she hoped that his predecessor would "overrule his predecessor's decision, his decision, and the Personnel Appeals Board's decision terminating her friend's employment with the Town for cause."

d.  Blumstein then stated that Officer Campbell's true motivation for the FOP's no-confidence vote is to eliminate him as an obstacle to contract renegotiations and to find a political way to rehire Mrs. Goldstein into her prior position so that Mrs. Goldstein could "continue to overpay" the Towns' police officers and "provide favorable treatment at her discretion," insinuating that Mrs. Goldstein did not properly or legally perform her duties.

e.  The foregoing statements by Blumstein were <u>not</u> made in the course of his duties as Town Manager, or in the exercise of an official duty of his, but were made outside his duties and personally as part of a desperate plea to retain his position/employment.

217.  The Circuit Court for Miami-Dade County determined that the hearing Mrs. Goldstein received from the Town's Appeals Board was a sham proceeding, did not afford Mrs. Goldstein due process of law, and issued a scathing decision of the Town's treatment of Mrs. Goldstein in Case No. 2025-000035-AP-01.

218.  On December 12, 2025, the Circuit Court for Miami-Dade County issued its Opinion in Case No. 2025-000035-AP-01, in which it found as follows:

a.  The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

b.  The Town did not afford Mrs. Goldstein due process.

c.  Any due process was, "at best, illusory."

38

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884  FAX 305.230.4844
www.fairlawattorney.com

    d.   The Town violated Mrs. Goldstein's due process rights.

    e.   The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

    f.   "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

219.    The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

220.    Since December 29, 2025, Mrs. Goldstein has not received any notice about a resumed Personnel Appeals Board hearing, no Personnel Appeals Board hearing has occurred, she has not been reinstated to her employment with the Town, and no actions favorable to Mrs. Goldstein have been taken to address, remedy, or rectify the matters addressed herein.

221.    Nowhere in Section 2-152 of the Town's Code of Ordinances or elsewhere does the Town provide any mechanism or basis to restore an employee's good name and reputation, nor does it require that an employee's good name and reputation be restored upon a determination that her termination "for cause" was erroneous and that she be reinstated.

222.    The Town lacks a procedure by which its Personnel Appeals Board addresses a situation after an appeals court quashes or reverses its decision, and any remedy attendant to reinstatement without any bounds, and without a mechanism to address the stigmatizing information regarding Mrs. Goldstein would only afford an illusory remedy that would, as before, deprive her of her due process rights as inadequate.

223.    The Circuit Court for Miami-Dade County next determined that the hearing Mrs. Goldstein received from the Town's Appeals Board was a sham proceeding, did not afford Mrs. Goldstein due process of law, and issued a scathing decision of the Town's treatment of Mrs. Goldstein in Case No. 2025-000035-AP-01.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

224.     On December 12, 2025, the Circuit Court for Miami-Dade County issued its Opinion in Case No. 2025-000035-AP-01, in which it found as follows:

  a. The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

  b. The Town did not afford Mrs. Goldstein due process.

  c. Any due process was, "at best, illusory."

  d. The Town violated Mrs. Goldstein's due process rights.

  e. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

  f. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

225.     The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

226.     Since December 29, 2025, Mrs. Goldstein has not received any notice about a resumed Personnel Appeals Board hearing, no Personnel Appeals Board hearing has occurred, she has not been reinstated to her employment with the Town, and no actions favorable to Mrs. Goldstein have been taken to address, remedy, or rectify the matters addressed herein nor to restore her good name and reputation.

227.     Nowhere in Section 2-152 of the Town's Code of Ordinances or elsewhere does the Town provide any mechanism or basis to restore an employee's good name and reputation, nor does it require that an employee's good name and reputation be restored upon a determination that her termination "for cause" was erroneous and that she be reinstated.

228.     Mrs. Goldstein was not afforded an opportunity to initiate any grievance or other hearing procedure to address the stigmatizing information about her from the "Other

40

Investigation," the Internal Affairs Investigation, the letter pursuant to which she was placed on house confinement, the termination letter, during the Personnel Appeals Board Hearing, as contained in Resolution No. 2025-3386, or as announced during the Commission Meeting held on October 22, 2025.

229.    The false statements of fact identified above have cast a disparaging cloud over Mrs. Goldstein's reputation for honesty and competency.

230.    As a direct and proximate result of the violation(s) of Mrs. Goldstein's due process rights, including the deprivation of her liberty interests, she has sustained damages.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendants, Town of Surfside, Florida, Enrique Doce, and Mark Blumstein, after trial by jury, declaring and determining that they violated her due process rights, awarding her damages, including for damages to her reputation, lost past and future wages and employment-related benefits, mental anguish and emotional distress damages, to have all offending information removed from her personnel and internal affairs files, a hearing to have her name and file(s) cleared, corrected, and addressed, awarding her attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT VII – DEFAMATION
### (Against the Town and Blumstein)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 70 as though set forth fully herein and further alleges as follows:

231.    Defendants at all times knew that information placed into Town employees' files, including employee files and investigatory files, is public record available upon a request made pursuant to Chapter 119, Florida Statutes, with certain exceptions.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

232.    Defendants knew that there was no basis to state that Mrs. Goldstein violated the Town's Compensatory Leave Policy, leaked sensitive/privileged information, engaged in "Potential Fraud" pertaining to the Town's Business Parking Program, and/or was "Incompetent" in her job performance, yet included this information in an internal affairs file that was created for her as SPD Case No.: 2024-2092.

233.    Defendants published derogatory and defamatory information about Mrs. Goldstein to third parties, as identified above.

234.    Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01.

235.    Meanwhile, Blumstein received notice on October 20, 2025, that FOP Lodge 135 issued a unanimous "Vote of No Confidence" in him as the Town's Manager.

236.    During a meeting of the Town's Commission on October 22, 2025, Blumstein made false, derogatory statements about Mrs. Goldstein as the Town's Manager, knowing that she had not engaged in any improprieties, knowing that the Personnel Appeals Board had determined that she had not engaged in any improprieties that would support a finding that she be terminated for cause, and knowing that the Circuit Court for Miami-Dade County had made the findings regarding Mrs. Goldstein (and the Personnel Appeals Board) as set forth above.

   a.  Blumstein created a false narrative that Officer Tammy Campbell of the Town's Police Department was behind the "Vote of No Confidence" for her own purposes, which included assisting her friend, Mrs. Goldstein, regain employment with the Town (but without specifying how that would be accomplished), and to gain leverage in renegotiating the FOP's agreement with the Town.

   b.  Blumstein went on to contend that Mrs. Goldstein has "done everything in her power to get her job back" after being terminated, including by

42

mischaracterizing Mrs. Goldstein's negotiations with the Town following the (improper and since reversed) termination of her employment as "appealing" to him, when he succeeded the prior town manager who terminated her.

c. Blumstein went on to contend that Officer Campbell wanted Blumstein fired because she hoped that his predecessor would "overrule his predecessor's decision, his decision, and the Personnel Appeals Board's decision terminating her friend's employment with the Town for cause."

d. Blumstein then stated that Officer Campbell's true motivation for the FOP's no-confidence vote is to eliminate him as an obstacle to contract renegotiations and to find a political way to rehire Mrs. Goldstein into her prior position so that Mrs. Goldstein could "continue to overpay" the Towns' police officers and "provide favorable treatment at her discretion," insinuating that Mrs. Goldstein did not properly or legally perform her duties.

e. The foregoing statements by Blumstein were <u>not</u> made in the course of his duties as Town Manager, or in the exercise of an official duty of his, but were made outside his duties and personally as part of a desperate plea to retain his position/employment.

237.    The Circuit Court for Miami-Dade County next determined that the hearing Mrs. Goldstein received from the Town's Appeals Board was a sham proceeding, did not afford Mrs. Goldstein due process of law, and issued a scathing decision of the Town's treatment of Mrs. Goldstein in Case No. 2025-000035-AP-01.

238.    On December 12, 2025, the Circuit Court for Miami-Dade County issued its Opinion in Case No. 2025-000035-AP-01, in which it found as follows:

a. The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

b. The Town did not afford Mrs. Goldstein due process.

c. Any due process was, "at best, illusory."

d. The Town violated Mrs. Goldstein's due process rights.

e. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

  f. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

239. The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

240. The foregoing statements by Blumstein were not made in the course of his duties as Town Manager, or in the exercise of an official duty of his, but were made outside his duties and personally as part of a desperate plea to retain his position/employment.

241. Additionally, on or about November 7, 2024, Defendants reiterated the aforementioned claims against Mrs. Goldstein in a letter provided to her and which it included in her personnel file, wherein it "found" as follows:

  a. that she violated the Town's Compensatory Leave Policy, that because of her actions or the lack thereof the town "finds itself in violation of federal law, its employees in violation of Town contracts, and the Town have lost tens of thousands of dollars over several fiscal years;"

  b. that she "divulged sensitive, privileged information to the public that [she] could only have learned from [her] employment with the Town and [her] role with SPD, and that [she] did so without authorization from the Chief or his Command Staff; and

  c. that her "oversight of the Parking Program referenced in the Report to be at least a neglect of duty, incompetence, the result of poor judgment, and/or a violation of Town Code, its policies and/or procedures, resulting in a significant financial loss to the Town spanning years."

242. Defendants knew that the statements about Mrs. Goldstein were false when made.

243. Doce and Blumstein acted with malice, intention, knowledge, and/or reckless disregard as to the falsity of the information they disseminated about Mrs. Goldstein, a decorated public official with a previously unblemished (and laudatory) work history with the Town, as set forth above.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884  FAX 305.230.4844
www.fairlawattorney.com

244.     The statements identified above are false, defamatory, and damaged Mrs. Goldstein's reputation, standing in the community, and employability.

245.     The purposes of including the stigmatizing statements identified and described above in Mrs. Goldstein's personnel file and in an internal affairs file included making it difficult for Mrs. Goldstein to obtain comparable employment (with comparable wages and benefits) to the employment she held with the Town, to impugn her integrity, to embarrass and humiliate her, and to publicly denigrate her without justification and with no connection to Doce's or Blumstein's official duties or of those others employed by the Town.

246.     Although Mrs. Goldstein was given the opportunity to engage in a hearing with the Town's Personnel Appeals Board, that hearing was an illusory, sham proceeding that did not give Mrs. Goldstein a meaningful opportunity to address each of the disparaging remarks that made their way into her personnel and/or internal affairs files prior to the hearing.

247.     Thereafter, the Town gave Mrs. Goldstein no opportunity to clear her name with regard to the Town's Resolution No. 2025-3386, passed and adopted on March 11, 2025, which adopted the findings of the Personnel Appeals Board "1) finding the Town had a basis for the adverse employment decision with respect to [her]; 2) finding that the Town Manage or his designee acted with cause in terminating [her]; and 3) dismissing the Appeal on the merits."

248.     Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01.

249.     Meanwhile, Blumstein received notice on October 20, 2025, that FOP Lodge 135 issued a unanimous "Vote of No Confidence" in him as the Town's Manager.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

250.     During a meeting of the Town's Commission on October 22, 2025, Blumstein made false, derogatory statements about Mrs. Goldstein as the Town's Manager, knowing that she had not engaged in any improprieties, knowing that the Personnel Appeals Board had determined that she had not engaged in any improprieties that would support a finding that she be terminated for cause, and knowing that the Circuit Court for Miami-Dade County had made the findings regarding Mrs. Goldstein (and the Personnel Appeals Board) as set forth above.

    a.  Blumstein created a false narrative that Officer Tammy Campbell of the Town's Police Department was behind the "Vote of No Confidence" for her own purposes, which included assisting her friend, Mrs. Goldstein, regain employment with the Town (but without specifying how that would be accomplished), and to gain leverage in renegotiating the FOP's agreement with the Town.

    b.  Blumstein went on to contend that Mrs. Goldstein has "done everything in her power to get her job back" after being terminated, including by mischaracterizing Mrs. Goldstein's negotiations with the Town following the (improper and since reversed) termination of her employment as "appealing" to him, when he succeeded the prior town manager who terminated her.

    c.  Blumstein went on to contend that Officer Campbell wanted Blumstein fired because she hoped that his predecessor would "overrule his predecessor's decision, his decision, and the Personnel Appeals Board's decision terminating her friend's employment with the Town for cause."

    d.  Blumstein then stated that Officer Campbell's true motivation for the FOP's no-confidence vote is to eliminate him as an obstacle to contract renegotiations and to find a political way to rehire Mrs. Goldstein into her prior position so that Mrs. Goldstein could "continue to overpay" the Towns' police officers and "provide favorable treatment at her discretion," insinuating that Mrs. Goldstein did not properly or legally perform her duties.

    e.  The foregoing statements by Blumstein were <u>not</u> made in the course of his duties as Town Manager, or in the exercise of an official duty of his, but were made outside his duties and personally as part of a desperate plea to retain his position/employment.

251.     The Circuit Court for Miami-Dade County next determined that the hearing Mrs. Goldstein received from the Town's Appeals Board was a sham proceeding, did not afford Mrs.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Goldstein due process of law, and issued a scathing decision of the Town's treatment of Mrs. Goldstein in Case No. 2025-000035-AP-01.

252. On December 12, 2025, the Circuit Court for Miami-Dade County issued its Opinion in Case No. 2025-000035-AP-01, in which it found as follows:

    a. The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

    b. The Town did not afford Mrs. Goldstein due process.

    c. Any due process was, "at best, illusory."

    d. The Town violated Mrs. Goldstein's due process rights. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

    e. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

253. The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

254. Since December 29, 2025, Mrs. Goldstein has not received any notice about a resumed Personnel Appeals Board hearing, no Personnel Appeals Board hearing has occurred, she has not been reinstated to her employment with the Town, and no actions favorable to Mrs. Goldstein have been taken to address, remedy, or rectify the matters addressed herein.

255. Nowhere in Section 2-152 of the Town's Code of Ordinances or elsewhere does the Town provide any mechanism or basis to restore an employee's good name and reputation, nor does it require that an employee's good name and reputation be restored upon a determination that her termination "for cause" was erroneous and that she be reinstated.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884  FAX 305.230.4844
www.fairlawattorney.com

256.     Defendants have not retracted or issued statements or other materials to correct the stigmatizing information they shared about Mrs. Goldstein.

257.     Mrs. Goldstein was not afforded an opportunity to initiate any grievance or other hearing procedure to address the stigmatizing information about her from the "Other Investigation," the Internal Affairs Investigation, the letter pursuant to which she was placed on house confinement, the termination letter, during the Personnel Appeals Board Hearing, as contained in Resolution No. 2025-3386, or as announced during the Commission Meeting held on October 22, 2025.

258.     The false statements of fact identified above have cast a disparaging cloud over Mrs. Goldstein's reputation for honesty and competency.

259.     Mrs. Goldstein has suffered damages as a direct and proximate result of the defamatory statements identified herein.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after trial by jury, damages, actual damages, emotional distress damages, lost reputation damages, to have all improper information removed from her personnel and internal affairs files, costs, all interest allowed by law, and for such other and further relief as the Court deems just and proper.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, Dina Goldstein, demands a trial by jury of all issues so triable.

Respectfully submitted this 12th day of February 2026,

<div style="margin-left:40%">

<u>s/Brian H. Pollock, Esq.</u>
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff*

</div>

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*