UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-CV-20965

DINA GOLDSTEIN

     Plaintiff,

v.

TOWN OF SURFSIDE, FLORIDA,
ENRIQUE DOCE, and,
MARK BLUMSTEIN

     Defendants.

_____/

**DEFENDANTS, TOWN OF SURFSIDE, ENRIQUE DOCE, AND MARK BLUMSTEIN'S
JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The Defendants, TOWN OF SURFSIDE ("Town"), ENRIQUE DOCE ("Doce"), and

MARK BLUMSTEIN ("Blumstein") by and through their undersigned attorneys and pursuant to

Federal Rules of Civil Procedure 8, 10, and 12(b)(6), move for the entry of an order dismissing the

Complaint [ECF No. 1] ("Complaint") filed by the Plaintiff, DINA GOLDSTEIN ("Plaintiff"),

and state as follows:

## I.  Introduction

1.     The Plaintiff was the Town's former "Senior Executive Assistant" for the Chief of

police [ECF No. 1 at ¶4]. She filed a seven-count complaint against the Town, the Former Chief

of Police, Enrique Doce ("Doce"), and the Former Town Attorney and Town Manager, Mark

Blumstein ("Blumstein"). She alleges (1) race discrimination in violation of 42 U.S.C. § 1981

against the Town and Doce, (2) retaliation in violation of 42 U.S.C. § 1981 against the Town and

Doce, (3) race discrimination in violation of Title VII against the Town, (4) retaliation in violation

of Title VII against the Town, (5) property deprivation in violation of her procedural rights under

1

42 U.S.C. § 1983 against all defendants, (6) liberty deprivation in violation of her procedural rights under 42 U.S.C. § 1983 liberty interest claim against all defendants, and (7) defamation against the Town and Blumstein. [ECF No. 1 ¶¶71-230].

2.      The conclusion that a race-based conspiracy targeting the Plaintiff was orchestrated by Doce and Blumstein, is undermined by the text of the Complaint. [ECF No. 1 at ¶24-70]. The Complaint acknowledges that the Plaintiff was terminated following an independent investigation (the "Ramos Report") conducted by an outside investigator, SPD Case No. 2024-2092, which concluded that the Plaintiff violated the Town's compensatory leave policy, divulged sensitive privileged information, and whose oversight of the Town's parking program caused significant financial losses. [ECF No. 1 at ¶59]. These facts undermine the Plaintiff's claims.

3.      The Complaint should be dismissed for the following reasons:

a.      First, the Plaintiff's Count I and Count II claims under § 1981 fail as a matter of law because the exclusive federal remedy against state action is through § 1983. Further, the Complaint omits any claim that an unconstitutional Town policy or custom satisfied the requirements of <u>Monell v. Dep't. of Social Services, etc.,</u> 436 U.S. 658, 691 (1978), to impose liability against the Town. Additionally, Defendant Doce is otherwise entitled to qualified immunity and dismissal of the claims as he was not the official decisionmaker with respect to the employment decisions raised.

b.      Second, the Plaintiff's Count III and Count IV claims under Title VII are time-barred. The EEOC Charge was filed 388 days after the last alleged discriminatory act.[1] Please

---

[1] Although the Plaintiff did not attach the Charge or make any allegations regarding her Charge, the Court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. <u>Horsley v. Feldt</u>, 204 F. 3d 1125, 1134 (11th Cir. 2002). Here, the Plaintiff's Charge of Discrimination (signed by the Plaintiff herself is central to the Plaintiff's discrimination

see attached Charge as **Exhibit "A."** The Title VII claims independently fail because the Complaint does not allege established employment action that was materially adverse, the existence of comparators, causation, or discriminatory intent.

c. Third, the Plaintiff's Count V and VI due process claims fail because the Plaintiff fails to allege inadequate state remedies and fails to plead the absence of a name clearing opportunity. To the contrary, the Complaint affirmatively alleges both an adequate state remedy and a name clearing opportunity. Further, both Defendant Doce and Blumstein are entitled to qualified immunity and dismissal of the claims as neither are official decision makers with respect to the employment decisions challenged.

d. Finally, the Plaintiff's Count VII claim for defamation fails because it is barred by absolute immunity. The allegedly defamatory statements were made by a public official within the course and scope of his official duties.

## II.  Memorandum

### A.  Pleading Standard

Counts I through VII should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." The allegations must be "simple, concise, and direct." <u>See</u> Fed. R. Civ. P. 8(d)(1). Plaintiff has an "obligation to provide the grounds of [her] entitlement to relief." <u>Bell Atlantic v. Twombly</u>, 550 U.S 544, 555 (2007) (internal citations omitted).

A complaint loses the presumption of truth if the allegations made are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." <u>Ashcroft v.</u>

---

allegations presented in this lawsuit).

Iqbal, 556 U.S. 662, 663, 678-79 (2009) (a complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); Twombly; 550 U.S. at 555 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). In the end, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people…" Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005).

To state a § 1981 discrimination claim, the Plaintiff must plausibly allege that the Town intentionally treated her differently because of her race. To state a § 1981 retaliation claim, the Plaintiff must plausibly allege that a materially adverse action was taken against her because she engaged in protected activity. Moore v. Grady Mem'l Hosp. Corp., 834 F.3d 1168, 1176(11th Cir. 2016)). The Complaint relies exclusively on conclusory allegations and fails to identify a specific decisionmaker who allegedly considered the Plaintiff's race in its decision to investigate, suspend, or terminate her. Critically, the Complaint fails to allege that the decisionmaker who terminated her, Peter Jankowski ("Jankowski"), was aware of any protected activity. [ECF No. 1 at ¶59]. Similarly, the Complaint does not allege that Doce was aware of any protected activity that occurred prior to the Plaintiff's paid suspension. [ECF No. 1 at ¶118]. The essential link between race or protected activity and adverse action is entirely absent.

The elements of a valid Title VII claim and § 1981 claim are identical, and the defects here are also identical. Additionally, the Charge that the Plaintiff filed is time-barred.

To state a valid due process property interest claim under the Fourteenth Amendment, the Plaintiff must allege a constitutionally protected property interest in her continued employment. The Plaintiff's own allegations show she successfully used state remedies establishing that

adequate post-deprivation remedies existed. [ECF No. 1 at ¶200].  To state a valid due process liberty interest claim, the Plaintiff must allege six specific elements, including that she was denied a meaningful opportunity to clear her name. Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1043-44, 1046 (11th Cir. 1989); see also Oswald v. Diggs, No. 2:22-CV-247-SPC-NPM, 2022 WL 3999284 (M.D. Fla. Sept. 1, 2022). The Complaint confirms that the Plaintiff received a name-clearing hearing before the personnel appeals board and also pursued certiorari relief in Florida circuit court. [ECF No. 1 at ¶¶200, 212-213].  A plaintiff who received and utilized a name-clearing process -- even one she believed to be flawed -- cannot satisfy the sixth element. [ECF No. 1 at ¶¶200, 212-213].

The Plaintiff's defamation claim is barred by absolute immunity because the challenged statements were made by a public official, the Town Manager, advising the Town Commission during an official Town Commission meeting in his capacity as the Town Manager. [ECF No. 1 at ¶¶236, 240]. The Plaintiff's conclusory assertion that the statements were made "personally" do not plausibly alter the fact that they were made in an official context. [ECF No. 1 at ¶¶236, 240].

Further, in setting forth a claim, a plaintiff must provide a short and plain statement of the basis of the court's jurisdiction and the plaintiff's entitlement to and demand for relief. Fed.R.Civ.P. 8(a). A complaint is to be "simple, concise, and direct" as mandated by Rule 8(d)(1), as well as a "short and plain statement of the claim[s]" as required by Rule 8(a)(2).  Here, Plaintiff improperly lumps all of the Defendants together thereby depriving them of adequate notice of Plaintiff's claims. This practice of lumping multiple defendants together has routinely been determined not to satisfy Rule 8's pleading requirements. See Lane v. Capital Acquisitions & Mgmt. Co., 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (By lumping all the defendants together in each claim, the Lane's Complaint fails to satisfy the minimum standard of Rule 8); Synergy Real Estate

of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC, 2013 WL 5596795, at *2 (M.D. Fla. Oct. 11, 2013) ("Although the Court has stated and again reminded plaintiffs that indiscriminately lumping 'defendants' together fails to comply with Fed. R. Civ. P. 8, the Second Amended Complaint continues to indiscriminately lump defendants together.").

### B. The § 1981 Claims (Counts I and II) Fail as a Matter of Law

#### 1. § 1983 is the Exclusive Vehicle for § 1981 Claims Against the Town and Doce

Plaintiff asserts claims under 42 U.S.C. § 1981 alone and without pleading the *Monell* requirements. However, 42 U.S.C. § 1983 "constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." Bryant v. Jones, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009), citing Butts v. County of Volusia, 222 F.3d 891, 894–95 (11th Cir. 2000); *see also*, Webster v. Fulton Cnty., Ga., 283 F.3d 1254, 1256 (11th Cir. 2002) ("Section 1981 is enforceable against a municipality through 42 U.S.C. § 1983."). Thus, in the first instance, where Plaintiff fails to plead any claim under Section 1983 as required to assert a claim under Section 1981, the claims are due to be dismissed.

Nonetheless, the Plaintiff's § 1981 claim fails because it is redundant of her § 1983 claim which, "provides the exclusive federal remedy for the violation of the rights guaranteed § 1981 when the claim is pressed against a state actor." Vason v. City of Montgomery, Ala., 240 F.3d 905, 906 n.1 (11th Cir. 2001) (citing Jett v. Dallas Independent School Dist., 491 U.S. 701, 735 (1989). Because the Plaintiff has failed to assert her § 1981 claims through the procedural vehicle of § 1983, her § 1981 claims must be dismissed. See e.g., St. Louis v. Sands, 401 F.Supp.2d 1351, 1358 (S.D. Fla. 2005) (§ 1981 claim "improperly brought as a separate claim."). Moreover, because she also seeks relief under § 1983, her § 1983 claims are improperly duplicative.

The Eleventh Circuit has long held that a § 1981 claim has been "effectively merged into

6

the section 1983 claim for racial discrimination." Busby v. City of Orlando, 931 F.2d 764, 771 n. 6 (11th Cir. 1991); see also Jones v. Fulton County, GA, 446 Fed. Appx. 187, 189 n.1 (11th Cir. 2011) ("Section 1983 is the exclusive remedy against state actors for violations of the rights contained in Section 1981"); see also Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) ("To the extent that injunctive relief remains available to [her] under § 1981, it would simply duplicate the equitable relief [s]he could receive under § 1983"). The express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" provides the *exclusive federal damages remedy* for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Jett v. Dallas Independent School Dist., 491 U.S. 701, 735 (1989) (*emphasis added*) (holding that § 1981 can provide no broader remedy against a state actor than § 1983 and that therefore a plaintiff bringing such a claim must show "custom or policy" just as the § 1983 plaintiff would).

Counts I and II should be dismissed because, as a matter of law, they are merged into the § 1983 claims asserted in Count VI.

### 2. No viable claims under 42 U.S.C. § 1983 against Town – no unconstitutional policy or custom alleged (Counts I and II)

The Town can only be liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury …." of which the Plaintiff complains. Monell, 436 U.S. at 691; Mercado v. City of Orlando, 407 F.3d 1152 (11th Cir. 2005); Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). To establish the Town's § 1983 liability based on a "custom," the Plaintiff must allege facts establishing an unconstitutional practice so widespread that, "although not authorized by written law or express municipal policy," it is "so permanent and well

7

settled as to constitute a custom or usage with the force of law." Brown v. City of Fort Lauderdale, 923 F. 2d 1474, 1481 (11th Cir. 1991).

Likewise, the allegations must reflect a practice so "long-standing and widespread" that it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." Id. A failure to prevent an isolated incident, cannot be deemed tacit approval. Depew v. City of St. Mary's, Georgia, 787 F. 2d 1496, 1499 (11th Cir. 1986) ("Random acts or isolated incidents are insufficient to establish a custom or policy."); see also Owaki v. City of Miami, 491 F. Supp. 2d 1140, 1158 (S.D. Fla. 2007) ("Plaintiff must surmount a high burden to hold the City liable for deprivation of Constitutional rights under 42 U.S.C. § 1983").

The Complaint's allegations foreclose a Monell claim. The Complaint identifies Doce, who was not hired until April 1, 2024 [ECF No. 1 at ¶8], as the primary person who engaged in race-based discriminatory conduct. [ECF No. 1 at ¶¶72-75, 81]. Moreover, the Plaintiff alleges that "the Town did not review issues, actions, concerns, and/or inactions involving its employees" as a basis for adverse action. [ECF No. 1 at ¶80]. These allegations are not sufficient to show a formal Town policy directing discriminatory treatment based on race or any widespread pattern of a race bias directed against other employees.

Counts I and II separately fail because Doce was not the final decisionmaker as to the Plaintiff's termination.  The Complaint does not allege that Doce made any final decision as to the Plaintiff's termination. Municipal liability under § 1983 attaches only when a final policymaker causes the constitutional violation. City of St. Louis v. Prapotnik, 485 U.S. 112, 127 (1988); Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997). The Complaint states that the Town operates under a "commissioner-manager system of local government under which the City Manager has the final decision and policymaking authority." [ECF No. 1 at ¶6]. The cited

termination decision on November 7, 2024, was made by Jankowski [ECF No. 1 at ¶59], not Doce, and was based on findings of the Ramos Report. Since the termination flowed from a separate decisionmaker, who is not alleged to harbor any race-based animus, Doce's alleged conduct cannot be used to establish liability against the Town. Praprotnik, 485 U.S. at 127. Moreover, no facts even suggest that the Town ratified any discriminatory employment decision.

To the extent the Plaintiff attempts to rely on the "Ramos Report" as evidence of an unconstitutional Town "policy or custom," that argument is facially invalid. First, as noted in Dixon v. Burke Cnty., Ga., 303 F.3d 1276 ("a local government body may only be liable under §1983 if action pursuant to official policy caused a constitutional tort"), the characterization of the Ramos Report arose from a "sham" investigation that Oswaldo Ramos from the **Miami Beach Police Department** does not give rise to Town liability. [ECF No. 1 at p. 8-10]. Ramos actions were taken through an independent governmental entity, retained to conduct an outside investigation. The Town has no authority to direct or control the manner in which Ramos conducted his investigation. Any alleged deficiencies in his methodology are the acts of an autonomous outside investigator and should not be attributed to the Town.

Second, an investigation commissioned to address specific allegations against one employee is not a "policy or custom" within the meaning of Monell. Depew, 787 F.2d at 1499 ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."). Critically, the Complaint confirms that Plaintiff's termination did not stem from the Town's procedure (stating that the "Other Investigation" was "not guided by any policies or procedures.") [ECF No. 1 at ¶25]. An internal affairs investigation that allegedly violated the Town's procedures cannot constitute the "policy or custom" for Monell liability. Owaki v. City of Miami, 491 F. Supp. 2d 1140, 1158 (S.D. Fla. 2007) ("Cities very rarely have express policies … so a plaintiff generally

9

needs to prove a city policy by showing that the municipality's failure … evidenced a deliberate indifference to the rights of its inhabitants.").

      **3.**  <u>**No viable claims under 42 U.S.C. § 1983 against Doce – not the official decisionmaker (Counts I and II)**</u>

Plaintiff's Complaint also purportedly seeks to impose liability on Defendant Doce for Plaintiff's termination.  However, to be individually liable under 42 U.S.C. § 1983, the individually named party must be the "official decisionmaker" taking an adverse employment action in violation of the plaintiff's rights.  See Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003) ("The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable." (emphasis omitted)).  Consistently, courts are tasked with identifying the officials who speak with final policy-making authority concerning the action alleged to have caused the particular constitutional violation.  McMillan v. Monroe Co., 520 U.S. 781, 784-85 (1997), quoting Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989); Grech v. Clayton County, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc) (plurality opinion); Turquitt v. Jefferson Co., 137 F.3d 1285, 1287 (11th Cir. 1998) (en banc).  This task is accomplished by inquiring which government officials are final policy makers for the local government in the particular area or on a particular issue.  McMillan, 520 U.S. at 785; Grech, 335 F.3d at 1330; Turquitt, 137 F.3d at 1287.  This inquiry is determined by the law of the state in which the municipality operates.  City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) (plurality); see also, McMillan, 520 U.S. at 786; Turquitt, 137 F.3d at 1287.  The Court's review of state law includes local positive law such as the municipality's own charter.  See gen. Turquitt, 137 F.3d at 1288 ("Our answer to this question turns on state law, including… *local positive law*… .") (emphasis added). The gravamens of the Counts pled against Defendant Doce stem from Plaintiff's termination; therefore, the Court should identify the policy maker and decisionmaker

with respect to the decision to discharge plaintiff from employment.

Florida's Constitution and Statutes confer broad power to municipalities to exercise governmental, corporate and proprietary power to enable them to conduct municipal government. Fla. Const. art. VIII, §2(b); Fla. Stat. §166.021(1).  Such power is conferred by adoption of a municipal charter which must prescribe the municipality's form of government and clearly define the responsibility for legislative and executive functions.  Fla. Stat. §165.061(e)(1).  The state's grant of power is conferred to the City Commission of the City of Fort Pierce through its Charter. Charter of the City of Fort Pierce, art. I.  The Charter confers administrative powers to a Town Manager to appoint and remove employees of the Town "except as otherwise provided by th[e] Charter" or as authorized by the town manager. Charter, art. III, § 35(1).  The Charter also established a Personnel Appeals Board. Charter, Chapter 2, art. IV, § 1-151. With the establishment of the Personnel Appeals Board, the Charter created and delegated ultimate power to the Personnel Appeals Board (PAB) to generate the rules, procedures and grounds for dismissals in the first instance and to affirm, disaffirm, modify or reverse any termination, or reduction in pay or rank of the Town's employees. Charter, Chapter 2, art. IV, § 1-151. A review of Florida law makes clear then that the Town Manager is the final decision maker for termination of Town employees, and the Personnel Appeals Board is the ultimate policy maker with the power to affirm, disaffirm, modify, or reverse any employee termination.

Here, then, to the extent Plaintiff's complaints are leveled against Defendant Doce's decisions, the same fail.  Plainly, Doce was not the final decision maker as to Plaintiff's termination.  There are no allegations Doce made the decision to terminate Plaintiff; on the contrary, the Complaint states that, during the relevant time period, Doce was the Chief of Police [ECF No. 1 at ¶ 7] and that the Town operates under a "commissioner-manager system of local

11

government under which the City Manager has the final decision and policymaking authority." [ECF No. 1 at ¶6]. The cited termination decision on November 7, 2024, was made by Jankowski [ECF No. 1 at ¶59], not Doce.  Further, local law establishes Doce was not the decision maker or the policy maker.   To be individually liable under 42 U.S.C. § 1983, the individually named party must be the "official decisionmaker" taking an adverse employment action in violation of the plaintiff's First Amendment rights.  See Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003) ("The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable." (emphasis omitted)).   Thus, in addition to all of the grounds raised herein, Defendant Doce cannot be held individually liable for any of the claims leveled against him in Counts I and II, as the claims are premised on decisions for which he was not the official decision maker as a matter of law.

### 4. No Plausible Comparator

A valid comparator is "someone who: (1) has engaged in the same basic conduct (or misconduct) as the plaintiff, (2) is subject to the same employment policy, guideline, or rule as the plaintiff, (3) is under the jurisdiction of the same supervisor as the plaintiff, and (4) shares the plaintiff's employment or disciplinary history." Johnson v. Miami-Dade Cnty., No. 24-12676, 2026 WL 772380 (11th Cir. Mar. 19, 2026). In Johnson., the Eleventh Circuit found that the plaintiff's proposed comparators had materially different disciplinary histories and did not engage in the same basic misconduct as the plaintiff. Id. at *4. The Court confirmed that "the fact that there are some similarities between the plaintiff and the comparator is not enough" because they must be similarly situated "in all material respects." Id. at *5.

The Plaintiff uses the "kitchen sink" methodology by alleging various "other" assertions in a roundabout way to show discrimination and retaliation. One of those allegations includes where

the Plaintiff identifies three Hispanic police officers -- Jose "Jay" Matelis, Julio Torres and Jose Valino -- who were allegedly permitted to "bank" comp time beyond 300 hours.  [ECF No. 1 at ¶78-79]. These officers are not valid comparators because they held sworn law enforcement positions, operated under different policies, and reported to different supervisors. The Complaint does not allege they were investigated for the same conduct, were not alleged to have divulged sensitive operational information, were not accused of committing potential payroll fraud, and were not the subject of an internal affairs investigation. Under Johnson, comparators with "materially different disciplinary histories" who did not "engage in the same basic misconduct" are not valid comparators.

The Plaintiff also attempts to use three employees hired around the time of her suspension and termination, Michell Sanchez, Maria Teresa Fernande Alvarez, and Stephanie Kamer, as comparators, that effort also fails [ECF No. 1 at p. 15-19]. First, the Complaint fails to allege that Jankowski was the individual involved in the hiring decision or that his conduct was prompted by a racial preference. Second, none held the same position as the Plaintiff. A valid comparator must be an existing employee "subject to the same employment policy, guideline, or rule" as the plaintiff. Johnson, at *3. The newly hired employees are not similarly situated to the Plaintiff because they did not undergo the same investigations, they operated under different policies, and they do not have the same disciplinary histories. These potential alleged comparators cannot constitute comparator evidence of disparate treatment. The Plaintiff's proposed comparators fail as a matter of law.

### 5. Absence of Causation

"A § 1983 claim requires proof of an affirmative casual connection between the defendant's acts or omissions and the alleged constitutional deprivation." Troupe v. Sarasota

Cnty., Fla. 419 F. 3d 1160, 1165 (11th Cir. 2005).  "Section 1983 thus focuses our inquiry on whether an official's acts or omissions were the cause -- not merely a contributing factor -- of the constitutionally infirm condition." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993). A "causal relation does not exist when the continuum between the [d]efendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision makers." Dixon, 303 F.3d at 1275. Plaintiff must establish an adequate causal link between the alleged harm and the alleged unlawful conduct. See Barts v. Joyner, 865 F. 2d 1187, 1195-96 (11th Cir. 1989).

Here, no causal relationship exists because the termination decision was made by Jankowski, not Doce. Moreover, Jankowski's decision was based on the Ramos Report, which was conducted by an independent investigator from a separate governmental entity. [ECF No. 1 at p. 8-10]. The Complaint does not allege that Jankowski harbored any discriminatory bias or retaliatory animus. Without supporting facts, any causal link between Doce's alleged conduct and the Plaintiff's termination is severed by the intervening, independent conduct of two separate actors; (i) the outside investigator Ramos and (ii) the final decisionmaker Jankowski, neither of whom is alleged to have acted with discriminatory intent. Because the Complaint fails to allege facts establishing a link between Doce's alleged animus and the adverse action, the § 1983 claims in Counts I and II fail.

## C. The Title VII Claims Fail on Five Independent Grounds (Counts III & IV)

### 1. The Plaintiff's Title VII Claims are Time-Barred

The Plaintiff's Title VII claims are untimely. To establish a *prima facie* case of discrimination based on race under Title VII, the plaintiff must show that within 300 days prior to filing a charge of discrimination: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) similarly situated comparators outside the protected class

received higher compensation; and (4) she was qualified to receive the higher wage. <u>Benjamin v. Holy Cross Hosp.</u>, 2012 U.S. Dist. LEXIS 72365 (S.D. Fla. May 24, 2012) (<u>citing</u> <u>Hill v. Emory University</u>, 346 F. App'x 390, 395 (11th Cir. 2009)); <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008); <u>Burke-Fowler v. Orange County, Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006).

In a deferral state like Florida, the charge must be filed within 300 days of the alleged unlawful employment practice. 42 U.S.C. §2000e-5(e)(1); <u>National R.R. Passenger Corp v. Morgan</u>, 536 U.S. 101 (2002). <u>See</u> <u>also</u> <u>Marquez v. Costco Wholesale Corp.</u>, 550 F. Supp. 3d 1256, 1273 (S.D. Fla. 2021) (quoting <u>Brooks v. CSX Transp., Inc.</u>, 555 Fed. Appx. 878, 880 (11th Cir. 2014). A claim is considered time-barred if it is not filed within these limits. <u>Id.</u> <u>Perry v. S. Wine & Spirits of Am., Inc.</u>, No. 8:10-cv-2876-T35-EAJ, 2012 WL 12897391, at *3 (M.D. Fla. Mar. 5, 2012) ("A party therefore must file a charge within… 300 days of the date of the act or lose the ability to recover for it.")

The Plaintiff's EEOC Charge indicates that she filed her Charge on August 29, 2025, but the Charge affirmatively states that the alleged "Discrimination Took Place" on August 6, 2024, at the "Latest." The preliminary section of the Charge indicates that the claimed misconduct occurred more than a year before the Claimant filed the Charge on August 29, 2025. The period between August 6, 2024, and the filing date of August 29, 2025, is 388 days, well beyond the 300 day statutory window. Therefore, Plaintiff's claims under Title VII are time-barred.

### 2. The Plaintiff Fails to Allege a Materially Adverse Employment Action

To state a claim under Title VII, a plaintiff must allege a materially adverse employment action, one that results in a significant change in the terms or conditions of employment. <u>Monaghan v. Worldpay US, Inc.</u>, 955 F.3d 855, 860 (11th Cir. 2020). An "adverse employment action" includes "tangible employment actions," which are those actions "that affect continued

employment or pay -- things like terminations, demotions, suspensions without pay, and pay raises or cuts -- as well as other things that are similarly significant standing alone." Id.

In Davis v. Legal Services Alabama, Inc., 19 F.4th 1261 (11th Cir. 2021), the Eleventh Circuit held that "as matter of first impression, a simple paid suspension" does not constitute the "adverse employment action" required to establish claims of race discrimination and retaliation under Title VII and § 1981. "A paid suspension can be a useful tool for an employer to hit 'pause' and investigate when an employee has been accused of wrongdoing." Id. at 1267.

The Plaintiff alleges that she was placed on administrative leave with pay pending an investigation. [ECF No. 1 at ¶43]. That allegation does not establish a materially adverse employment action. Plaintiff attempts to reframe the paid leave as "house arrest," because she was required to remain at home during workhours in case she was needed, [ECF No. 1 at ¶45], does not change the analysis. Because the EEOC Charge limits her adverse action to a suspension with pay while being investigated, the Plaintiff cannot establish a materially adverse employment action. In Davis v. Legal Services Alabama, Inc., 19 F.4th 1261 (11th Cir. 2021) determined that "[a] paid suspension can be a useful tool for an employer to hit 'pause' and investigate when an employee has been accused of wrongdoing." 19 F.4th 1261, 1267 (11th Cir. 2021). In Davis, the court examined the circumstances whereby an employee asserted his suspension was atypical because it was disclosed, it occurred before a high-profile LSA reception with the state bar, and there was a guard placed in the building in the aftermath of the suspension. 19 F.4th 1261, 1267 (11th Cir. 2021). See Joseph v. Leavitt, 465 F. 3d 87, 90 (2d Cir. 2006) (finding that "[f]our of our sister courts have considered whether placement on administrative leave, with pay, during an investigation constitutes an adverse employment action. Each court held that it does not.") Therefore, the Plaintiff's Title VII claims fail as a matter of law.

16

### 3.  No Plausible Comparators Are Identified

As discussed above in the § 1981 analysis, the Plaintiff's two sets of proposed comparators fail to meet the requirements to assert a Title VII or § 1983 discrimination action. The first set of proposed comparators (Matelis, Torres, and Valino) are sworn law enforcement officers who are not similarly situated to the Plaintiff, who was an administrative employee, in any material respect. Johnson v. Miami-Dade Cnty., 2026 WL 772380, at *3. They held different positions, were subjected to different policies, reported to different supervisors and were never investigated for comparable conduct. The Plaintiff's second proposed set of comparators also fails because they were not employees similarly situated to the Plaintiff. The Plaintiff's Title VII discrimination claim fails to state a claim on this basis.

### 4.  The Plaintiff fails to Plausibly Allege Causation

The Plaintiff must plead and establish that her protected activity was a but-for cause of the alleged adverse action by the employer. See Univ. of Texas Sw. Med. Ctr. v.. Nassar, 570 U.S. 338, 360-362 (2013); see also Raspanti v. Four Amigos Travel, Inc., 266 Fed. Appx. 820, 823 (11th Cir. 2008). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged protected conduct. Nassar, 570 U.S. at 360.

The Complaint simply asserts that "Mrs. Goldstein complained to Yamileth Slate-McCloud, Human Resources for the Town, about the treatment she was receiving at work because of her race, who responded that nothing could be done until a formal complaint was filed against Doce." [ECF 1 at ¶138]. Additionally, "Mrs. Goldstein escalated her complaint to Marisol Vargas, Acting Town Manager who spoke to Doce about the issues raised by Mrs. Goldstein, but this did not result in any positive change; in fact, things, escalated." [ECF 1 at ¶139]. According to the Plaintiff's Charge, the Plaintiff first made a complaint in May 2024, and the alleged "retaliation"

occurred three months following this alleged initial communication. This gap in time defeats the causation element of her claim. See Johnson v. Miami Dade County, 2026 WL 772380, at *3 (holding that a two-month gap between protected activity and adverse action, standing alone, is too long to support an inference of retaliatory intent); Hurlbert v. St. Mary's HealthCare Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006) (noting that even a two-week gap is probably insufficient by itself). Application of Johnson and Hurlburt establish that the temporal gap here is too lengthy to support but-for causation. Moreover, the Complaint fails to allege additional facts connecting her complaints to the suspension.

To prevail on a Title VII retaliation claim, the causation element requires a plaintiff to show that the decisionmaker was aware of the protected conduct. Joyner v. City of Atlanta, No. 22-13728, 2026 WL 819733 (11th Cir. Mar. 25, 2026); see McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008); Goldsmith v. City of Altmore, 996 F.2d 1155, 1163 (11th Cir. 1993) ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took [the] adverse action."); see also Hudson v. S. Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988) (affirming grant of summary judgment to the defendant on retaliatory discharge claim where there was uncontradicted evidence the decisionmakers did not know of the plaintiff's protected conduct); McCollum v. Bolger, 794 F.2d 602, 610-11 (11th Cir. 1986) (affirming judgment for defendant and holding that the plaintiff failed to prove a prima facie case of retaliation where the evidence showed that the decisionmaker did not know that the plaintiff was engaging in protected conduct.)

The Eleventh Circuit has emphasized that speculation and conclusory allegations are insufficient to establish causation. Joyner v. City of Atlanta, No. 22-13728, 2026 WL 819733 (11th Cir. Mar. 25, 2026). The Complaint contains no non-conclusory allegations establishing that any

18

relevant decision maker was aware of Plaintiff's protected activity at the time of the alleged adverse action. The Complaint does not allege that Doce, who signed the suspension order, was aware of the Plaintiff's complaints to HR or Vargas at the time. [ ECF No. 1 at p. 25]. A decisionmaker who was unaware of the protected activity cannot have retaliated against it. Joyner, 2026 WL 819733.

### 5.   **The Plaintiff fails to Allege Discriminatory Intent**

Under Title VII, an employer may be found liable for discrimination under three discrete theories: pattern and practice discrimination, disparate treatment discrimination, or disparate impact discrimination. Both pattern and practice and disparate treatment discrimination require proof of discriminatory intent. E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1273-1274 (2000)(citing In Re Employment Litig. Against the State of Ala., 198 F.3d 1305, 1310 n.8 (11th Cir. 1999). To show discriminatory intent, a plaintiff must demonstrate that the decision maker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group. Id. at 1273-1274. Therefore, a plaintiff has the burden of establishing that the alleged employment action at issue was taken because of her race. In a pattern and practice case, the plaintiff must prove (usually through a combination of statistics and anecdotes) that discrimination is the company's "standard operating procedure." Id. at 1274.

The Plaintiff's allegations of discriminatory intent are conclusory. She alleges that Doce "yelled at her," "embarrass[ed] her in front of colleagues," and "held conversations at work in Spanish knowing that Mrs. Goldstein did not speak Spanish." [ECF No. 1, at ¶75]. These allegations, even if taken as true, do not plausibly support a race-based animus. The Complaint does not contain any non-conclusory allegations that any identified decisionmaker considered the Plaintiff's race in conducting the internal affairs investigation or making the termination decision.

19

**D.  The Plaintiff fails to State a Due Process Claim (Counts V and VI)**

**1.  Adequate State Remedies Exist (Count V)**

Property and liberty interest due process claims require separate and distinct elements of proof. See, e.g., Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (To state a claim for the denial of a property interest without due process of law, the Plaintiff must establish (1) deprivation of a constitutionally-protected property interest; (2) governmental action; (3) and constitutionally inadequate process).

The Plaintiff does not and cannot allege that the state remedies for challenging the Town's alleged decisions were constitutionally inadequate. The Complaint affirmatively alleges that adequate state remedies were available and that the Plaintiff was successful. While the Plaintiff is critical of the Town's personnel appeals board's hearings on February 28, and March 10, 2025, the Miami-Dade Circuit Court granted certiorari review, quashed the personnel appeals board decision, and issued a mandate on December 29, 2025, in her favor. [ECF No. 1, at ¶200-201]. The fact that the state court provided a remedy in her favor demonstrates that adequate state remedies existed and functioned. In McKinney v. Pate, the Eleventh Circuit held that "Florida circuit courts review the entire cause and consider every aspect of the case to determine whether due process was observed." 20 F.3d 1550, 1563-64 (11th Cir. 1994). In McKinney, 20 F.3d at 1564, the Court found that Florida courts possess the power to remedy the plaintiff's loss and therefore the state remedy was capable of providing plaintiff with all the relief warranted.

Procedural due process is satisfied whenever the State of Florida has provided -- or would have provided -- an adequate post-deprivation remedy. Reams v. Irvin, 561 F.3d 1268, 1266 (11th Cir. 2009); Horton v. Bd. of Cnty. Commisioners of Flagler Cnty., 202 F.3d 1297, 1300 (11th Cir. 2002) (explaining that "the process a state provides is not only that employed by the board, agency,

or other governmental entity whose action is in question, **but also includes the remedial process state courts <u>would</u> provide if asked.**") (emphasis added); <u>Cotton v. Jackson</u>, 216 F.3d 1328, 1331 (11th Cir. 2000); <u>Tinney v. Shores</u>, 77 F.3d 378, 382 (11th Cir. 1996) (per curiam) (holding that "the [plaintiffs] have failed to state a valid procedural due process claim because they have not alleged that [state] law provided them with an inadequate post-deprivation remedy."). These cases stand for the proposition that the claimant's ability to secure relief through state-law remedies -- after an initial denial of due process -- negates a claim under 42 U.S.C. § 1983 for an alleged deprivation of procedural due process:

> [W]e said that only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise. It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim… This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora--agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.

<u>Cotton v. Jackson</u>, 216 F.3d 1328, 1330-1331 (11th Cir. 2000) (internal citations and quotations omitted). Count V must be dismissed.

### 2. <u>No procedural due process liberty claim</u>

To establish a viable § 1983 liberty interest claim, the Plaintiff must allege (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing. <u>Buxton v. City of Plant City</u>, 871 F.2d 1037, 1043-44, 1046 (11th Cir. 1989) ("Because [a name clearing hearing] is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to

his interests."); see also White v. Thomas, 660 F.2d 680 (5th Cir.1981) cert. denied 455 U.S. 1027 (1982) (post-termination hearing proper remedy for employee deprived of liberty interest during termination); In re Selcraig, 705 F.2d 789, 796 (5th Cir.1983) (state need only inform stigmatized employee that the opportunity to clear his name exists upon request; pre-termination hearing is not a prerequisite to publication).

The Plaintiff's liberty interest claim fails on element six. The Plaintiff attended two hearings before the Town's personnel appeals board hearing. She appeared, presented evidence, and contested the accusations against her. That hearing constituted a name-clearing opportunity. [ECF No. 1, at ¶¶212, 214]. Count VI must be dismissed.[2]

### E. Goldstein's Defamation Count VII Claim is Barred By Absolute Immunity

The Plaintiff's defamation claim fails as a matter of law because the alleged statements were made by the Town Manager within the scope of his official duties are therefore absolutely privileged. Under Florida law, "[p]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation." North Brevard County Hospital District v. Deligdish, 398 So. 3d 1126 (Fla. 5th DCA 2024) (quoting del Pino Allen v. Santelises, 271 So.3d 1112, 1114 (Fla. 3d DCA 2019)).

The absolute privilege is broad as "[i]t protects the statements of all public officials, regardless of the branch of government or the level of the official." Cameron v. Jastremski, 246 So. 3d 385, 388 (Fla. 4th DCA 2018). Critically, the privilege applies even where the statements

---

[2] Insofar as Counts V and VI are brought against Defendants Doce and Blumstein individually, as already addressed herein, because neither Defendant were the Town's official decisionmakers or policy makers with respect to the challenged employment decisions, neither can be held individually liable.  See Quinn, 330 F.3d at 1326 ("The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable.").  As such, Counts V and VII are due to be dismissed with prejudice as against both Individual Defendants.

are false or malicious, so long as they occurred within the scope of the public employee's duties. See Quintero v. Diaz, 300 So. 3d 288, 290-91 (Fla. 3d DCA 2020). The law is also clear that when a government employee makes statements within the scope of his duties absolute immunity extends to the agency that he serves. Palm Beach Cnty. Health Care Dist. V. Prof'l Med. Educ., Inc., 13 So. 3d 1090, 1095 (Fla. 4th DCA 2009). The Florida Supreme Court has explicitly confirmed that the scope of the privilege is exceptionally broad:

> "It seems to be well settled in this State that words spoken or written by public servants in judicial and legislative activities are protected by absolute privilege from liability for defamation. However false or malicious or badly motivated the accusation may be, **no action will lie therefor in this State.** Nor is it questioned that such absolute immunity in this State extends to county and municipal officials in legislative or quasi-legislative activities as well as to members of the State Legislature and activities connected with State legislation."

Hauser v. Urchisin, 231 So.2d 6, 8 (Fla. 1970) (emphasis added), (citing McNayr v. Kelly, 184 So.2d 428, 430 (Fla.1966)); City of Miami v. Rivera, 348 So. 3d 10, 15 (Fla. 3d DCA 2022) ("Chief Zahralban and the City are absolutely immune from suit for Chief Zahralban's written and oral statements relating to the City's termination of the Respondents as the statements were made within the scope of Chief Zahralban's duties as the director of the City's fire-rescue department"); Kribs v. City of Boynton Beach, 372 So. 2d 195 (Fla. 4th DCA 1979) (allegations of former city finance director did not state a cause of action for defamation against city and its city manager, who released finance director's termination letter to the press); Weeks v. Town of Palm Beach, 252 So. 3d 258, 261 (Fla. 4th DCA 2018) (public officials are absolutely immune from claims for defamation where their allegedly defamatory statements are made within the scope of their duties); Crowder v. Barbati, 987 So.2d 166, 167 (Fla. 4th DCA 2008) (this absolute privilege extends to a sheriff for comments made in the course of the sheriff's duties).

23

Here, the Plaintiff's alleges that Blumstein, in his capacity as the Town Manager, made the challenged statements "[d]uring a meeting of the Town's Commission on October 22, 2025, … as the Town's Manager" [ECF No. 1 at ¶236]. These statements foreclose the claim. The statements made by a Town Manager to the Town Commission regarding an employee and related personnel matters fall squarely within the scope of official duties as a matter of law. Quintero v. Diaz, 300 So. 3d 288 (Fla. 3d DCA 2020).

The only way to avoid the bar of immunity is to establish that the Town Manager acted "outside his duties and personally as part of a desperate plea to retain his position." [ECF No. 1 at p. 44]. But that claim is unavailing. If the statements were made outside the Town Manager's duties, then the Town is not responsible for such conduct as the employer. See §768.28(1), Florida Statutes. Nevertheless, the allegations demonstrate that the statements were made within the scope of Blumstein's official duties. The defamation claim against the Town therefore fails as a matter of law and Count VII should be dismissed with prejudice.

F.   **Absolute Immunity Also Bars Plaintiff's Defamation Claim Against Blumstein.**

It is well-established that Blumstein is entitled to absolute immunity from Plaintiff's state-law defamation claim. Blumstein's alleged comments during the October 22, 2025 Town Commission meeting were made in connection with the performance of his duties and are well-within the orbit of his responsibilities. See [ECF no. 1 at ¶ 236]; McNayr, 184 So. 2d at 430 (statements made by a public employee within the orbit of his responsibilities are immune, *regardless of how false, malicious, or badly motivated they may be*); Crowder, 987 So. 2d at 168 (sheriff entitled to absolute immunity for press release labeling father as "deadbeat parent").

Plaintiff's allegation that Blumstein made these statements outside the course of his duties as Town Manager is completely contradicted by the Town of Surfside Charter, which makes the

Town Manager "responsible *to the commission* for the proper administration of all affairs of the town[,]" and requires that he "*[k]eep the commission advised* of the financial condition and future needs of the town and make such recommendations as may seem to him desirable." Town of Surfside Charter, Art. III, Sec. 35 (emphasis added).[3] All of Blumstein's alleged statements were made within the orbit of his prescribed responsibilities thereby making him absolutely immune from Plaintiff's defamation claim and requiring dismissal with prejudice of Count VII. Grady v. Scaffe, 435 So. 2d 954, 955 (Fla. 2d DCA 1983) (affirming dismissal *with prejudice* of defamation complaint against county commissioner who allegedly made defamatory remarks at county commission meeting on absolute privilege grounds); see also Garate v. Town of Sw. Ranches, No. 24-CV-62089, 2025 WL 2933895, at *17 (S.D. Fla. July 28, 2025), report and recommendation adopted sub nom. Garate v. Town of Sw. Ranches, Fla., No. 24-62089, 2025 WL 2751040 (S.D. Fla. Sept. 26, 2025) (dismissing defamation claim against town council member where he was clearly acting within the orbit of his duties and responsibilities, and therefore afforded absolute privilege, when he made defamatory statements about plaintiff to the town council); Drisin v. Fla. Int'l Univ. Bd. of Trs., No. 1:16-CV-24939, 2017 WL 3505299, at *20 (S.D. Fla. June 27, 2017), report and recommendation adopted, No. 16-CV-24939-CIV, 2017 WL 10398209 (S.D. Fla. Sept. 28, 2017) (dismissing defamation claim where plaintiff did not plausibly claim that defendants exceeded the governmental privilege that absolutely protects their statements).

---

[3] This Court may take judicial notice of the Town of Surfside Charter, for it is a public record. See Mikov v. Vill. of Palm Springs, No. 23-81565-CIV, 2025 WL 1312506, at *5 n. 5 (S.D. Fla. Mar. 15, 2025) (finding that the Court could take judicial notice of the municipal code as it was a public record not subject to reasonable dispute and whose accuracy could not be questioned); see also Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider" without "converting a motion to dismiss into a motion for summary judgment."). For the Court's convenience, all relevant provisions from the Town of Surfside Charter are attached as **Exhibit "B".**

To the extent that Plaintiff attributes allegedly defamatory statements found in a letter provided to her on or about November 7, 2024 and found in her personnel file, such statements would likewise be subject to absolute privilege. [ECF No. 1, at ¶ 241]. Assuming *arguendo* that Blumstein authored any part of that letter, he would have done so in his advisement capacity as Town Attorney. See Town of Surfside Charter, Art. II, Sec. 28 (Town Attorney "shall act as the legal adviser to, and attorney and counsellor for, the municipality and all of its officers in matters relating to their official duties."). Florida law makes clear that such statements cannot form the basis of a defamation claim against a public official such as Blumstein. See Densmore v. City of Boca Raton, 368 So. 2d 945, 947 (Fla. 4th DCA 1979) ("[Absolute] privilege cannot be extinguished by the fact that a copy of the letter setting out those reasons is filed in Densmore's personnel file. The fact that publication of the reasons for discharge may in fact defame the public employee was a sacrifice knowingly made when the doctrine of absolute immunity was adopted in Florida."); Kribs v. City of Boynton Beach, 372 So. 2d 195, 196 (Fla. 4th DCA 1979) (affirming dismissal with prejudice of defamation complaint on absolute privilege grounds where the termination letter stated that the plaintiff had been guilty of gross misfeasance and dereliction of duty).

**G. Blumstein Is Entitled to Qualified Immunity on Plaintiff's Due Process Claims (Counts V & VI) Because It Is Not Clearly Established That Someone Other Than the Official Decisionmaker Can Be Held Individually Liable Under § 1983.**

Plaintiff's due process claims against Blumstein must be dismissed because Blumstein is entitlement to qualified immunity. "When state officials are sued in their individual capacities, the application of qualified immunity to their actions is the rule rather than the exception[.]" Samedi v. Miami-Dade Cnty., 134 F. Supp. 2d 1320, 1333 (S.D. Fla. 2001) (quoting Braddy v. Florida Dept. of Labor and Employment Sec., 133 F.3d 797, 801 (11th Cir.1998)). It is not premature to

26

grant qualified immunity at this juncture, for questions of qualified immunity should be resolved at the earliest possible stage in the litigation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991); Delgado v. Miami-Dade Cnty., 456 F. Supp. 2d 1234, 1240 (S.D. Fla. 2006) (granting qualified immunity at motion-to-dismiss stage); see also Pearson v. Callahan, 555 U.S. 223, 237 (2009) ("Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'").

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003)) (internal quotations omitted). To assess discretionary authority, courts look to "the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Donald v. Norris, 131 F.4th 1255, 1263 (11th Cir. 2025) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004)) (internal quotations omitted). Once government officials establish that they were acting within their discretionary authority, the burden is on the plaintiff to establish qualified immunity is not appropriate by showing a violation of a constitutional right that was clearly established at the time of the alleged misconduct. Gates, 884 F.3d at 1297. Plaintiff cannot make such a showing because it is not clearly established that someone other than an official decisionmaker can be held individually liable under § 1983 for alleged due process violations. See Kamensky v. Dean, 148 F. App'x 878, 880 (11th Cir. 2005); Broberg v. Gerrard, No. 09-CV-82279, 2010 WL 2869539, at *4 (S.D. Fla. July 20, 2010).

1. **Blumstein acted within his discretionary authority as Town Attorney and Town Manager at the relevant time.**

Blumstein held different positions during his tenure at the Town of Surfside and acted within his discretionary authority at all times. During the alleged investigation into Plaintiff's misconduct, Blumstein was the Interim Town Attorney and Town Attorney. [ECF No. 1 at ¶¶ 10; 27; 48]. Pursuant to the Town of Surfside Charter, the Town Attorney "shall act as the legal adviser to, and attorney and counsellor for, the municipality and all of its officers in matters relating to their official duties." Town of Surfside Charter, Art. II, Sec. 28. During his tenure as Town Attorney, Blumstein is alleged to have participated in the investigation into Plaintiff's misconduct. [ECF No. 1 at ¶¶ 27-28; 31]. His alleged participation involved following up with the Chief of Police, Enrique Doce, on the status of the investigation. [ECF No. 1 at ¶¶ 27-28; 31]. Such actions are surely within the bounds of his discretionary authority as Town Attorney. Cf. Muszik v. Town of Redington Shores, No. 8:22-CV-2387-CEH-SPF, 2024 WL 2273187, at *9 (M.D. Fla. May 20, 2024) (finding mayor's "alleged conduct in both reporting and pursuing the investigation of suspected violations falls within the outer perimeters of her job-related duties as the town mayor").

After Plaintiff's termination by Peter Janowski, **not Blumstein**, on November 7, 2024, Blumstein appeared at the Personnel Appeals Board hearing held by the Town of Surfside. [ECF No. 1 at ¶¶ 59-62]. At the hearing, Blumstein now held the position of Town Manager, and he proceeded to make the case for upholding Janowski's termination of Plaintiff. See [ECF No. at ¶¶ 10; 61-63]. Pursuant to the Charter, the Town Manager has broad duties, which include acting as "chief executive officer and the head of the administrative branch of the town government" and being "responsible to the commission for the proper administration of all affairs of the town." Town of Surfside Charter, Art. III, Sec. 35. It cannot reasonably be argued that Blumstein's participation in the hearing was outside the bounds of his discretionary authority as the chief executive officer of the Town after the employment action had already been taken.

28

Blumstein was also the acting Town Manager when he addressed the Town of Surfside Commission at a meeting on October 22, 2026. [ECF No. 1 at ¶¶ 10; 216]. There, Blumstein made various comments regarding a dispute with an officer from the Town's Police Department regarding officer pay, as well as Plaintiff's termination. See [ECF No. at ¶ 216]. In addition to being "responsible to the commission for the proper administration of all affairs of the town[,]" the Town's Charter provides that the Town Manager must "[k]eep the commission advised of the financial condition and future needs of the town and make such recommendations as may seem to him desirable." Town of Surfside Charter, Art. III, Sec. 35. Blumstein's comments and actions were well-within his discretionary authority as they fall within his prescribed duties to the commission.

### 2. **Blumstein was not an official decisionmaker.**

Plaintiff cannot establish a violation of a clearly established constitutional right because Blumstein was never the official decisionmaker who allegedly deprived Plaintiff of due process. "A 'decisionmaker' is someone 'who has the power to make official decisions and, thus, be held *individually* liable.'" Kamensky, 148 F. App'x at 879 (quoting Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003)) (emphasis in original). To identify a decisionmaker, this court may examine "the statutory authority of the official alleged to have made the decision." Id. (quoting Quinn, 330 F.3d at 1328). In the context of an employee's termination, "a 'decisionmaker' has the power to terminate an employee, **not merely the power to recommend termination**." Id. (quoting Quinn, 330 F.3d at 1328) (emphasis added).

In Broberg v. Gerrard, the court granted the defendant's motion to dismiss and found that the plaintiff had not pled a violation of constitutional rights under the Due Process Clause because the defendant was not the decisionmaker. No. 09-CV-82279, 2010 WL 2869539, at *4. There, the

29

defendant mayor was sued in his individual capacity and alleged to have caused an amendment to a town ordinance in violation of both the Equal Protection Clause and the Due Process Clause. Id. at *2. Because the defendant mayor had no decision-making authority to enact amendments to ordinances or to reject permit extensions by himself, he could not, as a matter of law, be individually liable for the actions of the commission. Id. at *3.

Just as the defendant mayor in Broberg could not be individually liable for the actions of the decision-making commission, Blumstein cannot be individually liable for the actions of the actual decisionmaker here; namely, Peter Janowski, who terminated Plaintiff's employment, the Personnel Appeals Board, which "upheld the termination of her employment notwithstanding the findings it made on February 28, 2025[,]" and the Town Commission, which "adopted the findings of the Personnel Appeals Board to uphold the termination[.]" [ECF No. 1 at ¶¶ 59-60; 67; 69]. Though Blumstein is alleged to have partaken in the investigation into Plaintiff's misconduct, as the Town Attorney, he was without power to terminate Plaintiff on November 7, 2024. That power rested with the Town Manager. Town of Surfside Charter, Art. III, Sec. 35 (stating Town Manager shall be required to "[a]ppoint and remove officers and employees of the town except as otherwise provided by this Charter and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office."). By the time Blumstein became Town Manager, Plaintiff had already been terminated. [ECF No. 1 at ¶¶ 10; 59-60]. Likewise, though Blumstein attended the Personnel Appeals Board hearing and allegedly made the case for upholding Plaintiff's termination, he was without power to uphold or reverse Plaintiff's termination, as that power rested with the Board. Town of Surfside Charter, Art. III, Sec. 31.1 ("The decision of the Personnel Appeals Board, if concurred in by four members of said Board, shall be binding upon the town and the employee."). Lastly, though Blumstein is alleged to have

30

"presented to the Town's Commission for a vote as an add-on to its agenda" the findings of the Personnel Appeals Board regarding Plaintiff's termination, he had no power to vote on the matter. See [ECF No. 1 at ¶ 69]; Town of Surfside Charter, Art. III, Sec. 35.1 ("The town manager shall be entitled to a seat on the commission and shall have the right to take part in the discussions on all matters coming before the commission, but shall have no vote therein.").

At all material times, Blumstein was not the official decisionmaker in Plaintiff's termination, her appeal to the Personnel Appeals Board, or the Town's adoption of the Board's findings. Moreover, he did not suspend Plaintiff on August 6, 2024, and he did not confiscate any of her sick leave she had not used as of November 7, 2024 as he was without power to do so as the Town Attorney. See [ECF No. 1 at ¶ 45] ("Doce signed a document informing Mrs. Goldstein that she was suspended and relieved her of her work duties with pay[.]"); [ECF No. 1 at ¶ 121] ("Doce and the Town took additional adverse actions against Mrs. Goldstein on August 6, 2024, when it suspended her[.]"); Town of Surfside Charter, Art. II, Sec. 28.

Because Blumstein was not the official decisionmaker in any of the actions that allegedly deprived Plaintiff of her due process rights, Count V fails to state a valid claim against Blumstein. Norton v. Broward Cnty. Sch. Bd., No. 24-CV-61874, 2025 WL 2958788, at *6 (S.D. Fla. Oct. 20, 2025) ("While Fam *is* a member of the School Board, which *did* take adverse employment action against Norton, we can't hold Fam individually responsible for the School Board's decisions because she alone was not the final decisionmaker.") (emphasis in original); Sinclair v. Town of Yankeetown, No. 1:07-CV-035-SPM, 2008 WL 660089, at *2 (N.D. Fla. Mar. 7, 2008) ("Though Mayor Clary recommended to the town council that Plaintiff be terminated, the final decision was up to the council members, not Mayor Clary. The mayor was not the final 'decision maker' and therefore, not able to be held individually liable."); Redding v. Tuggle, 2007 WL 2462641 at *28

31

(N.D. Ga. 2007) (holding defendants could not be individually liable for § 1983 claims where they had power only to recommend promotion); <u>Sanders v. City of Selma</u>, No. CIV.A.04-753 B, 2005 WL 3411342, at *4 (S.D. Ala. Dec. 13, 2005) (finding that defendant mayor could not be held individually liable where city council was the entity responsible for the decision not to reappoint plaintiff). Blumstein is entitled to qualified immunity because it is not clearly established that anyone other than the official decisionmaker can be held individually liable in these circumstances. See <u>Kamensky</u>, 148 Fed. Appx. at 880; <u>Kopp v. City of Greensboro</u>, No. 3:15-CV-17 (CAR), 2016 WL 4435085, at *7 (M.D. Ga. Aug. 18, 2016) (granting qualified immunity to defendant mayor because it is not clearly established that anyone other than the official decisionmaker could be held individually liable under § 1983).[4]

### 3. **Blumstein was without power to provide plaintiff with any additional name-clearing hearing because he was no longer employed by the Town.**

In addition to claiming deprivation of a property interest without due process, Plaintiff claims she was deprived of a liberty interest in her good name. [ECF No. 1 at p. 36].

> To recover under § 1983 for a procedural due process claim for deprivation of liberty, plaintiff must show that a (1) false statement, (2) of a stigmatizing nature, (3) attending governmental employee's discharge, (4) was made public, (5) by governmental employer, (6) without meaningful opportunity for an employee name-clearing hearing.

---

[4] In limited circumstances, such as Title VII cases, plaintiffs can invoke the cat's-paw theory, which "provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee." <u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328, 1332 (11th Cir. 1999). Importantly, the Eleventh Circuit explicitly stated that it has not extended the cat's paw theory or "rubber stamp" exception to individual liability under 42 U.S.C. § 1983. <u>See</u> <u>Kamensky</u>, 148 Fed. Appx. at 880 (holding that defendant who had only recommendation power, not termination power, could not be individually liable in First Amendment retaliation claim).

Spechler v. Tobin, 591 F. Supp. 2d 1350, 1360 (S.D. Fla. 2008), aff'd, 327 F. App'x 870 (11th Cir. 2009) (citing Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir.2000); Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1436-37 (11th Cir.1998)). "The hearings granted in such cases serve not to avert the unjustified denial of a specific benefit, but to allow the aggrieved party to 'clear his name.'" Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1046 (11th Cir. 1989) (quoting Campbell v. Pierce County, Georgia, 741 F.2d 1342, 1345 (11th Cir. 1984)). Name-clearing hearings "need not take place prior to his termination or to the publication of related information adverse to his interests." Id. (quoting Campbell, 741 F.2d at 1345).

The allegedly false, stigmatizing statements attributed to Blumstein were made on October 22, 2025.[5] [ECF No. 1 at ¶ 216]. Assuming that Plaintiff was entitled to any kind of name-clearing hearing stemming from these statements, Blumstein definitively could not provide Plaintiff with any such process after he made his comments on October 22, 2025 because he was removed as the Town Manager thereafter on that very same day. [ECF No. 1 at ¶ 10]. Because the law is obvious that name-clearing hearings need not take place before publication of allegedly adverse information related to an employee's termination, and Blumstein's employment with the Town was terminated on the very same day he published allegedly false, stigmatizing information regarding Plaintiff's termination, Blumstein definitively was not a decisionmaker for purposes of granting or denying Plaintiff any alleged due process, i.e., a name-clearing hearing.[6]

---

[5] Plaintiff alleges that Blumstein made these statements "knowing that the Circuit Court for Miami-Dade County had made the findings regarding Mrs. Goldstein (and the Personnel Appeals Board)[.]" [ECF No 1. at ¶ 216]. However, the Circuit Court did not issue its Opinion until December 12, 2025, nearly two months after Blumstein's comments. See [ECF No 1. ¶ 200(f)].

[6] Plaintiff goes on to allege that since the Circuit Court of Miami-Dade County issued its opinion and mandate in December 2025, she "has not received any notice about a resumed Personnel Appeals Board hearing, no Personnel Appeals Board hearing has occurred, she has not been reinstated to her employment with the Town, and no actions favorable to Mrs. Goldstein have been taken to address, remedy, or rectify the matters addressed here." [ECF. No. 1 at ¶ 220]. Because

Blumstein was not an official decisionmaker at any material time, and it is not clearly established that anyone other than an official decisionmaker can be held individually liable under § 1983 for the claims sought. Because there is no case providing Blumstein "fair warning" that any of his actions or inaction as Town Attorney and Town Manager violated Plaintiff's constitutional rights, he is entitled to qualified immunity on both Count V and Count VI. See Hope v. Pelzer, 536 U.S. 730, 741 (2002). [7]

### H. Doce Is Entitled to Qualified Immunity on Plaintiff's 1981 and Due Process Claims (Counts I, II, V & VI)

Qualified immunity is intended to protect "government officials performing discretionary functions from the burdens of civil trials and from liability." Rioux v. City of Atlanta, 520 F.3d 1269, 1282 (11th Cir. 2008) (quoting McMillian v. Johnson, 88 F.3d 1554, 1562 (11th Cir. 1996)). Government officials are shielded from liability to the extent that "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Id. at 1122 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). "The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation." See Harlow, 457 U.S. at 819. "If reasonable public officials could

---

Blumstein's employment with the Town ended on October 22, 2025, he was not an official decisionmaker in December 2025 or any time thereafter. [ECF No. 1 at ¶ 10]. To the extent Plaintiff alleges lack of due process after Blumstein's departure from the Town, such a claim cannot be sustained against Blumstein.

[7] Plaintiff's Complaint also constitutes a shotgun pleading in violation of the Federal Rules of Civil Procedure, requiring dismissal. See McDonough v. City of Homestead, Fla., No. 22-12637, 2023 WL 3035215, at *2 (11th Cir. Apr. 21, 2023) (holding that complaint lumping all defendants together under single count constituted a shotgun pleading); Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1356 (11th Cir. 2018) (holding that amended complaint was a shotgun pleading because it incorporated all the facts into each count); Novak v. Cobb Cnty. Kennestone Hosp. Auth.,74 F.3d 1173, 1175 & n. 5 (11th Cir. 1996) (referring to a complaint that asserted multiple discrete causes of action in a single count as "a quintessential 'shotgun pleading'").

34

differ on the lawfulness of the defendants' actions, the defendants are entitled to immunity." Kingsland v. City of Miami, 382 F.3d 1220, 1231 (11th Cir. 2004) (citation omitted).

To receive qualified immunity, the public official claiming it must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. ld. at 1232. Once the public official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. ld. To deny qualified immunity, the plaintiff must prove that "an official's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow, 457 U.S. at 818). There is a two-part standard that governs qualified immunity claims. First, the court must determine "whether the plaintiff's allegations, if true, establish a constitutional violation." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). Second, the violated right has to be clearly established at the time of the violation. *Id.*

As qualified immunity provides an entitlement not to face the burdens of litigation, the issue of qualified immunity is be resolved at the earliest possible stage in litigation. *See Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). Accordingly, it is appropriate to grant the defense of qualified immunity at the motion to dismiss stage where the plaintiff failed to allege a violation of a clearly established constitutional right. *See id.*

In the instant case, accepting Plaintiff's allegations as true for purposes of this Motion, it is clear that Defendant Doce was acting within his discretionary authority as the Chief of Police in each allegation set forth by Plaintiff alleging any action taken by Defendant Doce. [ECF No. 1]. Moreover, as addressed more fully above, Plaintiff has wholly failed to establish there has been any 1981 violation in Counts I and II; any due process violation where adequate state remedies not

35

only exist, but Plaintiff has availed herself of the same; or that there was any denial of an opportunity for Plaintiff to clear her name where Plaintiff was afforded two hearings during which to contest the allegations brought against her, such that Plaintiff has not established that there has been any constitutional violation, and certainly not such that Defendant Doce knew he violated clearly established statutory or constitutional rights.  Further, and as addressed fully herein, where Doce was not an official decisionmaker at any material time, and it is not clearly established that anyone other than an official decisionmaker can be held individually liable under § 1983 for the claims sought, Doce is entitled to qualified immunity on Counts I, II, V and Count VI.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002).

**WHEREFORE,** Defendants, TOWN OF SURFSIDE, DOCE, and BLUMSTEIN respectfully request entry of an order dismissing the Complaint, together with any other further relief deemed just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 13th day of April, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jeffrey L. Hochman*
Jeffrey L. Hochman
Fla. Bar. No. 902098

*/s/ Mariela E. Tkacik*
Mariela E. Tkacik
Fla. Bar. No. 1030433

Johnson, Anselmo, Murdoch,
Burke, Piper & Hochman, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, Florida 33304
Tel: (954) 463-0100
Fax: (954) 463-2444
hochman@jambg.com
metkacik@jambg.com
cardona@jambg.com
finley@jambg.com
cisaac@jambg.com

## SERVICE LIST

**Brian H. Pollock, Esq.**
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel: 305-230-4884
brian@fairlawattorney.com
*Counsel for Plaintiff*

**Douglas T. Noah, Esq.**
**Patricia M. Rego Chapman, Esq.**
Dean Ringers et al
Capital Plaza I
201 East Pine Street, Suite 1200
Orlando, FL 32801
Tel: (407) 422-4310
dnoah@drml-law.com
PChapman@drml-law.com
*Counsel for Co-Defendant Enrique Doce*

**Lourdes Espino Wydler, Esq.**
Wydler Law
1550 Madruga Ave., Suite 400
Coral Gables, FL 33146
Office: 305-446-5528
lew@wydlerlaw.com

**Jeffrey L. Hochman, Esq.**
**Mariela E. Tkacik, Esq.**
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Ste. 1000
Ft. Lauderdale, FL 33304
Tel: 954-463-0100
hochman@jambg.com
METkacik@jambg.com
cardona@jambg.com
finley@jambg.com
cisaac@jambg.com
*Counsel for Defendant Town of Surfside*