UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-CV-20965-GAYLES/SHAW-WILDER

DINA GOLDSTEIN,

      Plaintiff,

vs.

TOWN OF SURFSIDE, FLORIDA,
ENRIQUE DOCE, and
MARK BLUMSTEIN,

      Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, Dina Goldstein, sues Defendants, Town of Surfside, Florida, Enrique Doce, and

Mark Blumstein, as follows:

### *Parties, Jurisdiction, and Venue*

1.      **Plaintiff, Dina Goldstein**, is a White (non-Hispanic) woman over 18 years old

and has been a *sui juris* resident of Miami-Dade County, Florida, at all times material.

2.      Mrs. Goldstein worked as an employee of the Town from approximately March 31,

2008, to November 7, 2024, when the Town terminated her employment, purportedly for "cause".

3.      During the relevant time, Mrs. Goldstein worked as an "Executive Assistant" and

then as the "Senior Executive Assistant" for the Town's Chief(s) of Police.

4.      **Defendant, Town of Surfside, Florida ("Town"),** is a *sui juris* political

subdivision of the State of Florida and a Florida municipal corporation in this District.

5.      The Town is a "person" within the meaning of 42 U.S.C. §1983, and a commission-

manager system of local government under which its Town Manager has final decision and policy-

1

making authority.

6.      **Defendant, Enrique "Henry" Doce**, is a Hispanic man who was the Town's Chief of Police at all times material to this action, both a decisionmaker and policymaker, a resident of Miami-Dade County, Florida, *sui juris*, and, from time to time, also served as its acting/interim Town Manager.

7.      The Town hired Doce as its Chief of Police on April 1, 2024. Doce then resigned from his position on December 11, 2024. The Town rehired him as its Chief of Police on January 10, 2025, and demoted him to Deputy Chief of Police on or about May 20, 2025.

8.      **Defendant, Mark Blumstein**, is a resident of Surfside, Miami-Dade County, Florida, and *sui juris*.

9.      Blumstein served as interim Town Attorney as of March 24, 2024, under Resolution No. 2024-3279. The Town then hired him as Town Attorney under Resolution No. 2024-3328 on September 10, 2024.[1] The Town then hired Blumstein as its Interim Town Manager under Resolution No. 2024-3344 on December 2, 2024, and as its Town Manager under Resolution No. 2025-3379 on February 21, 2025, before his employment with the Town terminated on October 22, 2025, following a "Vote of No Confidence" by FOP Lodge 135 on October 20, 2025. While employed by the Town, Blumstein was a decisionmaker and policymaker.

10.     At all times material to this Amended Complaint, the individuals associated with the Town, as more fully described and identified below, were employees and public officials of the Town.

11.     From April to August 2024, Mrs. Goldstein worked under/reported to Doce, her

---

[1]      The Town appointed Peter Kankowski as its Town Manager on July 8, 20204, entered into an Employment Agreement with him on July 23, 2024, and terminated his employment as Town Manager in favor of Blumstein on December 2, 2024.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

superior, in the Town's Police Department.

12.     As a result of the incidents described herein, Mrs. Goldstein experienced severe mental anguish, emotional distress, embarrassment, shame, humiliation, damage to her professional standing, damage to her reputation, and other damages as more fully described below.

13.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 in that this is an action to redress violations of Plaintiff's federally protected Constitutional rights and pendent jurisdiction over her Florida common law claim(s).

14.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b), as all events giving rise to this cause of action occurred in this judicial district and because the Town is located in Miami-Dade County, Florida.

15.     Any conditions precedent to filing this lawsuit occurred and/or were satisfied by Mrs. Goldstein.

16.     Mrs. Goldstein retained the undersigned counsel and agreed to pay a reasonable fee for all services rendered.

### *Background Facts*

**<u>The Town</u>**

17.     The most recent demographic data compiled by the U.S. Census Bureau, reported July 1, 2024, reflect that of the Town's 5,719 residents, 71.9% were White alone, 20.8% were Two or More Races, and 28.9% Hispanic or Latino, with 60.9% White alone, not Hispanic or Latino. (https://www.census.gov/quickfacts/fact/table/surfsidetownflorida/PST045224).

18.     By comparison, publicly available information from the Florida Department of Law Enforcement indicates that, as of 2024, the Town's Police Department had an over-representation of Hispanic officers as compared to the community served, considering that of the Town's 30 law

enforcement officers, 10 were reported as White, 17 as Hispanic, and the other 3 as Asian or Black.

| Police Department: Race and Gender - 2024 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Agency Name | White | | Black | | Asian | | Hispanic | |
| | F | M | F | M | F | M | F | M |
| Surfside Police Department | 3 | 7 | | 2 | | 1 | 2 | 15 |

**<u>Dina Goldstein</u>**

19.     Mrs. Goldstein was a stellar employee of the Town and, throughout its leadership changes, a constant within its Police Department.

20.     Every person who evaluated Mrs. Goldstein considered her an exceptional employee across all aspects of her annual performance reviews while working for the Town, as reflected by the ratings she received:

a.  Rogelio J. Torres, Jr., who was the Town's Chief of Police in August 2022, was Mrs. Goldstein's supervisor and rated as "Above Satisfactory" in every category of the Employee Performance Evaluation for October 1, 2021, to September 30, 2022. The laudatory comments by Chief Torres include that "Mrs. Goldstein…

   i.  "demonstrates an unwavering commitment to quality. She performs with unusual accuracy, thoroughness and effectiveness. I have quickly come to trust her work product to be excellent."

   ii.  "is exceptionally reliable and trustworthy when given a project."

   iii.  "develops and maintains effective two-way communications."

b.  John Healy, who was the Town's Chief of Police in September 2023, was Mrs. Goldstein's supervisor and rated her "Above Satisfactory" in every category, the highest possible rating, in the (last) Employee Performance Evaluation completed for October 1, 2022, to September 30, 2023, commenting "Thank you for all you do for the P.D., Town, and Community" in the Employee Performance Evaluation he signed for 2022-23 on September 15, 2023; moreover, the Town Manager at the time, Hector Gomez, also signed her evaluation the same day. Chief Healy's commentary throughout this rating period was entirely laudatory.

4

(Exhibits "A" and "B").

21.     Mrs. Goldstein was awarded Civilian of the Month twenty-eight (28) times and Civilian of the Year seven (7) times during her employment with the Town.

22.     Mrs. Goldstein received numerous other awards, letters of recognition, commendations from supervisors, and accolades praising her initiative and dedication to the Town, all of which were included in her Town personnel file.

23.     Town employees can only be terminated for "cause" after they complete two years of full-time employment.

24.     The Town could only terminate Mrs. Goldstein's employment for "cause" because it employed her for over 16 years.

**The Preliminary, "Other Investigation"**

25.     The Town's Police Department has a policy on "Internal Affairs Investigations," the purpose of which is to "establish proper protocol and procedures for investigating internal affairs," hereinafter referred to as the IA Policy. (Exhibit "C").

26.     The IA Policy specifically provides, in relevant part, as follows:

> The policy of the Surfside Police Department that all complaints against the Department and/or its employees, including anonymous complaints, will be recorded and investigated. Simultaneously, in the interest of fairness and effectiveness of police operations, the reputation of innocent employees must be protected from mistaken or deliberately false reports or accusations. The internal affairs system has been established to accomplish these goals.

*Id.*

27.     The IA Policy applies to the Town's Police Department, the Town, and the Town's employees and third parties contracted to perform investigations, governing the conduct of investigations involving employees of the Town's Police Department, regardless of how or by whom the investigation is prompted. *Id.*

5

28.     The Town's Police Department identifies two types of internal investigations of its employees in its IA Policy:

a.  <u>Internal Affairs Investigations</u> – which are investigated by a person appointed by the Chief of Police and usually involve complaints of a serious nature, such as, but not limited to, any violations of criminal statutes, including arrests, corruption violations, or questions of moral turpitude; and

b.  <u>Shift Level Investigations</u> – which are investigated by a supervisor, where the employee is assigned, and usually complaints of a much less serious nature involving a misunderstanding of procedure, demeanor, or rudeness allegations.

*Id.*

29.     The Town's Police Department also addresses "Complaints by citizens which are not referred to internal affairs" and provides that they are to be handled "by the employee's supervisor with a copy of the initial complaint forwarded to [her], " and that the Chief of Police or his designee will notify every complainant of the results of the investigation within one week after its conclusion." *Id.*

30.     In contravention of the Town Police Department's IA Policy regarding the types and conduct of investigations of its employees, Doce and Blumstein coordinated to have the Town's Police Department conduct another type of investigation of Mrs. Goldstein in 2024, which will be referred to hereafter as an "Other Investigation," that was <u>not</u> an Internal Affairs Investigation, a Shift Level Investigation, or a "Complaint by citizens which [was] not referred to internal affairs." *Compare id.*

31.     Although the Town has standardized policies and procedures applicable to Internal Affairs Investigations and Shift Level Investigations, it did not have any policies, procedures, rules, or regulations authorizing the initiation or conduct of the "Other Investigation" of Mrs. Goldstein. (Exhibit "C").

6

32.     The lack of any applicable policies or procedures regarding the conduct of the "Other Investigation" that Doce and Blumstein coordinated to be conducted of Mrs. Goldstein lacked any protections of the sort afforded by the policies, procedures, rules, and regulations applicable to Internal Affairs and Shift Level Investigations at the Town's Police Department.

33.     The Town's Police Department had no provision, policy, procedure, or mechanism for the Chief of Police to meet with the internal affairs investigator before completion of an investigation (internal or shift level) other than as a complainant, to initiate an internal affairs investigation, to assign the investigator, or as a witness, and does not provide for him to provide input into, or interfere with these investigation.

34.     The Town's Police Department had no provision, policy, procedure, or mechanism for the Town Manager to meet with the internal affairs investigator during an investigation other than as a complainant or witness, since its IA Policy provides that the investigation is to be kept confidential unless one of the specified exceptions exists. (Exhibit "C").

35.     In fact, the IA Policy specifically prohibits employees "having knowledge of or involved as a subject or witness in a complaint shall not… independently participate in the investigation; contact… any witnesses concerning the allegations; and from engaging in other conduct.

36.     Likewise, there was no mechanism, policy, or procedure in place at the Town's Police Department that would entitle the Town Manager or Chief of Police to obtain status updates of a pending, incomplete investigation, which is normally confidential until completed.

37.     Similarly, there was no mechanism, policy, or procedure in place at the Town's Police Department that would permit or provide for Blumstein, as the *Interim* Town Attorney, to

provide input, suggestions, or obtain status updates of a pending, incomplete investigation of a Police Department employee. (*Compare* Exhibit "C").

38. Lastly, the Town's Police Department lacked any policy or procedure that would permit the Town Attorney, whether interim or permanent, to propose changes to an investigative report involving a Police Department employee.

39. The materials provided by the Town in response to Mrs. Goldstein's public records request(s) relating to the "Other Investigation" did not identify who initiated and/or was the complainant, or any emails or other documents reflecting when the "Other Investigation" was initiated or the conduct to be investigated.

40. Doce and Blumstein initiated the "Other Investigation" against Mrs. Goldstein for allegations of conduct allegedly occurring in 2022 and 2023, meaning this "Other Investigation" of Mrs. Goldstein was to address conduct allegedly occurring:

    a. Within the time covered by the 2021-22 Employee Performance Evaluation of Mrs. Goldstein, completed by the Town's Former Chief of Police Torres; and

    b. Within the time covered by the 2022-23 Employee Performance Evaluation of Mrs. Goldstein, completed by Former Chief Healy.

(*See* ¶20, above.)

41. Meanwhile, Doce claims to have received a call from a homeowner who allegedly saw a Nextdoor post by Mrs. Goldstein's husband stating that Doce handled dispatch in the middle of the night.

42. Doce attributed the disclosure of this fact to Mrs. Goldstein, contending it was sensitive, privileged, and not to be repeated.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

43.     Rather than have someone from Internal Affairs or a member of the Town's Police Department interview the homeowner, as would be the proper procedure, Doce had a clandestine meeting with this homeowner.

44.     Doce did not make or keep records of the homeowner he claims to have called about the Nextdoor post, nor about his subsequent in-person meeting with the homeowner (lasting over an hour); he did not record or otherwise document the encounter; and did not personally see any Nextdoor post or reproduction of any Nextdoor post regarding his taking dispatch (or any other digital evidence related to that post), and he did not inform dispatch or anyone else about his meeting with the homeowner.

45.     By July 1, 2024, the "Other Investigation" of Mrs. Goldstein had progressed to the point that the Deputy Chief Holbrook shared a draft of the "Investigation Report," referred to by Defendants as dina.docx, with Doce, based on the discipline policy that Mark [Blumstein] sent us" to solicit Doce's input and/or commentary before finalizing the "Investigation Report," which addressed the following conduct:

    a. **Violation of Comp. Time Policy** (Sgt. Torres and Officer Valino exceeded the 300-hour compensatory time limit in 2022, and Sgt. Torres and Sgt. Matelis exceeded the 300-hour compensatory time limit in 2023);

    b. **Trust and Confidentiality Issues** (leaked sensitive information, including information her husband posted on social media).

    c. **Lack of Competence in Job Responsibilities** (identifying lack of proficiency in PowerPoint, payroll systems, and schedule creation);

    d. **Suspicious Behavior** (unauthorized access to the office on weekends under the pretext of catching up on payroll, her opposition to automated payroll and scheduling systems).

    e. **Potential Payroll Fraud** (allegations of payroll fraud involving Sgt. Rory); and

  f. **Failure to Comply with Direct Request** (not having responded by July 1, 2024, to Doce's email sent on June 20, 2024, requesting she email a list of her job functions and duties.

(Exhibit "D").

46. Thereafter, in early July (2 or 3) 2024, Blumstein texted Doce to see how the "investigation" of Mrs. Goldstein was proceeding.

47. Doce responded by text message to Blumstein later that same day that the "investigation" was "going well" and that he was having the internal affairs office of the Town's Police Department meet with him "for an overview" of the investigation of Mrs. Goldstein.

48. Doce went on to tell Blumstein that Mrs. Goldstein and several of the Town's police officers were engaged in a "scam" and that Mrs. Goldstein "knew exactly what she was doing" to indicate that she had intentionally engaged in unlawful, criminal conduct.

49. The "Other Investigation" orchestrated by Doce and Blumstein resulted in the completion of a document entitled "Investigation Report: Unauthorized Compensation and Violations in the Town of Surfside" which lacked a case number, the name of the complainant, the identity of the investigator(s) or employee(s) completing or participating in the investigation or the "Investigation Report," but which contained Findings, Additional Findings, a Conclusion, and a Summary of Findings, and which included a proposed letter to Mrs. Goldstein dated July 9, 2024.

50. Prior to finalizing the "Investigation Report," referred to by Defendants as dina.docx, Doce and Blumstein were given working drafts to solicit their input and/or commentary, and they provided their input and feedback, including changes to the "Investigation Report," before it was finalized.

51. The "final" version of the proposed letter to Mrs. Goldstein, dated July 9, 2024, indicated that its purpose was to inform her that she was being "relieved of [her] duties as Senior

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

Executive Secretary with the Surfside Police Department pending a thorough investigation" involving the following, modified findings based on the directions and input provided by Doce and Blumstein:

    a. **Violation of Comp Time Policy** (finding that as a result of her actions, "the Town of Surfside [is] liable and subject to Civil Fines by the Fair Labor Standards Act (FLSA)";

    b. **Trust and Confidentiality Issues** (finding that Mrs. Goldstein "leaked sensitive information compromising the integrity and security of the police department's operations" over "multiple instances");

    c. **Lack of Competence in Job Responsibilities** (finding lack of proficiency in PowerPoint, payroll systems, and schedule creation); and

    d. **Potential Payroll Fraud** (claiming "There are serious allegations of potential payroll fraud" and that "This matter is currently under investigation.")

(Exhibit "E").

52. Doce then directed that an Internal Affairs investigation be opened against Mrs. Goldstein, identifying himself as the Complainant.[2]

**The Ramos Report**

53. Deputy Chief Holbrook spoke with Oswaldo Ramos, a City of Miami Beach Police Department Sergeant, on August 1, 2024, to request an in-person meeting.

54. Doce and Deputy Chief Wayne Holbrook met with Ramos later that day to discuss matters involving Mrs. Goldstein and the Internal Affairs investigation Ramos was to conduct.

55. On August 6, 2024, Doce informed Mrs. Goldstein that she was being suspended pending an investigation and that she would be contacted by the State Attorney's Office.

---

[2] It is unclear from the records produced in response to the requests made to the Town under Chapter 119, Florida Statutes, whether Doce, Blumstein, or the Town sent a copy of the Investigative Report (dina.docx) to the State Attorney's Office, as the materials produced in response did not identify any such emails.

56. Deputy Chief Wayne Holbrook sent Mr. Ramos an email on August 6, 2024, indicating that Mrs. Goldstein was relieved of her work duties, alleged to have violated the compensatory leave time policy for several of the Town's police officers, leaked sensitive operational information, lacked competence in her job duties, and committed potential payroll fraud, and attached a copy of the "Detailed findings and evidence" in a document entitled "Dina.docx" (the document referred to above as generated from the "Other Investigation").

57. The Town engaged Oswaldo Ramos from the Miami Beach Police Department to conduct an Internal Affairs investigation of Mrs. Goldstein, SPD Case No. 2024-2092, to conduct an "administrative investigation" of the allegations identified above against Mrs. Goldstein.

58. Doce signed a document informing Mrs. Goldstein that she was suspended and relieved her of her work duties with pay, placed her on virtual "house arrest" by requiring that she remain at her home from 0900 to 1700 as of August 6, 2024, requiring she obtain authorization from the Captain of Police or his designee and use accrued leave time, and precluding her from earning/receiving holiday pay while relieved of duty with pay.

59. Before conducting any investigation, Ramos contacted the Miami-Dade State Attorney's Office on August 26, 2024, to request that it prosecute Mrs. Goldstein, presumably based on the results of the "Other Investigation" and on the urging of Doce and Deputy Chief Wayne Holbrook, but the office declined to initiate a criminal prosecution of Mrs. Goldstein.

60. Ramos again contacted the Miami-Dade State Attorney's Office on September 5, 2024, to plead for criminal prosecution of Mrs. Goldstein, but they decided not to pursue criminal charges.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

61.     Doce then assigned Sgt. Matelis to oversee the parking permit program while Mrs. Goldstein was suspended (despite the issues involving Sgt. Matelis exceeding the 300-hour limit for compensatory time in 2023).

62.     According to Doce, business managers began asking Sgt. Matelis for free parking passes, and he brought those requests to Doce's attention, who directed that Ramos expand his investigation of Mrs. Goldstein to include issues related to the parking permits.

63.     Deputy Chief Wayne Holbrook then sent an email to Ramos on September 12, 2024, requesting that the investigation be expanded to include Mrs. Goldstein's handling of parking permits to the scope of the investigation and directed that, "We ask you clear this matter with the State Attorney's Office to ensure there is no criminal liability involved," copying Doce and Blumstein on the email (as the individuals who requested that Mrs. Goldstein be criminally prosecuted) and indicating their positions as Chief of Police (Doce) and Town Attorney (Blumstein), respectively.

64.     Later that day, September 12, 2024, Ramos followed the directions given to him and contacted the Miami-Dade State Attorney's Office to request that they prosecute Mrs. Goldstein based on "new information" purportedly received, but it again decided not to prosecute her.

65.     Ramos's "investigation" involved speaking with Doce and Deputy Chief Wayne Holbrook, reviewing the materials they sent over, and then interviewing Mrs. Goldstein.

66.     Ramos did not take recorded statements from Doce or Deputy Chief Wayne Holbrook as part of his Internal Affairs investigation.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

67. Although the Internal Affairs investigation considered the time submitted by several of the Town's police officers, Ramos did not contact them or the supervisor who approved their time at issue in the investigation for which a claim was made against Mrs. Goldstein.

68. Ramos made one (or two) phone call(s) to (the wrong number for) Mayte Gamiotea, the former Town finance employee who had firsthand knowledge of the issues relating to the police officer time banks, the guardrails that existed and were subsequently removed from the timekeeping system, and the parking permits at issue. Although Ms. Gamiotea left the Town to work for North Bay Village (a neighboring municipality), Ramos did not leave a message, did not make any other attempt to speak with her, such as sending an email to her, calling her again during work hours, or contacting her superiors to request they coordinate for Ms. Gamiotea to call him.

69. Ramos nonetheless recognized that Mrs. Goldstein reported to Ms. Gamiotea that the finance department's cap to prevent members of the FOP (i.e., sworn law enforcement officers employed by the Town) from accumulating more than 300 hours of compensatory time had lapsed and that she reported each time a sworn law enforcement officer exceeded 300 hours of banked compensatory time.

70. Ramos also made one phone call to a number he believed was for John DiCenso, a former Chief of Police for the Town, but it was not the number given to him for DiCenso (it was a wrong number). Ramos made no further attempt to contact DiCenso before concluding his report.

71. In the end, Ramos conducted a "sham" of an investigation that did not follow the Town's or the City of Miami Beach's protocol for internal affairs investigations, and the only "witness" from whom he took a recorded statement before completing his report was Mrs. Goldstein.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

72. Besides containing a summary of Mrs. Goldstein's recorded interview, wherein she reasonably explained all actions taken and gave no basis to find the claims against her had merit, the Ramos Report was basically a repackaged summary of the materials provided to him by Doce and Holbrook.

73. The Ramos Report did not identify any evidence supporting the claims made against Mrs. Goldstein, as it identified: no written policy or procedure that she violated, no personal gain that she obtained in her actions, no verbal directive from a superior that she ignored, no evidence that she was derelict or incompetent in her job duties, and no evidence that she improperly divulged any confidential or sensitive information.

74. Nonetheless, having gotten what they wanted from Ramos in a Report repackaging their baseless claims to oust Mrs. Goldstein, Doce, Blumstein, and the Town received the Ramos Report and used it as a basis to find "cause" to initiate proceedings to terminate Mrs. Goldstein's employment with the Town.

**Additional Actions Against Mrs. Goldstein**

75. Although the Report from Ramos uses the framework for an investigation of a law enforcement officer to Mrs. Goldstein, as a civilian working in the Town's Police Department, with a sworn IA Affidavit, recorded sworn interview with a citation to Fla. Stat. §§112.532 and 112.533, the Relief-of-Duty-with-Pay form normally used with sworn law enforcement officers, its investigation addressed matters outside 180-day window imposed by Fla. Stat. §112.532(6), although this statute may not be applicable to Mrs. Goldstein.

76. Meanwhile, Doce determined that Mrs. Goldstein would not receive an Employee Performance Evaluation for 2023-24 or PAF because she was "under investigation," despite the absence of any policy, procedure, regulation, or Ordinance excepting Mrs. Goldstein from being

15

entitled to receive an annual evaluation and PAF for a merit increase, and communicated his decision to the Town's HR department by email.

77.     The Town accepted Doce's refusal to provide Mrs. Goldstein with an annual evaluation and PAF for a merit increase based on her 2023-24 performance, thereby ratifying his conduct, as she received neither an Employee Performance Evaluation for 2023-24 nor a merit increase through the date of termination.

78.     On November 7, 2024, and Peter Jankowski relied on the Ramos Report generated in connection with SPD Case No. 2024-2092, and, on behalf of the Town used it as the basis to find Mrs. Goldstein "in violation of the Town's Compensatory Leave Policy," that she "divulged sensitive, privileged information to the public that [she] could only have only learned from [her] employment with the Town and role with SPD, and that [she] did so without authorization, and "oversight of the Parking Program referenced in the Report to be at least a neglect of duty, incompetence, the result of poor judgment, and/or a violation of Town Code, its policies and procedures, resulting in a significant financial loss to the Town spanning years."

79.     On November 7, 2024, Jankowski emailed the Town's elected officials that he was having termination papers delivered to her that day, and copied Doce and Blumstein on that email, after which Doce replied to confirm that the termination papers were delivered to Mrs. Goldstein at 1:00 p.m.

80.     In advance of the Letter of Termination, the Miami-Dade State Attorney's Office Public Corruption Unit, through Assistant State Attorney Sandra Miller-Batiste, and Division Chief Assistant State Attorney Tim Vandergeisen, declined to investigate or pursue criminally any of the matters that the Letter of Termination characterizes as "fraud." The State Attorney's Office instructed the Town to keep the matter administrative.

16

81.     Despite the State Attorney's Office's declination, the Letter of Termination retained the stigmatic characterization of Plaintiff's alleged conduct as "fraud".

82.

83.     Mrs. Goldstein timely appealed the termination of her employment to the Town's Personnel Appeals Board pursuant to Section 2-151 of the Town's Code of Ordinances.

84.     The Town held a Personnel Appeals Board hearing, which commenced on February 28, 2025, and reconvened on March 10, 2025.

**The Personnel Appeals Board Hearing**

85.     Blumstein engaged in the following, leading up to the Personnel Appeals Board hearing held on February 28, 2025, and March 10, 2025:

a.     As Town Attorney, he drafted and supplied to the Surfside Police Department the discipline-policy framework that was used on (and after) July 1, 2024, to author a preliminary discipline letter naming Mrs. Goldstein before any Internal Affairs investigation had been initiated;

b.     As Town Attorney, he participated in the scoping of the Internal Affairs investigation of Mrs. Goldstein, initiated on August 1, 2024;

c.     As Town Attorney, he served as an advisor regarding the Internal Affairs Investigation of Mrs. Goldstein;

d.     Attended Mrs. Goldstein's sworn interrogation conducted in connection with the Internal Affairs Investigation on September 25, 2024; and

e.     Providing legal advice to the Town Manager in connection with the issuance of the letter terminating her employment dated November 7, 2024;

f.     As Town Attorney, he received a copy of the letter dated November 7, 2024, terminating Mrs. Goldstein's employment.

86.     Blumstein ultimately appeared at the "hearing" before the Personnel Appeals Board as the Town Manager and, in essence, its prosecutor, following his personal involvement in the events leading up to it.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

87. Blumstein further disparaged Mrs. Goldstein before the Personnel Appeals Board by making baseless claims against her and by asserting unsupported presumptions as facts sufficient to uphold his/the decision to terminate her employment for cause.

88. Doce engaged in similar tactics at the Personnel Appeals Board by continuing to espouse a false narrative about Mrs. Goldstein to support his/the decision to terminate her employment for cause.

89. The evidence at the hearing established that Defendants had engaged in a witch hunt against Mrs. Goldstein, that she did not violate any laws, rules, or regulations, and that no cause existed to terminate her employment.

90. Blumstein advised the Personnel Appeals Board during the "hearing" that although Mrs. Goldstein was "not the sole person responsible" and that although the "officers involved are the others" who continued working for the Town, "They were treated differently" than Mrs. Goldstein.

91. When the Personnel Appeals Board voted, it determined that the Town lacked cause to terminate Mrs. Goldstein's employment at the portion of the hearing held on February 28, 2025, and asked the parties to reconvene if they were unable to resolve the matter amongst themselves.

92. The Personnel Appeals Board resumed its hearing on the termination of Mrs. Goldstein's employment on March 10, 2025, at which it upheld the termination of her employment notwithstanding the findings it made on February 28, 2025.

93. The Town's decision was rendered without due process of law, departed from the essential requirements of the law, and was not supported by competent, substantial evidence.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

94. The Town adopted the findings of the Personnel Appeals Board to uphold the termination of Mrs. Goldstein's employment for cause in Resolution No. 2025-3386 on March 11, 2025, when Blumstein presented to the Town's Commission for a vote as an add-on to its agenda.

95. Thus, by the time the Town's Commission voted on Resolution No. 2025-3386, it knew of the factual history underlying the decision to uphold the termination of Mrs. Goldstein's employment, including the decisions rendered by the Personnel Appeals Board members on February 28, 2025, finding no cause existed to support the decision to terminate her employment.

96. The Town adopted Resolution No. 2025-3386 anyway, adopting the decision by its Appeals Board on March 10, 2025: 1) finding that the Town had a basis for the adverse employment decision with respect to Goldstein; 2) finding that the Town Manager or his designee acted with cause in terminating Goldstein; and 3) dismissing the Appeal on the merits on March 10, 2025, while failing to mention the decision(s) it reached on February 28, 2025.

97. By adopting and passing Resolution No. 2025-3386, the Town's Commission formally ratified the actions taken by Doce, Blumstein, and the Personnel Appeals Board.

98. Since March 10, 2025, no action has been taken to resume a Personnel Appeals Board Hearing for Mrs. Goldstein, reinstate Mrs. Goldstein's employment, restore the pay and benefits to which she would have been entitled through her continued employment to the date of reinstatement, and has otherwise acted as though the decision to terminate Mrs. Goldstein's employment has not been disturbed.

## COUNT I – VIOLATION OF 42 U.S.C. §1983
### (Discrimination in Violation of §1981)

99. The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), makes it unlawful to discriminate against an employee because of race, ancestry, or ethnic

19

characteristics:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

100.   Section 1983 provides that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

101.   Mrs. Goldstein is White/non-Hispanic, and she was treated worse than her Hispanic counterparts.

102.   Doce, who served as the Town's Chief of Police and Interim Town Manager, is Hispanic and had decision-making and policymaking authority at all times material.

103.   When Jankowski was the Town Manager, and whenever Doce did not have policymaking authority, Jankowski relied on the (mis)information provided to him by Doce, Doce influenced his decision-making, and/or Doce (improperly) influenced the "investigation(s)" conducted of Mrs. Goldstein, in making any relevant decisions at issue herein.

104.   Doce treated Mrs. Goldstein differently (worse) than her non-Hispanic colleagues, including yelling at her, embarrassing her in front of colleagues, and holding conversations at work in Spanish, knowing that Mrs. Goldstein did not speak Spanish.

105.   Mrs. Goldstein complained to Yamileth Slate-McCloud, Human Resources for the Town, about the treatment she was receiving at work because of her race, who responded that nothing could be done until a formal complaint was filed against Doce.

20

106.	Mrs. Goldstein escalated her complaint to Marisol Vargas, Acting Town Manager, who spoke to Doce about the issues she raised, but this discussion did not result in any positive change; in fact, things escalated.

107.	Jose "Jay" Matelis, Julio Torres, and Jose Valino were the police officers who were allowed to "bank" additional time beyond 300 hours, and all of them are Hispanic (although none took any adverse actions against Mrs. Goldstein and are identified herein to establish how they were treated differently than her because of her race).

108.	Mrs. Goldstein received no financial or other benefit from Matelis, Torres, or Valino exceeding 300 hours of banked time, unlike each of them, who, arguably, received the benefit of this additional banked time.

109.	Mrs. Goldstein's employment had not been terminated, nor had any internal affairs investigation of her been completed. Doce believed it was a foregone conclusion that Mrs. Goldstein would not be returning, due to his active participation, involvement, influence, and decision-making, and wanted to hire others who were Hispanic to permanently replace her.

110.	Doce recommended that the Town hire Michell Sanchez, Maria Teresa Fernandez Alvarez, and Stephanie Kamer to work for him in the Town's Police Department, all of whom are Hispanic women hired to replace Mrs. Goldstein.

**Mrs. Goldstein's Replacement(s)**

111.	After Doce initiated and he and Blumstein influenced the investigation(s) of Mrs. Goldstein, Doce requested that the Town hire several full-time employees to fill administrative positions within its police department.

112.	Doce used and/or provided to the Town to use the duties Mrs. Goldstein supplied to him on July 1, 2024, in soliciting applications for employment to fill her position.

**A.      Michell Sanchez**

113.     Doce knew Michell Sanchez from their time working together at the City of Miami Beach Police Department.

114.     Michell Sanchez is Hispanic.

115.     The City of Miami Beach Police Department recommended the termination of Michell Sanchez's employment after an internal affairs investigation sustained findings that she committed rule and ethics violations involving $911.25 she took from its evidence room, for which she was responsible.

116.     Doce knew about the allegations against Michell Sanchez and was on the 3-person panel that recommended terminating her employment with the City of Miami Beach.

117.     Doce urged Michell Sanchez to apply for employment with the Town, which resulted in her submitting an application for employment to the Town on August 11, 2024, shortly after Mrs. Goldstein was suspended with pay, indicating that she left her employment with the City of Miami Beach due to "Resignition [sp]" and indicated that she was asked to resign because the "Investigation that was not validated." She further denied ("No") that she was a witness, suspect, or subject of a police investigation.

118.     Although her checkered employment history should have disqualified Michell Sanchez from employment with the Town, Doce recommended that the Town hire her, and he then signed a letter extending a written offer of employment to her on August 16, 2024, which she countersigned to accept on August 19, 2024.

119.     Doce interviewed Michell Sanchez and, thereafter, conducted an in-person interview with her, such that the Town has (and/or produced) no notes reflecting the interview; the result of the interview was Doce's recommendation that Michell Sanchez be hired.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

120.    When hiring a civilian employee to work for its Police Department, the Town's standard operating procedure is to review the candidate's personnel file from their prior employers, including when the employer was a municipality, and to run their fingerprints through a criminal records database before extending an offer of employment.

121.    The Town did not follow its standard operating procedure by reviewing Michell Sanchez's employment file from the City of Miami Beach, by conducting the customary background check, running her fingerprints before extending her an offer of employment, or otherwise, because she is Hispanic, and based on Doce's recommendation and approval of her hiring.

122.    In fact, no one from the Town's Police Department reviewed Michell Sanchez's personnel file from the City of Miami Beach or ran her fingerprints before extending the offer of employment to her.

**B.    Stephanie Michelle Kamer**

123.    Stephanie Michelle Kamer is Hispanic and

124.    Stephanie Michelle Kamer applied for an Administrative Aide position with the Town's Police Department on August 20, 2024.

125.    The Town quickly completed a background investigation for Stephanie Michelle Kamer on October 8, 2024.

126.    The Town offered Stephanie Michelle Kamer an Administrative Aide position for its Police Department on November 6, 2024, the day it terminated Mrs. Goldstein's employment, pursuant to a written offer letter

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

127. Stephanie Michelle Kamer accepted the offer of employment on November 7, 2024, and the Town hired her to perform job duties previously performed by Mrs. Goldstein that day.

### C. Maria Teresa Fernandez Alvarez

128. Maria Teresa Fernandez Alvarez, who is also Hispanic, submitted an Application for Employment with the Town on October 2, 2024, while Mrs. Goldstein was suspended.

129. The Town quickly completed a background investigation for Maria Teresa Fernandez Alvarez on October 8, 2024.

130. The Town offered Maria Teresa Fernandez Alvarez an Administrative Aide position for its Police Department on November 6, 2024, the day it terminated Mrs. Goldstein's employment, pursuant to a written offer letter.

131. Maria Teresa Fernandez Alvarez accepted the offer of employment on November 7, 2024, and the Town hired her to perform job duties previously performed by Mrs. Goldstein that day.

### COUNT I$_A$ - VIOLATION OF 42 U.S.C. §1983
### (Race Discrimination Against Doce – Violation of §1981)

Plaintiff, Dina Goldstein, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

132. Doce discriminated against Mrs. Goldstein by failing to treat her the same as or similarly to non-Hispanic employees because of her race.

133. Because of her race (as a non-Hispanic), Doce sought out ways to take adverse employment actions against Mrs. Goldstein, including by one or more of the following:

   a. Requiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform;

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

b. Improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility;

c. Making false claims against Mrs. Goldstein;

d. Contending actions occurring more than a year before were problematic, violative of the Town's policies and procedures, criminal, and untruthful/unethical, despite her having received a stellar annual review during the relevant time; and

e. Other ways to be uncovered through discovery.

134. The differential treatment of Mrs. Goldstein, the investigations conducted of her, the statements, decisions, and actions made and taken by Doce, the subsequent suspension and termination of Mrs. Goldstein's employment; the disparaging, demeaning, and untrue statements made about her and placed into her personnel and internal affairs file; and the differential treatment that Mrs. Goldstein received from Doce because of her race constitute one or more adverse employment actions within the meaning of Section 1981, for which Section 1983 provides Mrs. Goldstein with a legal recourse against Doce.

135. These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

136. Doce's actions were malicious and demonstrated a reckless indifference to Mrs. Goldstein's rights, culminating in the termination of her employment.

137. The aforementioned acts of commission and omission by Doce were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

138. Doce's conduct was undertaken with knowledge of, or deliberate indifference to, Mrs. Goldstein's clearly established constitutional rights, entitling her to recover punitive damages from him.

139. As a direct and proximate result of Doce's acts and omissions, Mrs. Goldstein has suffered and continues to suffer damages, including but not limited to: loss of past and future wages

25

and benefits; loss of retirement contributions and accruals; loss of professional reputation; emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and other compensatory damages.

140. Mrs. Goldstein is entitled to recover her attorney's fees and costs from Doce upon prevailing in this action.

WHEREFORE, Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Enrique Doce, after a trial by jury, declaring that Doce violated her equal protection rights; awarding her compensatory damages, including past and future lost income, lost benefits, seniority rights, and retirement contributions; compensatory damages for mental anguish and emotional distress, loss of dignity, and other intangible injuries; punitive damages, granting her a permanent injunction against Doce from engaging in unlawful race discrimination, promoting her to the position she should hold if she were not discriminated against; and awarding her taxable costs and attorney's fees.

## COUNT I$_B$ – VIOLATION OF 42 U.S.C. §1983
### (Race Discrimination Against The Town – Violation of §1981)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 131 as though set forth fully herein and further alleges as follows:

141. The Town discriminated against Mrs. Goldstein by failing to treat her the same as or similarly to non-Hispanic employees because of her race in violation of §1981, including by delegating its decision-making to Doce and/or rubber-stamping his decisions and actions as they related to and affected Mrs. Goldstein, as set forth above and in more detail below.

142. Before April 2024, the Town did not review issues, actions, concerns, and/or inactions involving its employees that occurred more than a year earlier (without being prompted by a complaint from a fellow employee or citizen) as a basis for conducting an investigation into

that employee, taking an adverse employment action against an employee, suspending that employee, or terminating that employee.

143. The Town took adverse actions against Mrs. Goldstein in and around July through August 2024, when it initiated the "Other Investigation" against her, which was performed without any policy, procedure, or basis in the Town's regulatory or governing documents, policies, or procedures; conducted and completed without any policies or procedures; and based on the direction of Doce, Blumstein, and others prior to be issued to Mrs. Goldstein and used as a basis to suspend her from her employment.

144. The Town took adverse action against Mrs. Goldstein after issuing its "Investigative Report" regarding her, known as dina.docx, which contained false, disparaging, stigmatizing, and harmful information about her work performance, capabilities, honesty, and conduct at work.

145. The Town took adverse action against Mrs. Goldstein on August 6, 2024, by suspending her, relieving her of her duties, and placing her on "house arrest" pending a final employment determination.

146. The Town accepted, agreed with, and ratified Doce's conduct by soliciting applicants for hire to replace Mrs. Goldstein, notwithstanding the fact that Mrs. Goldstein remained employed by the Town.

147. The Town ratified Doce's hiring decision(s)/recommendations and hired Michell Sanchez, Maria Teresa Fernandez Alvarez, and Stephanie Kamer to work for Doce in the Town's Police Department, all of whom are Hispanic.

148. The differential treatment of Mrs. Goldstein, the investigations conducted of her, the statements, decisions, and actions made and taken by those with decision-making authority against her, the subsequent suspension and termination of Mrs. Goldstein's employment; the

27

disparaging, demeaning, and untrue statements made about her and placed into her personnel and internal affairs file; and the differential treatment that Mrs. Goldstein received because of her race constitute one or more adverse employment actions within the meaning of Section 1981, for which Section 1983 provides Mrs. Goldstein with a legal recourse against the Town.

149. These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee, thereby violating Mrs. Goldstein's rights under 42 U.S.C. §§1981 and 1983.

150. The Town's actions were malicious and demonstrated a reckless indifference to the rights of Mrs. Goldstein, culminating in the termination of her employment.

151. The aforementioned acts of commission and omission by the Town were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

152. Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, loss of retirement contributions and accruals, emotional distress, mental anguish, loss of dignity, and other intangible injuries as a direct and proximate result of the Town's actions.

153. Mrs. Goldstein is entitled to recover her attorney's fees and costs from the Town upon prevailing in this action.

WHEREFORE, Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after a trial by jury, declaring that Defendant violated 42 U.S.C. §§1981 and 1983 by retaliating against her; awarding her compensatory damages, including past and future lost income, lost benefits, seniority rights, and retirement contributions; compensatory damages for mental anguish and emotional distress, loss of dignity, and other intangible injuries; granting her a permanent injunction against the Town from

28

discriminating against employees because of their race; promoting her to the position she should hold if she were not discriminated against; and awarding her taxable costs and attorney's fees.

## COUNT II – VIOLATION OF 42 U.S.C. §1983
### (Discrimination in Violation of the Equal Protection Clause)

154. Under the Equal Protection Clause, public employees have a constitutional right to be free from unlawful discrimination based on race (including ancestry and ethnic characteristics) in public employment.

155. Section 1983 provides that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

156. Mrs. Goldstein is White/non-Hispanic, and she was treated differently (worse than) her Hispanic counterparts.

157. Doce, who served as the Town's Chief of Police and Interim Town Manager, is Hispanic and had decision-making and policymaking authority at all times material.

158. When Jankowski was the Town Manager, and whenever Doce did not have policymaking authority, Jankowski relied on the (mis)information provided to him by Doce, Doce influenced his decision-making, and/or Doce (improperly) influenced the "investigation(s)" conducted of Mrs. Goldstein, in making any relevant decisions at issue herein.

159. Doce treated Mrs. Goldstein differently (worse) than her non-Hispanic colleagues, including yelling at her, embarrassing her in front of colleagues, and holding conversations at work in Spanish, knowing that Mrs. Goldstein did not speak Spanish.

29

160. Mrs. Goldstein complained to Yamileth Slate-McCloud, Human Resources for the Town, about the treatment she was receiving at work because of her race, who responded that nothing could be done until a formal complaint was filed against Doce.

161. Mrs. Goldstein escalated her complaint to Marisol Vargas, Acting Town Manager, who spoke to Doce about the issues she raised, but this did not result in any positive change; in fact, things escalated.

162. Jose "Jay" Matelis, Julio Torres, and Jose Valino were the police officers who were allowed to "bank" additional time beyond 300 hours, and all of them are Hispanic (although none took any adverse actions against Mrs. Goldstein and are identified herein to establish how they were treated differently than her because of her race).

163. Mrs. Goldstein received no financial or other benefit from Matelis, Torres, and Valino exceeding 300 hours of banked time, unlike each of them, who, arguably, received the benefit of this additional banked time.

164. Before April 2024, the Town did not review issues, actions, concerns, and/or inactions involving its employees that occurred more than a year earlier (without being prompted by a complaint from a fellow employee or citizen) as a basis for conducting an investigation into that employee, taking an adverse employment action against an employee, suspending that employee, or terminating that employee.

165. Because of her race (as a non-Hispanic), Doce sought out ways to take adverse employment actions against Mrs. Goldstein, including by one or more of the following:

    a. Requiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform;

    b. Improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility;

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

c.  Making false claims against Mrs. Goldstein;

d.  Contending actions occurring more than a year before were problematic, violative of the Town's policies and procedures, criminal, and untruthful/unethical, despite her having received a stellar annual review during the relevant time; and

e.  Other ways to be uncovered through discovery.

166.    The Town took adverse actions against Mrs. Goldstein in and around July through August 2024, when it initiated the "Other Investigation" against her, which was performed without any policy, procedure, or basis in the Town's regulatory or governing documents, policies, or procedures; conducted and completed without any policies or procedures; and based on the direction of Doce and others prior to be issued to Mrs. Goldstein and used as a basis to suspend her from her employment.

167.    The Town took adverse action against Mrs. Goldstein upon issuing its "Investigative Report" regarding Mrs. Goldstein, known as dina.docx, which contained false, disparaging, and harmful information about her work performance, capabilities, honesty, and conduct at work.

168.    The Town took adverse action against Mrs. Goldstein on August 6, 2024, by suspending her, relieving her of her duties, and placing her on "house arrest" pending a final employment determination.

## COUNT II$_A$ - VIOLATION OF 42 U.S.C. §1983
### (Race Discrimination Against Doce For Violating Equal Protection Clause)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 131 and 154 through 168 as though set forth fully herein and further alleges as follows:

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

169. Doce discriminated against Mrs. Goldstein by failing to treat her the same as or similarly to non-Hispanic employees because of her race in violation of the Equal Protection Clause.

170. The differential treatment of Mrs. Goldstein, the investigations conducted of her, the statements, decisions, and actions made and taken by Doce, the subsequent suspension and termination of Mrs. Goldstein's employment; the disparaging, demeaning, and untrue statements made about her and placed into her personnel and internal affairs file; and the differential treatment that Mrs. Goldstein received from Doce because of her race constitute one or more adverse employment actions within the meaning of the Equal Protection Clause, for which §1983 provides Mrs. Goldstein with a legal recourse against Doce.

171. These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

172. Doce's actions were malicious and demonstrated a reckless indifference to Mrs. Goldstein's rights, culminating in the termination of her employment.

173. The aforementioned acts of commission and omission by Doce were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

174. Doce's conduct was undertaken with knowledge of, or deliberate indifference to, Mrs. Goldstein's clearly established constitutional rights, entitling her to recover punitive damages from him.

175. As a direct and proximate result of Doce's acts and omissions, Mrs. Goldstein has suffered and continues to suffer damages, including but not limited to: loss of past and future wages and benefits; loss of retirement contributions and accruals; loss of professional reputation;

emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and other compensatory damages.

176. Mrs. Goldstein is entitled to recover her attorney's fees and costs from Doce upon prevailing in this action.

WHEREFORE, Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Enrique Doce, after a trial by jury, declaring that Doce violated her equal protection rights; awarding her compensatory damages, including past and future lost income, lost benefits, seniority rights, and retirement contributions; compensatory damages for mental anguish and emotional distress, loss of dignity, and other intangible injuries; punitive damages, granting her a permanent injunction against Doce from engaging in unlawful race discrimination, promoting her to the position she should hold if she were not discriminated against; and awarding her taxable costs and attorney's fees.

## COUNT II$_B$ – VIOLATION OF 42 U.S.C. §1983
### (Race Discrimination Against The Town For Violating Equal Protection Clause)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 131 and 154 through 168 as though set forth fully herein and further alleges as follows:

177. The Town discriminated against Mrs. Goldstein by failing to treat her the same as or similarly to non-Hispanic employees because of her race in violation of the Equal Protection Clause, including by delegating its decision-making to Doce and/or rubber-stamping his decisions and actions as they related to and affected Mrs. Goldstein, as set forth above and in more detail below.

178. The differential treatment of Mrs. Goldstein, the investigations conducted of her, the statements, decisions, and actions made and taken by those with decision-making authority against her, the subsequent suspension and termination of Mrs. Goldstein's employment; the

33

disparaging, demeaning, and untrue statements made about her and placed into her personnel and internal affairs file; and the differential treatment that Mrs. Goldstein received because of her race constitute one or more adverse employment actions within the meaning of the Equal Protection Clause, for which §1983 provides Mrs. Goldstein with a legal recourse against the Town.

179. These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee, thereby violating Mrs. Goldstein's rights under the Equal Protection Clause and 42 U.S.C. § 1983.

180. The Town's actions were malicious and demonstrated a reckless indifference to the rights of Mrs. Goldstein, culminating in the termination of her employment.

181. The aforementioned acts of commission and omission by the Town were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

182. Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, loss of retirement contributions and accruals, lost seniority rights, emotional distress, mental anguish, loss of dignity, and other intangible injuries as a direct and proximate result of the Town's actions.

183. Mrs. Goldstein is entitled to recover her attorney's fees and costs from the Town upon prevailing in this action.

WHEREFORE, Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after a trial by jury, declaring that Defendant violated 42 U.S.C. §§1981 and 1983 by retaliating against her; awarding her compensatory damages, including past and future lost income, lost benefits, seniority rights, and retirement contributions; compensatory damages for mental anguish and emotional distress, loss of dignity, and other intangible injuries; granting her a permanent injunction against the Town from

34

discriminating against employees because of their race; promoting her to the position she should hold if she were not discriminated against; and awarding her taxable costs and attorney's fees.

## COUNT III – VIOLATION OF 42 U.S.C. §1983
### (Retaliation)

184. The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), makes it unlawful to retaliate against an employee who complains about being discriminated against because of her race.

185. The adverse employment actions taken by against Mrs. Goldstein began shortly after she complained of race discrimination.

186. After and as a direct and proximate result of her complaints about being discriminated against by Doce because of her race, Mrs. Goldstein was subjected to additional adverse actions that included:

   a. Requiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform;

   b. Improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility;

   c. Making false claims against Mrs. Goldstein;

   d. Contending actions occurring more than a year before were problematic, violative of the Town's policies and procedures, criminal, and untruthful/unethical, despite her having received a stellar annual review during the relevant time; and

   e. Other ways to be uncovered through discovery.

187. Mrs. Goldstein suffered the adverse employment actions identified and set forth in detail above.

188. Town employees terminated for cause after two years of continuous employment can appeal their termination to the Town's Personnel Appeals Board according to Chapter 6.D of the Handbook

35

189. Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01, which resulted in an Opinion finding as follows:

a. The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

b. The Town did not afford Mrs. Goldstein due process.

c. Any due process was, "at best, illusory."

d. The Town violated Mrs. Goldstein's due process rights.

e. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

f. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

190. The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025, which was tantamount to a finding that the adverse actions taken against Mrs. Goldstein were improper, unfounded, retaliatory, and should not have occurred.

191. These actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

### COUNT III$_A$ – RETALIATION IN VIOLATION OF 42 U.S.C. §1983
### (Retaliation Against Doce)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 131 and 184 through 191 as though set forth fully herein and further alleges as follows:

192. Doce's actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

193. Doce's actions were malicious and demonstrated a reckless indifference to Mrs. Goldstein's rights, culminating in the termination of her employment.

194. The aforementioned acts of commission and omission by Doce were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

195. Doce's conduct was undertaken with knowledge of, or deliberate indifference to, Mrs. Goldstein's clearly established constitutional rights, entitling her to recover punitive damages from him.

196. As a direct and proximate result of Doce's acts and omissions, Mrs. Goldstein has suffered and continues to suffer damages, including but not limited to: loss of past and future wages and benefits; loss of retirement contributions and accruals; loss of professional reputation; emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and other compensatory damages.

197. Mrs. Goldstein is entitled to recover her attorney's fees and costs from Doce upon prevailing in this action.

WHEREFORE, Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Enrique Doce, after a trial by jury, declaring that Doce violated her equal protection rights; awarding her compensatory damages, including past and future lost income, lost benefits, seniority rights, and retirement contributions; compensatory damages for mental anguish and emotional distress, loss of dignity, and other intangible injuries; punitive damages, granting her a permanent injunction against Doce from engaging in unlawful retaliation, promoting her to the position she should hold if she were not retaliated against; and awarding her taxable costs and attorney's fees.

## COUNT III<sub>B</sub> − RETALIATION IN VIOLATION OF 42 U.S.C. §1983
### (Retaliation Against The Town)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 131 and 184 through 191 as though set forth fully herein and further alleges as follows:

198.     The Town's actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee.

199.     The Town's actions were malicious and demonstrated a reckless indifference to the rights of Mrs. Goldstein and constituted an ultimate employment decision.

200.     The aforementioned acts of commission and omission by the Town were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

201.     Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, loss of retirement contributions and accruals, emotional distress, mental anguish, loss of dignity, and other intangible injuries as a direct and proximate result of the Town's actions.

202.     Mrs. Goldstein is entitled to recover her attorney's fees and costs from the Town upon prevailing in this action.

WHEREFORE, Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after a trial by jury, declaring that Defendant violated 42 U.S.C. §§1981 and 1983 by retaliating against her; awarding her compensatory damages, including past and future lost income, lost benefits, seniority rights, and retirement contributions; compensatory damages for mental anguish and emotional distress, loss of dignity, and other intangible injuries; granting her a permanent injunction against the Town from engaging in retaliatory practices against those who complain about race discrimination; promoting her to

38

the position she should hold if she were not discriminated against; and awarding her taxable costs and attorney's fees.

## COUNT IV – VIOLATION OF 42 U.S.C. §1983
### (Due Process – Property Interest)

203. Mrs. Goldstein had a property interest in her continued employment with the Town as guaranteed by the United States Constitution and Chapter 6, Section B.2 of the Town's Handbook.

204. Town employees terminated for cause after two years of continuous employment can appeal their termination to the Town's Personnel Appeals Board according to Chapter 6.D of the Town's Handbook.

205. Chapter 6.E. of the Town's Handbook addresses the purpose and procedure for its Appeals Board, as follows:

> 12. The decision of the Board must be based on whether the Town's discharge or reduction in pay or rank of the employee was for cause. In order for the Board to find the Town Manager or his/her designee acted without cause, the Board must find there *was no basis* for the adverse employment action. The Board shall then take one or more of the following actions: order a new hearing; dismiss the appeal on the merits; order reinstatement of the employee, absolutely or on terms or conditions; or require such other action as may be just.
>
> 13. The decision of the Board, if concurred by four members, shall be binding on the Town and the employee shall be recorded by resolution.

206. Due process required that Mrs. Goldstein receive, before depriving her of her property interest in her continued employment with the Town, oral or written notice of the charges against her, an explanation of the employer's evidence, and a meaningful opportunity to respond, before an unbiased decisionmaker.

## COUNT IV<sub>A</sub> – VIOLATION OF 42 U.S.C. §1983
### (Due Process – Property Interest Against Blumstein)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 98 and 203 through 206 as though set forth fully herein and further alleges as follows:

207. Blumstein was required to afford Mrs. Goldstein her due process rights, as guaranteed by the 5th and 14th Amendments to the United States Constitution.

208. Blumstein's actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee without due process of law.

209. Blumstein violated Mrs. Goldstein's due process rights by taking adverse actions against her, as identified above, and as follows:

   a. Drafting and supplying to the Surfside Police Department the discipline-policy framework that was used on (and after) July 1, 2024, to author a preliminary discipline letter naming Mrs. Goldstein before any Internal Affairs investigation had been initiated;

   b. Participating in the scoping of the Internal Affairs investigation of Mrs. Goldstein, initiated on August 1, 2024;

   c. Attending Mrs. Goldstein's sworn interrogation conducted in connection with the Internal Affairs Investigation on September 25, 2024; and

   d. Providing legal advice to the Town Manager in connection with the issuance of the letter terminating her employment dated November 7, 2024;

   e. Maintaining the decision to confiscate the sick leave she accrued but did not use after assuming the role of Town Manager;

   f. Acting as Town's prosecutor and/or representative at the Personnel Appeals Board Hearing after his active participation in the events leading up to the termination of Mrs. Goldstein's employment by the Town;

   g. Other manners to be learned through discovery.

210. By occupying the roles of charging-instrument drafter, investigation-scope advisor, interrogation attendee, and legal counsel simultaneously to the Town as the terminating authority

40

— without separation of functions or insulation by conflict counsel — Blumstein deprived Mrs. Goldstein of the unbiased decisional process required by the Fourteenth Amendment.

211.    At the time of the conduct alleged, the right of a public employee with a property interest in continued employment to receive a constitutionally adequate pre-deprivation process before an unbiased decisionmaker was clearly established.

212.    As a direct and proximate result of Blumstein's acts and omissions, Mrs. Goldstein has suffered and continues to suffer damages, including but not limited to: loss of past and future wages and benefits; loss of retirement contributions and accruals; loss of professional reputation; emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and other compensatory damages.

213.    Defendant Blumstein's conduct was undertaken with knowledge of, or deliberate indifference to, Mrs. Goldstein's clearly established constitutional rights, entitling her to recover punitive damages from him.

214.    Mrs. Goldstein is entitled to recover her attorney's fees and costs from Blumstein upon prevailing in this action.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Mark Blumstein, after trial by jury, declaring and determining he violated her due process rights, awarding her compensatory damages, punitive damages, attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

### COUNT IV$_B$ – VIOLATION OF 42 U.S.C. §1983
### (Due Process – Property Interest Against Doce)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 98 and 203 through 206 as though set forth fully herein and further alleges as follows:

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

215.   Doce was required to afford Mrs. Goldstein her due process rights, as guaranteed by the 5th and 14th Amendments to the United States Constitution.

216.   Doce's actions, as set forth above, altered the compensation, terms, conditions, or privileges of the employment of Mrs. Goldstein and adversely affected her status as an employee without due process of law.

217.   At the time of the conduct alleged, the right of a public employee with a property interest in continued employment to receive a constitutionally adequate pre-deprivation process before an unbiased decisionmaker was clearly established.

218.   As a direct and proximate result of Doce's acts and omissions, Mrs. Goldstein has suffered and continues to suffer damages, including but not limited to loss of past and future wages and benefits; loss of retirement contributions and accruals; loss of professional reputation; emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and other compensatory damages.

219.   Defendant Doce's conduct was undertaken with knowledge of, or deliberate indifference to, Mrs. Goldstein's clearly established constitutional rights, entitling her to recover punitive damages from him.

220.   Mrs. Goldstein is entitled to recover her attorney's fees and costs from Doce upon prevailing in this action.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Enrique Doce, after trial by jury, declaring and determining he violated her due process rights, awarding her compensatory damages, punitive damages, attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

### COUNT IV$_C$ – VIOLATION OF 42 U.S.C. §1983
### (Due Process – Property Interest Against the Town)

42

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 98 and 203 through 206 as though set forth fully herein and further alleges as follows:

221. The Town was required to afford Mrs. Goldstein her due process rights, as guaranteed by the 5th and 14th Amendments to the United States Constitution.

222. The Town did not give Mrs. Goldstein a meaningful opportunity to respond to the allegations and/or charges levied against her, and/or to the adverse findings made against her, before terminating her employment.

223. The Town violated Mrs. Goldstein's due process rights by taking adverse actions against her, as identified above, and also by the following actions:

a. Initiating an "Other Investigation" against her and including it in her personnel and/or other file(s) as maintained by the Town;

b. Placing her on leave with pay on August 6, 2024;

c. Terminating her employment on November 7, 2024;

d. Failing to conduct a Personnel Appeals Board hearing that afforded her due process under the standards, policies, and procedures established by the Town;

e. Upholding the decision to terminate Mrs. Goldstein's employment for cause notwithstanding the determination(s) by the Personnel Appeals Board that no cause existed to terminate her employment;

f. Confiscating the sick leave she accrued but did not use as of November 7, 2024;

g. Other manners to be learned through discovery.

224. The Town of Surfside did not retain separate conflict counsel for any function of the disciplinary process. The same Town Attorney — Defendant Blumstein — served as the legal architect of the charging instrument, an advisor on the investigative scope, an attendee at the sworn interrogation, and legal counsel to the terminating authority.

225. Mrs. Goldstein nonetheless appealed the termination of her employment and the Personnel Appeals Board's decision to uphold the termination of her employment to the Circuit

43

Court for Miami-Dade County in Case No. 2025-000035-AP-01, which resulted in an Opinion finding as follows:

a. The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

b. The Town did not afford Mrs. Goldstein due process.

c. Any due process was, "at best, illusory."

d. The Town violated Mrs. Goldstein's due process rights.

e. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

f. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

226. The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

227. The Town purports to give its Personnel Appeals Board the ability to make decision that are arbitrary and capricious in Rule 11 of the Section 2-152 of the Town's Code of Ordinances by allowing it to "order reinstatement of the employee, absolutely or on terms or conditions; or require such action as may be just" without requiring any objectivity, connection to the evidence at the hearings, or guiding standards.

228. The Town lacks a procedure or deadline by which its Personnel Appeals Board is to address a situation after an appeals court quashes or reverses its decision, and any remedy attendant to reinstatement without any bounds would only subject Mrs. Goldstein to an illusory and inadequate remedy that does not require the restoration of her employment, lost wages, benefits, and pension contributions, or address the other damages she suffered and continues to suffer.

44

229. Since issuance of the Mandate, the Town has not taken any affirmative action regarding Mrs. Goldstein's employment:

a. The Town has not notified Mrs. Goldstein about any resumed Personnel Appeals Board hearing;

b. The Town has not resumed any Personnel Appeals Board hearing;

c. The Town has not reinstated Mrs. Goldstein's employment; and

d. The Town has not taken any actions favorable to Mrs. Goldstein regarding the matters addressed herein.

230. The remedy available to Mrs. Goldstein through Certiorari Relief could be no greater than the relief available from the Town, which is significant because the Town does not provide any meaningful remedy upon a decision reversing or overturning a decision to terminate an employee's employment for "cause," rendering any remedy illusory at best based on the lack of action by the Town since the issuance of the Mandate on December 29, 2025.

231. The Town has, accordingly, deprived Mrs. Goldstein of her property interest in her continued employment without affording her the due process of law required by the United States Constitution.

232. Mrs. Goldstein suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, loss of retirement contributions and accruals, emotional distress, mental anguish, loss of dignity, and other intangible injuries as a direct and proximate result of the Town's actions.

233. Mrs. Goldstein is entitled to recover her attorney's fees and costs from the Town upon prevailing in this action.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Town of Surfside, Florida, after trial by jury, declaring and determining

45

that it violated her due process rights, reinstating her, awarding her damages, including for damages to her reputation, lost past and future wages and employment-related benefits, mental anguish and emotional distress damages, to have all offending information removed from her personnel and internal affairs files, a hearing to have her name and file(s) cleared, corrected, and addressed, awarding her attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT V – VIOLATION OF 42 U.S.C. §1983
### (Liberty Interest Claim)

234. The Fourteenth Amendment prohibits the Town from depriving a person like Mrs. Goldstein of liberty or property without due process of law.

235. The concept of liberty recognizes two particular interests of a public employee: (a) the protection of her good name, reputation, honor, and integrity, and (b) her freedom to take advantage of other employment opportunities.

236. The Fourteenth Amendment to the United States Constitution protects against the deprivation of a public employee's liberty interest in her reputation and good name where the employer publicly attributes stigmatic charges to the employee in connection with her termination, without affording her a name-clearing hearing.

### COUNT V$_A$ – VIOLATION OF 42 U.S.C. §1983
### (Liberty Interest Claim Against Blumstein)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 98 and 233 through 235 as though set forth fully herein and further alleges as follows:

237. Blumstein personally participated in the public attribution of the stigmatic charges against Plaintiff by, inter alia, drafting the discipline-policing framework on which the "Internal Investigation" was based.

46

238.    At the time of the conduct alleged, the right of a public employee to a name-clearing hearing where her dismissal is accompanied by public stigmatizing charges was clearly established.

239.    Yet, Mrs. Goldstein was not afforded a name-clearing hearing.

240.    Blumstein then appeared at the Town's Commission meeting on October 22, 2025, in his personal capacity to "justify" his continued employment as the Town Manager, using the public forum as a way to magnify his disparaging comments about Mrs. Goldstein to avoid the termination of his employment.

241.    The statements Blumstein made at the Town's Commission meeting on October 22, 2025, were made from a lectern – not from the dais – as not in discharge of his official duties.

242.    No item addressed or raised by Blumstein during his monologue/presentation involving Mrs. Goldstein addressed or related to any pending or official personnel action involving Mrs. Goldstein, nor any of the actions she was alleged to have engaged in during her employment (which ended nearly a year before).

243.    During the meeting of the Town's Commission on October 22, 2025, Blumstein made false, derogatory statements about Mrs. Goldstein, which included his making the following statements:

    a.  Blumstein created a false narrative that Officer Tammy Campbell of the Town's Police Department was behind the "Vote of No Confidence" for her own purposes, which included assisting her friend, Mrs. Goldstein, to regain employment with the Town (but without specifying how that would be accomplished), and to gain leverage in renegotiating the FOP's agreement with the Town.

    b.  Blumstein went on to contend that Mrs. Goldstein has "done everything in her power to get her job back" after being terminated, including by mischaracterizing Mrs. Goldstein's negotiations with the Town following the (improper and since reversed) termination of her employment as "appealing" to him, when he succeeded the prior town manager who terminated her.

    c.  Blumstein went on to contend that Officer Campbell wanted Blumstein fired because she hoped that his predecessor would "overrule his predecessor's decision,

his decision, and the Personnel Appeals Board's decision terminating her friend's employment with the Town for cause."

d. Blumstein then stated that Officer Campbell's true motivation for the FOP's no-confidence vote is to eliminate him as an obstacle to contract renegotiations and to find a political way to rehire Mrs. Goldstein into her prior position so that Mrs. Goldstein could "continue to overpay" the Towns' police officers and "provide favorable treatment at her discretion," insinuating that Mrs. Goldstein did not properly or legally perform her duties.

e. The foregoing statements by Blumstein were <u>not</u> made in the course of his duties as Town Manager, or in the exercise of an official duty of his, but were made outside his duties and personally as part of a desperate plea to retain his position/employment.

244. Blumstein made the aforementioned statements knowing that Mrs. Goldstein had not engaged in any improprieties, that he had helped fabricate and concoct the reports that led to her suspension and termination of employment, knowing that there was no evidence to support any basis to terminate Mrs. Goldstein's employment for "cause," knowing that the Personnel Appeals Board had determined that she had not engaged in any improprieties that would support a finding that she be terminated for cause, and knowing that the Circuit Court for Miami-Dade County was presiding over her challenge to the Town's decision to terminate (and uphold the termination of) her employment.

245. Blumstein's aforementioned conduct was undertaken with knowledge of, or deliberate indifference to, Mrs. Goldstein's clearly established liberty interest in her reputation and good name.

246. The purposes of including the stigmatizing statements identified and described above was to make it difficult for Mrs. Goldstein to obtain comparable employment (with comparable wages and benefits) to the employment she held with the Town, to impugn her integrity, to embarrass and humiliate her, to ruin her reputation, to publicly denigrate her, and to cause her irreparable damage.

48

247.     As a direct and proximate result of Blumstein's acts and omissions, Mrs. Goldstein has suffered and continues to suffer damages, including but not limited to: the loss of past and future wages and benefits; the loss of retirement contributions and accruals; the loss of and irreparable damage to her professional reputation; emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and other compensatory damages.

248.     Blumstein's conduct was undertaken with reckless or callous indifference to Mrs. Goldstein's federally protected rights, entitling her to recover punitive damages from him.

249.     Mrs. Goldstein is entitled to recover her attorney's fees and costs from Blumstein upon prevailing in this action.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Mark Blumstein, after trial by jury, declaring and determining he violated her due process rights, awarding her a name-clearing hearing, compensatory damages, punitive damages, awarding her compensatory damages, punitive damages, attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT V$_B$ – VIOLATION OF 42 U.S.C. §1983
### (Liberty Interest Claim Against Doce)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 98 and 233 through 235 as though set forth fully herein and further alleges as follows:

250.     Doce personally authored and edited false, stigmatizing statements about Mrs. Goldstein prior to and then during the internal affairs proceedings.

251.     At the time of the conduct alleged, the right of a public employee to a name-clearing hearing where her dismissal is accompanied by public stigmatizing charges was clearly established.

252.     Yet, Mrs. Goldstein was not afforded a name-clearing hearing.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

253.    At the Personnel Appeals Board Hearing, Doce continued to espouse the same, similar, or worse stigmatizing information about Mrs. Goldstein, evidencing that the Hearing was not to provide Mrs. Goldstein the opportunity to clear her name and reputation.

254.    Doce made the aforementioned statements knowing that Mrs. Goldstein had not engaged in any improprieties, that he had helped fabricate and concoct the reports that led to her suspension and termination of employment, while knowing that there was no evidence to support any basis to terminate Mrs. Goldstein's employment for "cause."

255.    Doce's aforementioned conduct was undertaken with knowledge of, or deliberate indifference to, Mrs. Goldstein's clearly established liberty interest in her reputation and good name.

256.    The purposes of including the stigmatizing statements identified and described above were to make it difficult for Mrs. Goldstein to obtain comparable employment (with comparable wages and benefits) to the employment she held with the Town, to impugn her integrity, to embarrass and humiliate her, to ruin her reputation, to publicly denigrate her, and to cause her irreparable damage.

257.    As a direct and proximate result of Doce's acts and omissions, Mrs. Goldstein has suffered and continues to suffer damages, including but not limited to: the loss of past and future wages and benefits; the loss of retirement contributions and accruals; the loss of and irreparable damage to her professional reputation; emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and other compensatory damages.

258.    Doce's conduct was undertaken with reckless or callous indifference to Mrs. Goldstein's federally protected rights, entitling her to recover punitive damages from him.

50

259.    Mrs. Goldstein is entitled to recover her attorney's fees and costs from Doce upon prevailing in this action.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Enrique Doce, after trial by jury, declaring and determining he violated her due process rights, awarding her a name-clearing hearing, compensatory damages, punitive damages, awarding her compensatory damages, punitive damages, attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT V$_C$ – VIOLATION OF 42 U.S.C. §1983
### (Liberty Interest Claim Against The Town)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 98 and 233 through 235 as though set forth fully herein and further alleges as follows:

260.    In connection with the adverse actions taken against Mrs. Goldstein and her employment with the Town, the Town made and disseminated false statements of fact as set forth above.

261.    Although Mrs. Goldstein was given the opportunity to engage in a hearing with the Town's Personnel Appeals Board, that hearing was an illusory, sham proceeding that did not give Mrs. Goldstein a meaningful opportunity to address each of the disparaging remarks that made their way into her personnel and/or internal affairs files prior to the hearing.

262.    Thereafter, the Town gave Mrs. Goldstein no opportunity to clear her name with regard to the Town's Resolution No. 2025-3386, passed and adopted on March 11, 2025, which adopted the findings of the Personnel Appeals Board "1) finding the Town had a basis for the adverse employment decision with respect to [her]; 2) finding that the Town Manager or his designee acted with cause in terminating [her]; and 3) dismissing the Appeal on the merits."

51

263.    The Town's Resolution No. 2025-3386 was publicized and thereafter placed into Mrs. Goldstein's personnel file, without allowing her to respond or "clear her name" as required by law.

264.    Mrs. Goldstein appealed the Town's decision(s) to terminate her employment and to then uphold the termination of her employment to the Circuit Court for Miami-Dade County in Case No. 2025-000035-AP-01.

265.    Meanwhile, Blumstein received notice on October 20, 2025, that FOP Lodge 135 issued a unanimous "Vote of No Confidence" in him as the Town's Manager.

266.    During a meeting of the Town's Commission on October 22, 2025, Blumstein made false, derogatory statements about Mrs. Goldstein as the Town's Manager, knowing that she had not engaged in any improprieties, knowing that the Personnel Appeals Board had determined that she had not engaged in any improprieties that would support a finding that she be terminated for cause, and knowing that the Circuit Court for Miami-Dade County had made the findings regarding Mrs. Goldstein (and the Personnel Appeals Board) as set forth above.

267.    If his conduct at the Town's Commission meeting on October 22, 2025, was pursuant to his official duties, then he:

a. Blumstein created a false narrative that Officer Tammy Campbell of the Town's Police Department was behind the "Vote of No Confidence" for her own purposes, which included assisting her friend, Mrs. Goldstein, regain employment with the Town (but without specifying how that would be accomplished), and to gain leverage in renegotiating the FOP's agreement with the Town.

b. Blumstein went on to contend that Mrs. Goldstein has "done everything in her power to get her job back" after being terminated, including by mischaracterizing Mrs. Goldstein's negotiations with the Town following the (improper and since reversed) termination of her employment as "appealing" to him, when he succeeded the prior town manager who terminated her.

c. Blumstein went on to contend that Officer Campbell wanted Blumstein fired because she hoped that his predecessor would "overrule his predecessor's decision,

52

his decision, and the Personnel Appeals Board's decision terminating her friend's employment with the Town for cause."

d. Blumstein then stated that Officer Campbell's true motivation for the FOP's no-confidence vote is to eliminate him as an obstacle to contract renegotiations and to find a political way to rehire Mrs. Goldstein into her prior position so that Mrs. Goldstein could "continue to overpay" the Towns' police officers and "provide favorable treatment at her discretion," insinuating that Mrs. Goldstein did not properly or legally perform her duties.

e. The foregoing statements by Blumstein were <u>not</u> made in the course of his duties as Town Manager, or in the exercise of an official duty of his, but were made outside his duties and personally as part of a desperate plea to retain his position/employment.

268. The Circuit Court for Miami-Dade County determined that the hearing Mrs. Goldstein received from the Town's Appeals Board was a sham proceeding, did not afford Mrs. Goldstein due process of law, and issued a scathing decision of the Town's treatment of Mrs. Goldstein in Case No. 2025-000035-AP-01.

269. On December 12, 2025, the Circuit Court for Miami-Dade County issued its Opinion in Case No. 2025-000035-AP-01, in which it found as follows:

a. The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

b. The Town did not afford Mrs. Goldstein due process.

c. Any due process was, "at best, illusory."

d. The Town violated Mrs. Goldstein's due process rights.

e. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

f. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

270. The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

271.     Since December 29, 2025, Mrs. Goldstein has not received any notice about a resumed Personnel Appeals Board hearing, no Personnel Appeals Board hearing has occurred, she has not been reinstated to her employment with the Town, and no actions favorable to Mrs. Goldstein have been taken to address, remedy, or rectify the matters addressed herein.

272.     Nowhere in Section 2-152 of the Town's Code of Ordinances or elsewhere does the Town provide any mechanism or basis to restore an employee's good name and reputation, nor does it require that an employee's good name and reputation be restored upon a determination that her termination "for cause" was erroneous and that she be reinstated.

273.     The Town lacks a procedure by which its Personnel Appeals Board addresses a situation after an appeals court quashes or reverses its decision, and any remedy attendant to reinstatement without any bounds, and without a mechanism to address the stigmatizing information regarding Mrs. Goldstein would only afford an illusory remedy that would, as before, deprive her of her due process rights as inadequate.

274.     The Circuit Court for Miami-Dade County next determined that the hearing Mrs. Goldstein received from the Town's Appeals Board was a sham proceeding, did not afford Mrs. Goldstein due process of law, and issued a scathing decision of the Town's treatment of Mrs. Goldstein in Case No. 2025-000035-AP-01.

275.     On December 12, 2025, the Circuit Court for Miami-Dade County issued its Opinion in Case No. 2025-000035-AP-01, in which it found as follows:

    a.    The Town's Appeals Board determined Mrs. Goldstein "was fired without cause," but "proceeded to render a decision unsupported by competent substantial evidence, when, without any new evidence, it chose to uphold [Mrs. Goldstein's] termination *after* finding there was no cause for termination.

    b.    The Town did not afford Mrs. Goldstein due process.

    c.    Any due process was, "at best, illusory."

54

d. The Town violated Mrs. Goldstein's due process rights.

e. The Town "upheld her termination simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient."

f. "Granted" Mrs. Goldstein's Petition for Writ of Certiorari and "Quashed" the decision of the Personnel Appeals Board on December 12, 2025.

276. The Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025.

277. Since December 29, 2025, Mrs. Goldstein has not received any notice about a resumed Personnel Appeals Board hearing, no Personnel Appeals Board hearing has occurred, she has not been reinstated to her employment with the Town, and no actions favorable to Mrs. Goldstein have been taken to address, remedy, or rectify the matters addressed herein nor to restore her good name and reputation.

278. Nowhere in Section 2-152 of the Town's Code of Ordinances or elsewhere does the Town provide any mechanism or basis to restore an employee's good name and reputation, nor does it require that an employee's good name and reputation be restored upon a determination that her termination "for cause" was erroneous and that she be reinstated.

279. Mrs. Goldstein was not afforded an opportunity to initiate any grievance or other hearing procedure to address the stigmatizing information about her from the "Other Investigation," the Internal Affairs Investigation, the letter pursuant to which she was placed on house confinement, the termination letter, during the Personnel Appeals Board Hearing, as contained in Resolution No. 2025-3386, or as announced during the Commission Meeting held on October 22, 2025.

280. The false statements of fact identified above have cast a disparaging cloud over Mrs. Goldstein's reputation for honesty and competency.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

281.     As a direct and proximate result of the violation(s) of Mrs. Goldstein's due process rights, including the deprivation of her liberty interests, she has sustained damages.

282.     Mrs. Goldstein is entitled to recover her attorney's fees and costs from the Town upon prevailing in this action.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendants, Town of Surfside, Florida, Enrique Doce, and Mark Blumstein, after trial by jury, declaring and determining that they violated her due process rights, awarding her damages, including for damages to her reputation, lost past and future wages and employment-related benefits, mental anguish and emotional distress damages, to have all offending information removed from her personnel and internal affairs files, a hearing to have her name and file(s) cleared, corrected, and addressed, awarding her attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT VI – DEFAMATION
### (Against Blumstein)

Plaintiff, Dina Goldstein, reincorporates and re-alleges paragraphs 1 through 98 as though set forth fully herein and further alleges as follows:

283.     Blumstein was a disaster of a Town Manager, to the point that his incompetencies and blunders caught up with him, resulting in the Town informing him that his employment would be terminated.

284.     Vice Mayor Paul and Commissioners Coto, Velasquez, and Vildostegui had completed their annual evaluations of Blumstein by the end of September 2025, most of which rated him as Average, Below Average, or Poor, which were then provided to Blumstein before the Town's Commission meeting to be held on October 22, 2025.

56

285. Blumstein's ineptitude was not only known internally within the Town, but also to those he dealt with, including when FOP Lodge 135 notified Blumstein on October 20, 2025, that its members had issued a unanimous "Vote of No Confidence" in him as the Town's Manager.

286. Blumstein appeared at the Town's Commission meeting on October 22, 2025, in his personal capacity to "justify" his continued employment as the Town Manager, using the public forum as a way to magnify his disparaging comments about Mrs. Goldstein to avoid the termination of his employment.

287. The statements Blumstein made at the Town's Commission meeting on October 22, 2025, were delivered from a lectern – not from the dais – not in discharge of his official duties, but in his personal capacity, in a selfish, desperate plea to save his own job.

288. No item addressed or raised by Blumstein during his monologue/presentation involving Mrs. Goldstein addressed or related to any pending or official personnel action involving Mrs. Goldstein, nor any of the actions she was alleged to have engaged in during her employment (which ended nearly a year before).

289. During the meeting of the Town's Commission on October 22, 2025, Blumstein made false, derogatory statements about Mrs. Goldstein, which he knew to be false and damaging to her reputation, and included his making the following statements:

    a. Blumstein created a false narrative that Officer Tammy Campbell of the Town's Police Department was behind the "Vote of No Confidence" for her own purposes, which included assisting her friend, Mrs. Goldstein, to regain employment with the Town (but without specifying how that would be accomplished), and to gain leverage in renegotiating the FOP's agreement with the Town.

    b. Blumstein went on to contend that Mrs. Goldstein has "done everything in her power to get her job back" after being terminated, including by mischaracterizing Mrs. Goldstein's negotiations with the Town following the (improper and since reversed) termination of her employment as "appealing" to him, when he succeeded the prior town manager who terminated her.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

c. Blumstein went on to contend that Officer Campbell wanted Blumstein fired because she hoped that his predecessor would "overrule his predecessor's decision, his decision, and the Personnel Appeals Board's decision terminating her friend's employment with the Town for cause."

d. Blumstein then stated that Officer Campbell's true motivation for the FOP's no-confidence vote is to eliminate him as an obstacle to contract renegotiations and to find a political way to rehire Mrs. Goldstein into her prior position so that Mrs. Goldstein could "continue to overpay" the Towns' police officers and "provide favorable treatment at her discretion," insinuating that Mrs. Goldstein did not properly or legally perform her duties.

e. The foregoing statements by Blumstein were <u>not</u> made in the course of his duties as Town Manager, or in the exercise of an official duty of his, but were made outside his duties and personally as part of a desperate plea to retain his position/employment.

290. Blumstein made the aforementioned statements knowing that Mrs. Goldstein had not engaged in any improprieties, that he had helped fabricate and concoct the reports that led to her suspension and termination of employment, knowing that there was no evidence to support any basis to terminate Mrs. Goldstein's employment for "cause," knowing that the Personnel Appeals Board had determined that she had not engaged in any improprieties that would support a finding that she be terminated for cause, and knowing that the Circuit Court for Miami-Dade County was presiding over her challenge to the Town's decision to terminate (and uphold the termination of) her employment.

291. Blumstein's false, defamatory, and derogatory statements about Mrs. Goldstein were made maliciously at a public forum, knowing and/or with reckless disregard for their falsity because he intended to denigrate, embarrass, humiliate, and impugn her integrity, to embarrass and humiliate her, and destroy her reputation in a public forum under the guise of trying to save himself from being fired as the Town Manager and to distract from his own misdeeds and ineptitude, intending to irreparably damage Mrs. Goldstein.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

292. The statements identified above are false, defamatory, and damaged Mrs. Goldstein's reputation, standing in the community, and employability.

293. The false statements of fact identified above have cast a disparaging cloud over Mrs. Goldstein's reputation for honesty and competence.

294. Mrs. Goldstein has suffered damages as a direct and proximate result of the defamatory statements identified herein.

295. Moreover, Mrs. Goldstein seeks the imposition of punitive damages against Blumstein.

WHEREFORE Plaintiff, Dina Goldstein, demands the entry of a judgment in her favor and against Defendant, Mark Blumstein, after trial by jury, compensatory damages, actual damages, emotional distress damages, lost reputation damages, punitive damages, costs, all interest allowed by law, and for such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Dina Goldstein, demands a trial by jury of all issues so triable.

Respectfully submitted this 11th day of May 2026,

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff*

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm