UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-CV-20965

DINA GOLDSTEIN

     Plaintiff,

v.

TOWN OF SURFSIDE, FLORIDA,
ENRIQUE DOCE, and,
MARK BLUMSTEIN

     Defendants.

_____/

**DEFENDANTS, TOWN OF SURFSIDE, ENRIQUE DOCE, AND MARK BLUMSTEIN'S JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

The Defendants, TOWN OF SURFSIDE ("Town"), ENRIQUE DOCE ("Doce"), and MARK BLUMSTEIN's ("Blumstein") by and through their undersigned attorneys and pursuant to Federal Rules of Civil Procedure 8, 10, and 12(b)(6), moves for the entry of an order dismissing the Amended Complaint [ECF No. 35] ("Amended Complaint") filed by the Plaintiff, DINA GOLDSTEIN ("Plaintiff"), and states as follows:

**I.  Introduction**

1.     The Plaintiff was the Town's former "Senior Executive Assistant" for the Chief of Police [ECF No. 35 at ¶3]. She filed a six-count Amended Complaint with various subsections against the Town, its Former Chief of Police, Enrique Doce ("Doce"), and its Former Town Attorney and Town Manager, Mark Blumstein ("Blumstein"). She alleges (1) race discrimination in violation of 42 U.S.C. § 1981 via § 1983 against the Town and Doce, (2) race discrimination in violation of the Equal Protection Clause against the Town and Doce , (3) retaliation in violation of 42 U.S.C. § 1981 via § 1983 against the Town and Doce, (4) property deprivation under the Due

1

Process Clause via 42 U.S.C. § 1983 against all defendants, (5) liberty deprivation under the Due Process Clause via 42 U.S.C. § 1983 against all defendants, and (6) defamation against Blumstein. [ECF No. 35 ¶¶99-295].

2.      The Plaintiff's claims are undermined by the allegations of the Amended Complaint. The Plaintiff was terminated following an independent investigation (the "Ramos Report") conducted by an outside investigator, SPD Case No. 2024-2092. The Ramos Report concluded that the Plaintiff **violated** the Town's compensatory leave policy, **divulged** sensitive privileged information, and **caused significant financial losses**. [ECF No. 35 at ¶78]. The Amended Complaint confirms that the investigation was conducted without any Town control [ECF No. 35 at ¶31] and by an autonomous outside investigator the Town had no authority to direct [ECF No. 35 at ¶57]. These facts defeat the Plaintiff's claims.

3.      The Amended Complaint should be dismissed for the following reasons:

a.      Counts I(b), II(b), and III(b) fails to establish an unconstitutional Town policy or custom satisfying the requirements of Monell v. Dep't. of Social Services, etc., 436 U.S. 658, 691 (1978), to impose liability against the Town. The same counts fail because the alleged decisionmaker who terminated the Plaintiff, Town Manager Peter Jankowski ("Jankowski"), is not alleged to have harbored any racial animus or to have known of any protected activity. Moreover, Defendant Doce is otherwise entitled to qualified immunity and dismissal of Counts I(a), II(a), and III(a), as he was not the official decisionmaker with respect to the employment decisions raised. Additionally, the Plaintiff's Equal Protection claim (Count II is duplicative of Count I).

b.      Count IV fails because the Plaintiff successfully used state remedies and obtained a favorable certiorari ruling and mandate from the Miami Circuit Court. Such efforts confirm that adequate state remedies were available and sufficient to address the alleged need for

additional process.

c.      Count V fails because the Plaintiff received meaningful name-clearing opportunities during two Personnel Board hearings and a subsequent certiorari review.

d.      Counts IV$_A$, IV$_B$, V$_A$ & V$_B$ fail because it is not clearly established that someone other than an official decisionmaker can be held individually liable under § 1983, therefore entitling Blumstein and Doce to qualified immunity.

e.      Count VI fails because Blumstein's alleged statements, made in connection with the performance of his duties and responsibilities, are protected by absolute immunity.

## II.  Memorandum

### A.  Pleading Standard

Counts I through VI should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." The allegations must be "simple, concise, and direct." See Fed. R. Civ. P. 8(d)(1). Plaintiff has an "obligation to provide the grounds of [her] entitlement to relief." Bell Atlantic v. Twombly, 550 U.S 544, 555 (2007) (internal citations omitted).

A complaint loses the presumption of truth if the allegations made are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 663, 678-79 (2009) (a complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); Twombly; 550 U.S. at 555 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). In the end, a complaint must provide sufficient notice of the claim and the grounds upon which it rests

so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people…" Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005).

To state a § 1981 discrimination claim, the Plaintiff must plausibly allege that the Town intentionally treated her differently because of her race. Moore v. Grady Mem'l Hosp. Corp., 834 F.3d 1168, 1176 (11th Cir. 2016). A municipality may not be held liable for its employees' violations of §1981 under a respondeat superior theory; rather § 1983 provides the exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the alleged violation is by a state actor. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989). Under Jett, such liability must be predicated on the actions of a governmental official only if that official had been delegated policymaking authority or acted pursuant to a well settled custom representing the official policy. Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658 (1978). The Plaintiff fails to plausibly allege that the Town intentionally treated her differently because of her race. In fact, the Plaintiff's allegations support dismissal. She alleges that Doce did not have policy making authority when the Plaintiff was terminated. [ECF No. 35 ¶¶78, 103]. She also alleges that through Doce's conduct, he did not act pursuant to a well settled custom representing official policy. [ECF No. 35 ¶¶31-32]. As pled, these facts fail to demonstrate liability on the Town under Monell.

The elements of a valid a § 1983 claim via § 1981 and via the Equal Protection Clause are identical, and the pleading defects here are also identical. [1]

To state a § 1981 retaliation claim, the Plaintiff must plausibly allege that a materially adverse action was taken against her because she engaged in protected activity. Moore, 834 F.3d

---

[1] Additionally, under the Equal Protection Clause, it appears that the Plaintiff may be alleging a "class of one" equal protection claim. The Amended Complaints facts imply that the Town terminated the Plaintiff for irrational and arbitrary reasons. Such a theory is not recognized in the employment context. Engquist v. Oregon Dept. of Agr., 553 U.S. 591 (2008) ("If class-of-one claims were recognized in the employment context, any personnel action in which a wronged employee can conjure up a claim of differential treatment would suddenly become the basis for a federal constitutional claim.").

4

at 1176. The Amended Complaint relies exclusively on conclusory allegations and fails to identify a specific decisionmaker who allegedly considered the Plaintiff's race in the decision to terminate her. Critically, the Amended Complaint fails to allege that the decisionmaker who terminated her, Peter Jankowski ("Jankowski"), was aware of any protected activity. [ECF No. 35 at ¶78]. Similarly, the Amended Complaint does not allege that Doce was aware of any protected activity that occurred prior to the Plaintiff's paid suspension. [ECF No. 35 at ¶¶105-106]. The essential link between race or protected activity and adverse action is entirely absent.

To state a valid Fourteenth Amendment Liberty Interest claim, the Plaintiff must allege six specific elements, including that she was denied a meaningful opportunity to clear her name. Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1043-44, 1046 (11th Cir. 1989); see also Oswald v. Diggs, No. 2:22-CV-247-SPC-NPM, 2022 WL 3999284 (M.D. Fla. Sept. 1, 2022). The Amended Complaint confirms that the Plaintiff received a name-clearing hearing before the Personnel Appeals Board ("PAB") and also pursued certiorari relief in Florida circuit court. [ECF No. 35 at ¶¶83, 84, 92, 96-97, 189-190]. A plaintiff who received and utilized a name-clearing process -- even one she believed to be flawed -- cannot satisfy the sixth element. [ECF No. 35 at ¶¶83, 84, 92, 96-97, 189-190]. The allegations confirm that the Plaintiff successfully used state remedies, and was afforded relief after the alleged adverse decisions, and was able to clear her name. [ECF No. 35 at ¶238]. Such post-termination relief also eliminates her Fourteenth Amendment Property Interest claim. Her successful invocation of Florida remedies is inconsistent with an alleged need for independent federal relief.

**B. The § 1983 Claims (Counts I, II and III) Fail as a Matter of Law**

**1. No unconstitutional Policy or Custom Alleged as to Town (Counts I(b), II(b), andIII(b))**

The Town is only subject to liability under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury …." of which the Plaintiff complains. Monell, 436 U.S. at 691; Mercado v. City of Orlando, 407 F.3d 1152 (11th Cir. 2005); Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). To establish § 1983 liability based on a "custom," the Plaintiff must allege facts establishing an unconstitutional practice so widespread that, "although not authorized by written law or express municipal policy," it is "so permanent and well settled as to constitute a custom or usage with the force of law." Brown v. City of Fort Lauderdale, 923 F. 2d 1474, 1481 (11th Cir. 1991).

Likewise, the allegations must reflect a practice so "long-standing and widespread" that it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." Id. A failure to prevent an isolated incident cannot be deemed tacit approval. Depew v. City of St. Mary's, Georgia, 787 F. 2d 1496, 1499 (11th Cir. 1986) ("Random acts or isolated incidents are insufficient to establish a custom or policy."); see also Owaki v. City of Miami, 491 F. Supp. 2d 1140, 1158 (S.D. Fla. 2007) ("Plaintiff must surmount a high burden to hold the City liable for deprivation of Constitutional rights under 42 U.S.C. § 1983").

The Plaintiff's allegations are not sufficient to satisfy the Monell standard. The Amended Complaint identifies Doce, who was not hired until April 1, 2024 [ECF No. 35 at ¶9], as the person who engaged in race-based discrimination. [ECF No. 35 at ¶¶101-110, 141]. But the Amended Complaint does not allege that Doce acted in conformity with any Town policy with respect to his conduct.]. In fact, the Plaintiff asserts that "[b]efore April 2024, the Town did not review issues, actions, concerns, and/or inactions involving its employees" as a basis for adverse employment action [ECF No. 35 at ¶¶142, 164].

As to the Plaintiff's termination, that decision arose from the "Other Investigation," which was conducted "without any policy, procedure, or basis in the Town's regulatory or governing documents." [ECF No. 35 at ¶¶31, 143]. None of the Plaintiff's allegations establish a foundation for imposing liability against the Town. Doce's alleged unauthorized deviation from the Town's procedures without final policy making authority is the opposite of a settled unconstitutional custom. Moreover, the Amended Complaint does not sufficiently allege the existence of a formal Town policy directing discriminatory treatment based on the race of Town employees.

Counts I(b), II(b) and III(b) separately fail because they do not allege that Doce made any decision relating to the Plaintiff's subsequent termination. Municipal liability under § 1983 attaches only when a final policymaker causes the constitutional violation. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997). The Amended Complaint states that the Town operates under a "commissioner-manager system of local government under which the City Manager has the final decision and policymaking authority." [ECF No. 35 at ¶5]. The termination decision on November 7, 2024, was made by Jankowski not Doce, and was based on findings of the Ramos Report [ECF No. 35 at ¶78]. Where a decisionmaker conducts his own evaluation and makes an independent decision, his decision is free of the racial hostility the Plaintiff attributes to Doce. Pennington v. City of Huntsville, 261 F.3d 1262, 1270 (11th Cir. 2001); see Wright v. Southland Corp., 187 F.3d 1287, 1304 n. 20 (11th Cir.1999) (finding that biased employee did not manipulate the final decisionmaker). Jankowski's decision to terminate the Plaintiff was predicated the Ramos Report. Notably absent from the Amended Complaint is any claim that Peter Jankowski's decision was based on his hostility to Caucasians. Without a connection between Jankowski's intent and the adverse action, municipal liability cannot attach to the Town. Praprotnik, 485 U.S. at 127.

**2.** **No viable claims under 42 U.S.C. § 1983 against Doce – not the official decisionmaker (Counts I(a), II(a), and III(a))**

Plaintiff's Amended Complaint also seeks to impose liability on Defendant Doce for Plaintiff's termination. However, to be individually liable under 42 U.S.C. § 1983, the individually named party must be the "official decisionmaker" taking an adverse employment action in violation of the plaintiff's rights. See Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003) ("The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable." (emphasis omitted)). A defendant is subject to individual liability as a decisionmaker when he has the authority "not merely to recommend" the plaintiff's termination, "but to immediately effectuate" it. Id. at 1328.

Consistently, courts are tasked with identifying the officials who speak with final policy-making authority concerning the action alleged to have caused the particular constitutional violation. McMillan v. Monroe Co., 520 U.S. 781, 784-85 (1997), quoting Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989); Grech v. Clayton County, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc) (plurality opinion); Turquitt v. Jefferson Co., 137 F.3d 1285, 1287 (11th Cir. 1998) (en banc). This task is accomplished by inquiring which government officials are final policy makers for the local government in the particular area or on a particular issue. McMillan, 520 U.S. at 785; Grech, 335 F.3d at 1330; Turquitt, 137 F.3d at 1287. This inquiry is determined by the law of the state in which the municipality operates. City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) (plurality); see also, McMillan, 520 U.S. at 786; Turquitt, 137 F.3d at 1287. The Court's review of state law includes local positive law such as the municipality's own charter. See gen. Turquitt, 137 F.3d at 1288 ("Our answer to this question turns on state law, including… *local positive law*… .") (emphasis added). The gravamens of the Counts pled against Defendant Doce stem from Plaintiff's termination; therefore, the Court should

identify the policy maker and decisionmaker with respect to the decision to discharge plaintiff from employment.

Florida's Constitution and Statutes confer broad power to municipalities to exercise governmental, corporate and proprietary power to enable them to conduct municipal government. Fla. Const. art. VIII, §2(b); Fla. Stat. §166.021(1). Such power is conferred by adoption of a municipal charter which must prescribe the municipality's form of government and clearly define the responsibility for legislative and executive functions. Fla. Stat. §165.061(e)(1). The state's grant of power is conferred to the City Commission of the Town of Surfside through its Charter. Charter of the Town of Surfside, art. I. The Charter confers administrative powers to a Town Manager to appoint and remove employees of the Town "except as otherwise provided by th[e] Charter" or as authorized by the town manager. Charter, art. III, § 35(1). The Charter also established a Personnel Appeals Board. Charter, Chapter 2, art. IV, § 1-151. With the establishment of the Personnel Appeals Board, the Charter created and delegated ultimate power to the Personnel Appeals Board (PAB) to generate the rules, procedures and grounds for dismissals in the first instance and to affirm, disaffirm, modify or reverse any termination, or reduction in pay or rank of the Town's employees. Charter, Chapter 2, art. IV, § 1-151. A review of Florida law makes clear then that, as a matter of law, the Town Manager is the final decision maker for termination of Town employees, and the Personnel Appeals Board is the ultimate policy maker with the power to affirm, disaffirm, modify, or reverse any employee termination. Thus, under Florida law, Defendant Doce did not have the authority to terminate Plaintiff.

Here, then, to the extent Plaintiff's complaints are leveled against Defendant Doce's decisions, the same fail. Plainly, Doce was not the final decision maker as to Plaintiff's termination. There are no allegations Doce made the decision to terminate Plaintiff; on the

9

contrary, the Amended Complaint states that, during the relevant time period, Doce was the Chief of Police [ECF No. 35 at ¶ 6] and that the Town operates under a "commissioner-manager system of local government under which the City Manager has the final decision and policymaking authority." [ECF No. 35 at ¶5]. The cited termination decision on November 7, 2024, was made by Jankowski [ECF No. 35 at ¶78], not Doce.  Further, local law establishes Doce was not the decision maker or the policy maker.   To be individually liable under 42 U.S.C. § 1983, the individually named party must be the "official decisionmaker" taking an adverse employment action in violation of the plaintiff's rights.  See Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003) ("The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable." (emphasis omitted)).

Further, the to the extent Plaintiff asserts that the alleged discriminatory animus behind Doce's recommendations and/or actions are the actual cause of Jankowski's decision to terminate Plaintiff, the same still fails as a matter of law.  In the first instance, there are no allegations that Jankowski or the Board had any discriminatory or retaliatory animus,or otherwise knew of any alleged protected activity in the first instance.  Further, such a showing is premised on the notion that the decisionmaker followed a biased recommendation without independently investigating the complaint against the employee. Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999) (recognizing the cat's paw theory in the context of Title VII).  However, the allegations here show the opposite where the underlying investigation upon which the termination was predicated was conducted by an independent third party who found misconduct on the part of Plaintiff.  [ECF No. 35, ¶¶ 31, 57, 78].  Further also like in Stimpson, here there was an appeals board with the sole power and discretion to terminate an employee and conduct a hearing to investigate the charges during which Plaintiff was represented by counsel and permitted to put on a defense.  Id.

10

The Eleventh Circuit has noted that it was "hard to imagine any other procedural device that would ensure a more fair and independent decision." Id.  Thus, as pled, as a matter of law, where the termination was premised on an independent investigation and there was a review of the termination by the Personal Appeals Board, Plaintiff cannot establish a cat's paw theory.

Thus, in addition to all of the grounds raised herein, Defendant Doce cannot be held individually liable for any of the claims leveled against him in Counts I, II, and III, as the claims are premised on decisions for which he was not the official decision maker as a matter of law.

### 3. No Plausible Comparator

A valid comparator is "someone who: (1) has engaged in the same basic conduct (or misconduct) as the plaintiff, (2) is subject to the same employment policy, guideline, or rule as the plaintiff, (3) is under the jurisdiction of the same supervisor as the plaintiff, and (4) shares the plaintiff's employment or disciplinary history." Johnson v. Miami-Dade Cnty., No. 24-12676, 2026 WL 772380 (11th Cir. Mar. 19, 2026). In Johnson., the Eleventh Circuit found that the plaintiff's proposed comparators had materially different disciplinary histories and did not engage in the same basic misconduct as the plaintiff. Id. at *4. The Court confirmed that "the fact that there are some similarities between the plaintiff and the comparator is not enough" because they must be similarly situated "in all material respects." Id. at *5.

The Plaintiff attempts to avoid identifying a comparator by citing examples that are, in fact, readily distinguishable. For example, the Plaintiff identifies three Hispanic police officers -- Jose "Jay" Matelis, Julio Torres and Jose Valino -- who were allegedly permitted to "bank" compensation time beyond 300 hours.  [ECF No. 35 at ¶107-108]. These officers are not valid comparators because they held sworn law enforcement positions, operated under different policies, and reported to different supervisors. The Amended Complaint does not allege that any of these

police officers were investigated for the sane conduct, were accused of having divulged sensitive operational information, were accused of committing potential payroll fraud, or became the subject of an independent investigation. Under Johnson, comparators with "materially different disciplinary histories" who did not "engage in the same basic misconduct" are not valid comparators.

As alternative comparators, the Plaintiff references three employees hired around the time of her suspension and termination: Michell Sanchez, Maria Teresa Fernande Alvarez, and Stephanie Kamer. [ECF No. 35 at ¶¶ 110-131]. But that effort also fails. First, the Amended Complaint fails to allege that Jankowski was the individual involved in these hiring decisions or that his conduct was prompted by a racial preference. Second, none of the alleged comparators held the same position as the Plaintiff. A valid comparator must be an existing employee "subject to the same employment policy, guideline, or rule" as the plaintiff. Johnson, at *3. The newly hired employees are not similarly situated to the Plaintiff in any relevant way. They operated under different policies, they do not have the same disciplinary histories, and they did not receive the same kind of criticism that the Plaintiff received in the Ramos Report. These purported comparators do not allow the Plaintiff to proceed on a claim of disparate treatment under § 1981 or under the Fourteenth Amendment.

### 4. Absence of Causation

"A § 1983 claim requires proof of an affirmative casual connection between the defendant's acts or omissions and the alleged constitutional deprivation." Troupe v. Sarasota Cnty., Fla. 419 F. 3d 1160, 1165 (11th Cir. 2005). "Section 1983 thus focuses our inquiry on whether an official's acts or omissions were the cause -- not merely a contributing factor -- of the constitutionally infirm condition." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993). A

12

"causal relation does not exist when the continuum between the [d]efendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision makers." Dixon v. Burke Cnty., Ga., 303 F.3d 1271, 1275 (11th Cir. 2002)Plaintiff must establish an adequate causal link between the alleged harm and the alleged unlawful conduct. See Barts v. Joyner, 865 F. 2d 1187, 1195-96 (11th Cir. 1989).

Here, no causal relationship exists because the termination decision was made by Jankowski, not Doce. Moreover, Jankowski's decision was based on the Ramos Report, which was conducted by an independent investigator from a separate governmental entity. [ECF No. 35 at ¶¶57-74]. The Amended Complaint does not allege that Jankowski harbored any discriminatory bias. Without supporting facts, any causal link between Doce's race bias and the Plaintiff's termination is severed by the intervening, independent conduct of two separate actors; (i) the outside investigator Ramos and (ii) the final decisionmaker Jankowski, neither of whom is alleged to have acted with discriminatory intent. The Amended Complaint gives rise to only one reasonable inference. Both Jankowski and the Appeals Board acted in response to the Plaintiff's misconduct as confirmed in the Ramos Report. Because the Amended Complaint fails to allege facts establishing a link between Doce's alleged animus and the § 1983 claims in Counts I, and II, these counts should be dismissed.

**5.   <u>No Viable claims for Retaliation under 42 U.S.C. § 1983 (Count III)</u>**

Count III fails because it does not satisfy the elements of a retaliation claim. "[The] plaintiff must prove that [she] engaged in statutorily protected activity, [she] suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008). As with other statutory retaliation claims, a retaliation claim under § 1981 requires that the protected activity involve the assertion of rights

protected by the statute. See Hawkins v. 1115 Legal Svc. Care, 163 F.3d 684, 693 (2d Cir.1998) (stating "[a]n act of retaliation for engaging in activity protected by Title VII does not give rise to a claim for retaliation that is cognizable under § 1981 unless that activity was also protected by § 1981"); see also Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir.2004) (stating to establish a retaliation claim under Title VII, the retaliation must be in response to a "statutorily protected activity").

The Plaintiff's Amended Complaint does not plausibly allege that she engaged in protected activity. The Amended Complaint conclusory asserts that "[t]he adverse employment actions taken by against Mrs. Goldstein began shortly after she complained of race discrimination." [ECF No. 35 at ¶185]. However, the protected activity that the Plaintiff relies on, her complaints to the Town's Human Resources Department and to Acting Town Manager Vargas [ECF No. 35 at ¶¶105-106], describes no specific matter, giving rise to an objective belief of unlawful discrimination. The only element of his behavior that has any possible connection to race is his use of Spanish. But speaking Spanish is not harassment or evidence of hostility based on race. Doce's cited conduct in office is simply insufficient to support an inference of race discrimination. While informal complaints to a supervisor can constitute protected activity, "a plaintiff must, at the very least, communicate h[er] belief that illegal discrimination is occurring. It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." Webb v. R&B Holding Co., 992 F. Supp. 1382, 1389 (Fla. S.D. 1998). The Plaintiff fails to show that Jankowski was aware of the protected conduct. This requires that the plaintiff "show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002). Here, the

Plaintiff has not demonstrated that Jankowski was aware of any allegedly protected complaint that the Plaintiff may have made. Therefore, she cannot demonstrate that Jankowski terminated her based on any protected activity.

Nevertheless, there are two elements to the "statutorily protected expression" requirement: (1) that the employee had "good faith, reasonable belief that the employer was engaged in unlawful employment practices" and (2) that the employee opposed those employment practices in some way. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002) (quotations and citations omitted); Rollins v. FDLE, 868 F.2d 397, 400 (11th Cir. 1989). As to the first element, a plaintiff must demonstrate both a subjective belief that his employer engaged in unlawful employment practices **and** that such belief was objectively reasonable. Weeks, 291 F.3d at 1312. There is nothing to link Plaintiff's November 7, 2024, termination to these unidentified and unspecified "complaints." Any retaliation claim premised on unspecified "complaints" fails as a matter of law.

The Plaintiff fails to identify the kind of materially adverse employment action that would support a valid claim for retaliation. To establish an adverse employment action, an employee must demonstrate "a **serious and material** change in the terms, conditions, or privileges of employment" to show an adverse employment action. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis added); see, e.g., Stavropoulos v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004) ("the conduct was not an ultimate employment action, because she did not lose her job or suffer a lessening of pay, position, or benefits"); Bass v. Board of County Com'rs, Orange County, Fla., 256 F.3d 1095, 1118 (11th Cir.2001); Monaghan v. Worldpay US, Inc., 955 F.3d 855, 860 (11th Cir. 2020)("'tangible actions,'…which are those actions 'that affect continued employment or pay -- things like terminations, demotions, suspensions without pay, and pay raises or cuts- as well as other things that are similarly significant standing alone."); Higdon v. Jackson,

15

393 F.3d 1211, 1219 (11th Cir. 2004) ("An employment action...is not adverse merely because the employee dislikes or disagrees with it and not everything that makes an employee unhappy is actionable adverse action.") (cleaned up); Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449 (11th Cir.1998) (same), Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 588 (11th Cir. 2002). Here, the Plaintiff relies upon the following: "[R]equiring Mrs. Goldstein to perform tasks that other similarly situated Hispanic employees were not required to perform; improperly blaming Mrs. Goldstein for actions/inactions for which she had no responsibility; making false claims, contending actions occurring more than a year before were problematic, violative of the Town's policies and procedures, criminal, and untruthful/unethical, despite her having received a stellar annual review during the relevant time; and other ways to be uncovered through discovery." [ECF No. 35 at ¶186].[2] The Plaintiff does not plausibly allege facts to support a material adverse action taken against her. Hostile or unpleasant statements do not constitute materially adverse employment action. The Plaintiff fails to plausibly allege that the Town suspended or terminated her based on any protected complaint that she made. Count III(b) must be dismissed.

The Amended Complaint is devoid of factual allegations establishing a causal connection between any protected activity and any adverse action. As to the pre-termination period, the Amended Complaint only alleges that the adverse employment action begins "shortly after" the Plaintiff complained of "race discrimination." [ECF No. 35 at ¶185]. To establish the required

---

[2] To the extent the Amended Complaint relies on the August 6, 2024, paid suspension as a stand-alone adverse employment action [ECF No. 35 at ¶58, 145], that theory also fails. A suspension with full pay and benefits is generally not an adverse employment action cognizable under § 1981. Davis v. Legal Services Alabama, Inc., 19 F.4th 1261 (11th Cir. 2021)(holding that being paid on leave was not an adverse employment action). A paid suspension while under investigation is not sufficient to support the Plaintiff's retaliation claim. The conclusions of the Ramos Report independently justified the Town's approach to the matter and the need for an investigation in the first instance.

causal relationship for a valid retaliation claim, Plaintiff must establish that she would not have incurred an adverse employment action **but for** her protected activity. See e.g., Raspanti v. Four Amigos Travel, Inc., 266 Fed. Appx. 820, 823 (11th Cir. 2008) (emphasis added); Sims v. MVM, Inc., 704 F.3d 1327, 1335–36 (11th Cir. 2013) (a "but-for" cause requires a closer link than mere proximate causation; **it requires that the proscribed animus have a determinative influence on the employer's adverse decision**) (emphasis added); Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process and had a **determinative influence on the outcome**") (emphasis added). Additionally, "mere temporal proximity, without more, must be 'very close.'" Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). The Plaintiff was under the supervision of Doce from April to August 2024. [ECF No. 35 at ¶11], and the Plaintiff's Amended Complaint does not allege any facts or clear chronology of events that give rise to an inference of causation. Nothing in the Amended Complaint establishes "but-for" causation between her unclear purported complaint and subsequent termination in November 2024.

As to the termination, the Amended Complaint fails to allege that Jankowski was aware of the Plaintiff's protected activity or facts showing how he gained such awareness. The Plaintiff fails to assert that the Appeals Board was aware of any protected activity. Without facts establishing that Jankowski was aware the Plaintiff engaged in alleged protected activity and the close temporal relationship, Count III fails to state a claim.

Finally, the Plaintiff claims "[t]he Circuit Court for Miami-Dade County issued its Mandate in Case No. 2025-000035-AP-01 on December 29, 2025, which was tantamount to a finding that the adverse actions taken against Ms. Goldstein were improper, unfounded, retaliatory, and should

17

not have occurred." [ECF No. 35 at ¶190]. The state court's review of the Plaintiff's termination is not tantamount to a finding that the actions against the Plaintiff were retaliatory. There are no allegation that the Appeals Board was aware of the Plaintiff's alleged complaint to HR or the Interim Town Manager. This bears no weight on the Plaintiff's purported retaliation claim.

C.  **The Plaintiff fails to State a Due Process Claim (Counts IV and V)**

1.  **Adequate State Remedies Exist (Count IV)**

Property and liberty interest due process claims involve separate and distinct elements. See, e.g., Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (To state a claim for the denial of a property interest without due process of law, the Plaintiff must establish (1) deprivation of a constitutionally-protected property interest; (2) governmental action; (3) and constitutionally inadequate process).

The Plaintiff does not (and cannot) allege that the state remedies for challenging the Town's alleged decisions were constitutionally inadequate. The Amended Complaint affirmatively alleges that adequate state remedies were available and that the Plaintiff successfully invoked them. While the Plaintiff is critical of the Town's Appeals Board hearings on February 28, and March 10, 2025, the process resulted in a finding favorable to the Plaintiff. The Miami-Dade Circuit Court granted certiorari review, and quashed the Appeal Board decision, on December 29, 2025, in her favor. [ECF No. 35, at ¶261-264, 268-269]. The fact that the state court provided a remedy in her favor demonstrates that adequate state remedies existed and functioned properly. In McKinney v. Pate, the Eleventh Circuit held that "Florida circuit courts review the entire cause and consider every aspect of the case to determine whether due process was observed." 20 F.3d 1550, 1563-64 (11th Cir. 1994). In McKinney, 20 F.3d at 1564, the Court found that Florida courts

18

possess the power to remedy the plaintiff's loss and therefore the state remedy was capable of providing plaintiff with all the relief warranted.

Procedural due process is satisfied whenever the State of Florida has provided -- or would have provided -- an adequate post-deprivation remedy. Reams v. Irvin, 561 F.3d 1268, 1266 (11th Cir. 2009); Horton v. Bd. of Cnty. Commisioners of Flagler Cnty., 202 F.3d 1297, 1300 (11th Cir. 2002) (explaining that "the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, **but also includes the remedial process state courts would provide if asked.**") (emphasis added); Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000); Tinney v. Shores, 77 F.3d 378, 382 (11th Cir. 1996) (per curiam) (holding that "the [plaintiffs] have failed to state a valid procedural due process claim because they have not alleged that [state] law provided them with an inadequate post-deprivation remedy."). These cases stand for the proposition that the Plaintiff's ability to secure relief through state-law remedies -- after an initial denial of due process -- negates a claim under 42 U.S.C. § 1983 for an alleged deprivation of procedural due process:

> [W]e said that only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise. It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim… This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora--agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.

Cotton v. Jackson, 216 F.3d 1328, 1330-1331 (11th Cir. 2000) (internal citations and quotations omitted). Count IV must be dismissed.

The Amended Complaint's theory that the certiorari remedy is "illusory" because the Town has not yet reinstated the Plaintiff does not equate with a denial of due process under the Fourteenth Amendment [ECF No. 35 ¶¶227-231].  The constitutional inquiry under McKinney and Cotton focuses on whether an adequate state process existed and was available. The Miami-Dade Circuit Court accepted jurisdiction, reviewed the merits, quashed the Personnel Board decision and issued a mandate. The result from the Miami-Dade Circuit Court "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section § 1983 arise." Cotton, 216 F.3d at 1330. The Amended Complaint confirms that state relief has been and remains unavailable. As a result, Count IV must be dismissed.

### 2.  No procedural due process liberty claim

 To establish a viable § 1983 liberty interest claim, the Plaintiff must allege (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing. Buxton v. City of Plant City, 871 F.2d 1037, 1043-44, 1046 (11th Cir. 1989) ("Because [a name clearing hearing] is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests."); see also White v. Thomas, 660 F.2d 680 (5th Cir.1981) cert. denied 455 U.S. 1027 (1982) (post-termination hearing proper remedy for employee deprived of liberty interest during termination); In re Selcraig, 705 F.2d 789, 796 (5th Cir.1983) (state need only inform stigmatized employee that the opportunity to clear his name exists upon request; pre-termination hearing is not a prerequisite to publication).

The Plaintiff's liberty interest claim fails on the sixth element. The Plaintiff attended two hearings before the Town's personnel appeals board hearing. She appeared, presented evidence,

and contested the accusations against her. That process, together with a certiorari review in circuit court in her favor, constituted a sufficient name-clearing opportunity under the Fourteenth Amendment. [ECF No. 35, at ¶¶83-92, 189]. Count V must be dismissed.

**D. Blumstein Is Entitled to Qualified Immunity on Plaintiff's Due Process Claims (Counts IV$_A$ & V$_A$) Because It Is Not Clearly Established That Someone Other Than the Official Decisionmaker Can Be Held Individually Liable Under § 1983.**

Plaintiff's due process claims against Blumstein must be dismissed because Blumstein is entitlement to qualified immunity. "When state officials are sued in their individual capacities, the application of qualified immunity to their actions is the rule rather than the exception[.]" Samedi v. Miami-Dade Cnty., 134 F. Supp. 2d 1320, 1333 (S.D. Fla. 2001) (quoting Braddy v. Florida Dept. of Labor and Employment Sec., 133 F.3d 797, 801 (11th Cir.1998)). It is not premature to grant qualified immunity at this juncture, for questions of qualified immunity should be resolved at the earliest possible stage in the litigation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991); Delgado v. Miami-Dade Cnty., 456 F. Supp. 2d 1234, 1240 (S.D. Fla. 2006) (granting qualified immunity at motion-to-dismiss stage); see also Pearson v. Callahan, 555 U.S. 223, 237 (2009) ("Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'").

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003)) (internal quotations omitted). To assess discretionary authority, courts look to "the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Donald v. Norris, 131 F.4th 1255, 1263 (11th Cir.

21

2025) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004)) (internal quotations omitted). Once government officials establish that they were acting within their discretionary authority, the burden is on the plaintiff to establish qualified immunity is not appropriate by showing a violation of a constitutional right that was clearly established at the time of the alleged misconduct. Gates, 884 F.3d at 1297. Plaintiff cannot make such a showing because it is not clearly established that someone other than an official decisionmaker can be held individually liable under § 1983 for alleged due process violations. See Kamensky v. Dean, 148 F. App'x 878, 880 (11th Cir. 2005); Broberg v. Gerrard, No. 09-CV-82279, 2010 WL 2869539, at *4 (S.D. Fla. July 20, 2010).

       1.   **Blumstein acted within his discretionary authority as Town Attorney and Town Manager at the relevant time.**

Blumstein held different positions during his tenure at the Town of Surfside and acted within his discretionary authority at all times. During the alleged investigation into Plaintiff's misconduct, Blumstein was the Interim Town Attorney and Town Attorney. [ECF No. 35 at ¶¶ 9; 45-46; 63]. Pursuant to the Town of Surfside Charter, the Town Attorney "shall act as the legal adviser to, and attorney and counsellor for, the municipality and all of its officers in matters relating to their official duties." Town of Surfside Charter, Art. II, Sec. 28.[3] During his tenure as Town Attorney, Blumstein is alleged to have participated in the investigation into Plaintiff's misconduct. [ECF No. 35 at ¶¶ 45-48]. His alleged participation involved sending a "discipline policy,"

---

[3] This Court may take judicial notice of the Town of Surfside Charter, for it is a public record. See Mikov v. Vill. of Palm Springs, No. 23-81565-CIV, 2025 WL 1312506, at *5 n. 5 (S.D. Fla. Mar. 15, 2025) (finding that the Court could take judicial notice of the municipal code as it was a public record not subject to reasonable dispute and whose accuracy could not be questioned); see also Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider" without "converting a motion to dismiss into a motion for summary judgment."). For the Court's convenience, all relevant provisions from the Town of Surfside Charter are attached as **Exhibit "1".**

following up with the Chief of Police, Enrique Doce, on the status of the investigation, and attending Sgt. Ramos' interview of Plaintiff. [ECF No. 35 at ¶¶ 45-46; 65; 85]. Such actions are surely within the bounds of his discretionary authority as Town Attorney. Cf. Muszik v. Town of Redington Shores, No. 8:22-CV-2387-CEH-SPF, 2024 WL 2273187, at *9 (M.D. Fla. May 20, 2024) (finding mayor's "alleged conduct in both reporting and pursuing the investigation of suspected violations falls within the outer perimeters of her job-related duties as the town mayor").

After Plaintiff's termination by Peter Janowski, **not Blumstein**, on November 7, 2024, Blumstein appeared at the Personnel Appeals Board hearing held by the Town of Surfside. [ECF No. 35 at ¶¶ 9, n 1; 78-79; 86]. At the hearing, Blumstein now held the position of Town Manager, and he proceeded to make the case for upholding Janowski's termination of Plaintiff. See [ECF No. at ¶¶ 9; 86-87]. Pursuant to the Charter, the Town Manager has broad duties, which include acting as "chief executive officer and the head of the administrative branch of the town government" and being "responsible to the commission for the proper administration of all affairs of the town." Town of Surfside Charter, Art. III, Sec. 35. It cannot reasonably be argued that Blumstein's participation in the hearing was outside the bounds of his discretionary authority as the chief executive officer of the Town after the employment action had already been taken.

Blumstein was also the acting Town Manager when he addressed the Town of Surfside Commission at a meeting on October 22, 2026. [ECF No. 35 at ¶¶ 9; 243]. There, Blumstein made various comments regarding a dispute with an officer from the Town's Police Department regarding officer pay, as well as Plaintiff's termination. See [ECF No. 35 at ¶ 243]. In addition to being "responsible to the commission for the proper administration of all affairs of the town[,]" the Town's Charter provides that the Town Manager must "[k]eep the commission advised of the financial condition and future needs of the town and make such recommendations as may seem to

23

him desirable." Town of Surfside Charter, Art. III, Sec. 35. Blumstein's comments and actions were well-within his discretionary authority as they fall within his prescribed duties to the commission.

### 2. <u>Blumstein was not an official decisionmaker</u>.

Plaintiff cannot establish a violation of a clearly established constitutional right because Blumstein was never the official decisionmaker who allegedly deprived Plaintiff of due process. "A 'decisionmaker' is someone 'who has the power to make official decisions and, thus, be held *individually* liable.'" <u>Kamensky</u>, 148 F. App'x at 879 (quoting <u>Quinn v. Monroe County</u>, 330 F.3d 1320, 1326 (11th Cir. 2003)) (emphasis in original). To identify a decisionmaker, this court may examine "the statutory authority of the official alleged to have made the decision." <u>Id</u>. (quoting <u>Quinn</u>, 330 F.3d at 1328). In the context of an employee's termination, "a 'decisionmaker' has the power to terminate an employee, **not merely the power to recommend termination**." <u>Id</u>. (quoting <u>Quinn</u>, 330 F.3d at 1328) (emphasis added).

In <u>Broberg v. Gerrard</u>, the court granted the defendant's motion to dismiss and found that the plaintiff had not pled a violation of constitutional rights under the Due Process Clause because the defendant was not the decisionmaker. No. 09-CV-82279, 2010 WL 2869539, at *4. There, the defendant mayor was sued in his individual capacity and alleged to have caused an amendment to a town ordinance in violation of both the Equal Protection Clause and the Due Process Clause. <u>Id</u>. at *2. Because the defendant mayor had no decision-making authority to enact amendments to ordinances or to reject permit extensions by himself, he could not, as a matter of law, be individually liable for the actions of the commission. <u>Id</u>. at *3.

Just as the defendant mayor in <u>Broberg</u> could not be individually liable for the actions of the decision-making commission, Blumstein cannot be individually liable for the actions of the

actual decisionmaker here; namely, Peter Janowski, who terminated Plaintiff's employment, the Personnel Appeals Board, which "upheld the termination of her employment notwithstanding the findings it made on February 28, 2025[,]" and the Town Commission, which "adopted the findings of the Personnel Appeals Board to uphold the termination[.]" [ECF No. 35 at ¶¶ 92; 95]. Though Blumstein is alleged to have partaken in the investigation into Plaintiff's misconduct, as the Town Attorney, he was without power to terminate Plaintiff on November 7, 2024. That power rested with the Town Manager. Town of Surfside Charter, Art. III, Sec. 35 (stating Town Manager shall be required to "[a]ppoint and remove officers and employees of the town except as otherwise provided by this Charter and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office.").

By the time Blumstein became Town Manager, Plaintiff had already been terminated. [ECF No. 35 at ¶¶ 9; 78-79]. Likewise, though Blumstein attended the Personnel Appeals Board hearing and allegedly made the case for upholding Plaintiff's termination, he was without power to uphold or reverse Plaintiff's termination, as that power rested with the Board. Town of Surfside Charter, Art. II, Sec. 31.1 ("The decision of the Personnel Appeals Board, if concurred in by four members of said Board, shall be binding upon the town and the employee."). Lastly, though Blumstein is alleged to have "presented to the Town's Commission for a vote as an add-on to its agenda" the findings of the Personnel Appeals Board regarding Plaintiff's termination, he had no power to vote on the matter. See [ECF No. 35 at ¶ 94]; Town of Surfside Charter, Art. III, Sec. 35.1 ("The town manager shall be entitled to a seat on the commission and shall have the right to take part in the discussions on all matters coming before the commission, but **shall have no vote therein**.") (emphasis added).

25

At all material times, Blumstein was not the official decisionmaker in Plaintiff's termination, her appeal to the Personnel Appeals Board, or the Town's adoption of the Board's findings. Because Blumstein was not the official decisionmaker in any of the actions that allegedly deprived Plaintiff of her due process rights, Count IV$_A$ fails to state a valid claim against Blumstein. See Sinclair v. Town of Yankeetown, No. 1:07-CV-035-SPM, 2008 WL 660089, at *2 (N.D. Fla. Mar. 7, 2008) ("Though Mayor Clary recommended to the town council that Plaintiff be terminated, the final decision was up to the council members, not Mayor Clary. The mayor was not the final 'decision maker' and therefore, not able to be held individually liable."); Redding v. Tuggle, 2007 WL 2462641 at *28 (N.D. Ga. 2007) (holding defendants could not be individually liable for § 1983 claims where they had power only to recommend promotion); Sanders v. City of Selma, No. CIV.A.04-753 B, 2005 WL 3411342, at *4 (S.D. Ala. Dec. 13, 2005) (finding that defendant mayor could not be held individually liable where city council was the entity responsible for the decision not to reappoint plaintiff). Blumstein is entitled to qualified immunity because it is not clearly established that anyone other than the official decisionmaker can be held individually liable in these circumstances. See Kamensky, 148 Fed. Appx. at 880; Kopp v. City of Greensboro, No. 3:15-CV-17 (CAR), 2016 WL 4435085, at *7 (M.D. Ga. Aug. 18, 2016) (granting qualified immunity to defendant mayor because it is not clearly established that anyone other than the official decisionmaker could be held individually liable under § 1983).[4]

---

[4] In limited circumstances, such as Title VII cases, plaintiffs can invoke the cat's-paw theory, which "provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee." Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999). Importantly, the Eleventh Circuit explicitly stated that it has not extended the cat's paw theory or "rubber stamp" exception to individual liability under 42 U.S.C. § 1983. See Kamensky, 148 Fed. Appx. at 880 (holding that defendant who had only recommendation power, not termination power, could not be individually liable in First Amendment retaliation claim).

26

### 3. Blumstein's role as "charging-instrument drafter, investigation-scope advisor, interrogation attendee, and legal counsel" cannot form the basis of Plaintiff's due process claim.

Plaintiff alleges that Blumstein violated her due process rights by "[d]rafting and supplying to the Surfside Police Department the discipline-policy framework that was used on (and after) July 1, 2024," "[p]articipating in the scoping of the Internal Affairs investigation[,]" "[a]ttending [] Goldstein's sworn interrogation[,]" "[p]roviding legal advice to the Town Manager in connection with the issuance of the letter terminating her employment[,]" "[m]aintaining the decision to confiscate the sick leave[,]" and "[a]cting as Town's prosecutor and/or representative at the Personnel Appeals Board Hearing[.]" [ECF No. 35 at ¶ 209]. Blumstein's role as "charging-instrument drafter, investigation-scope advisor, interrogation attendee, and legal counsel" cannot form the basis of Plaintiff's due process claim. See [ECF No. 35 at ¶ 210].

"The essential elements of procedural due process are notice and an opportunity to be heard before one is deprived of a protected interest." Lacy v. City of St. Petersburg, Fla., No. 8:14-CV-252-T-33TGW, 2014 WL 4376201, at *5 (M.D. Fla. Sept. 4, 2014), aff'd, 608 F. App'x 911 (11th Cir. 2015) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43 (1985)); see Sprauer v. Town of Jupiter, No. 08-80280-CIV, 2008 WL 11331821, at *5 (S.D. Fla. Nov. 24, 2008), report and recommendation adopted, No. 08-80280-CIV, 2008 WL 11333284 (S.D. Fla. Dec. 5, 2008), aff'd, 331 F. App'x 650 (11th Cir. 2009). None of Blumstein's alleged actions interfered with Plaintiff's notice of the allegations against her and her subsequent termination, nor did any of his actions have anything to do with depriving Plaintiff of any opportunity to be heard. Drafting a "framework" that was used by *other* individuals, participating in an investigation, attending an interview, providing legal advice, failing to disturb the decision of the *prior* Town Manager, and acting as the Town's representative at the Personnel Appeals Board Hearing (but not being a part

27

of the decision-making Board) are completely innocuous actions and only further evidence that Blumstein was not the official decisionmaker that allegedly deprived Plaintiff of due process.[5]

### 4. <u>Blumstein was without power to provide plaintiff with any additional name-clearing hearing because he was no longer employed by the Town.</u>

In addition to claiming deprivation of a property interest without due process, Plaintiff claims she was deprived of a liberty interest in her good name. [ECF No. 35 at ¶¶ 236; 245].

> To recover under § 1983 for a procedural due process claim for deprivation of liberty, plaintiff must show that a (1) false statement, (2) of a stigmatizing nature, (3) attending governmental employee's discharge, (4) was made public, (5) by governmental employer, (6) without meaningful opportunity for an employee name-clearing hearing.

Spechler v. Tobin, 591 F. Supp. 2d 1350, 1360 (S.D. Fla. 2008), aff'd, 327 F. App'x 870 (11th Cir. 2009) (citing Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir.2000); Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1436-37 (11th Cir.1998)). "The hearings granted in such cases serve not to avert the unjustified denial of a specific benefit, but to allow the aggrieved party to 'clear his name.'"

---

[5] To the extent that Plaintiff bases her due process claim on any alleged failure to follow the Town's IA Policy, such a claim must be dismissed. See [ECF No. 35 at ¶¶ 26-30]; Harris v. Birmingham Bd. of Educ., 817 F.2d 1525, 1528 (11th Cir. 1987) ("[V]iolation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes."); Money v. Gibbs, No. CV423-243, 2024 WL 5168090, at *2 (S.D. Ga. Dec. 19, 2024), report and recommendation adopted, No. 4:23-CV-243, 2025 WL 950004 (S.D. Ga. Mar. 28, 2025) ("Violations of internal or administrative polic[i]es do not violate due process rights or any other constitutional right."); Boyett v. Troy State Univ. at Montgomery, 971 F. Supp. 1403, 1411 (M.D. Ala. 1997), aff'd sub nom. Boyett v. Troy State Univ., 142 F.3d 1284 (11th Cir. 1998) ("The Eleventh Circuit has explained that merely because a state law procedure exists does not mean that violation of that procedure is a due process violation under the federal constitution."); Black v. City of Auburn, Ala., 857 F. Supp. 1540, 1547 (M.D. Ala. 1994), aff'd, 56 F.3d 1391 (11th Cir. 1995) (finding that noncompliance with personnel policies is not a per se denial of procedural due process as the underpinnings of procedural due process are notice and a fair hearing); Barnes v. City of Phoenix, No. CV09-1767-PHX-JAT, 2009 WL 3425785, at *3 (D. Ariz. Oct. 22, 2009) ("Even assuming Defendants did not follow their own internal policies and procedures, such violations amount only to violations of an *internal* process, and not the type of due process protected under the Fourteenth Amendment.").

Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1046 (11th Cir. 1989) (quoting Campbell v. Pierce County, Georgia, 741 F.2d 1342, 1345 (11th Cir. 1984)). Name-clearing hearings "need not take place prior to his termination or to the publication of related information adverse to his interests." Id. (quoting Campbell, 741 F.2d at 1345).

The allegedly false, stigmatizing statements attributed to Blumstein were made on October 22, 2025. [ECF No. 35 at ¶ 243]. Assuming that Plaintiff was entitled to any kind of name-clearing hearing stemming from these statements, Blumstein definitively could not provide Plaintiff with any such process after he made his comments on October 22, 2025 because he was removed as the Town Manager thereafter on that very same day. [ECF No. 35 at ¶ 9]. Because the law is obvious that name-clearing hearings need not take place before publication of allegedly adverse information related to an employee's termination, and Blumstein's employment with the Town was terminated on the very same day he published allegedly false, stigmatizing information regarding Plaintiff's termination, Blumstein definitively was not a decisionmaker for purposes of granting or denying Plaintiff any alleged due process, i.e., a name-clearing hearing.

Blumstein was not an official decisionmaker at any material time, and it is not clearly established that anyone other than an official decisionmaker can be held individually liable under § 1983 for the claims sought. Because there is no case providing Blumstein "fair warning" that any of his actions or inaction as Town Attorney and Town Manager violated Plaintiff's constitutional rights, he is entitled to qualified immunity on both Count IV$_A$ and Count V$_A$. See Hope v. Pelzer, 536 U.S. 730, 741 (2002).

### E. Absolute Immunity Bars Plaintiff's Defamation Claim Against Blumstein in Count VI.

Just as Mr. Blumstein is entitled to qualified immunity from Plaintiff's due process claims, he is entitled to absolute immunity from Plaintiff's state-law defamation claim. Absolute immunity

29

protects statements made by public officials "in connection with the performance of the duties and responsibilities of their office." <u>Diaz v. Miami-Dade Cnty.</u>, 424 F. Supp. 3d 1345, 1365 (S.D. Fla. 2019), <u>aff'd</u>, 849 F. App'x 787 (11th Cir. 2021) (quoting <u>McNayr v. Kelly</u>, 184 So. 2d 428, 433 (Fla. 1966)) (internal citations omitted); <u>see also</u> <u>Hauser v. Urchisin</u>, 231 So. 2d 6, 8 (Fla. 1970) ("The public interest requires that statements made by officials of all branches of government in connection with their official duties be absolutely privileged."). The scope of one's office is broadly defined and includes all matters a public official is authorized to perform. <u>Diaz</u>, 424 F. Supp. 3d at 1365 (citing <u>Mueller v. The Florida Bar</u>, 390 So. 2d 449, 451 (Fla. 4th DCA 1980)). *"Given the broad interpretation,* **any statements made by a public employee 'within the orbit of his responsibilities' are immune**. <u>Id</u>. (citing <u>Florida State Univ. Bd. of Trustees v. Monk</u>, 68 So. 3d 316, 319 (Fla. 1st DCA 2011); <u>Goetz v. Noble</u>, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995)) (emphasis added).

Blumstein's alleged comments during the October 22, 2025 Town Commission meeting were made in connection with the performance of his duties and are well-within the orbit of his responsibilities. <u>See</u> [ECF No. 35 at ¶ 289]; <u>McNayr</u>, 184 So. 2d at 430 (statements made by a public employee within the orbit of his responsibilities are immune, *regardless of how false, malicious, or badly motivated they may be*); <u>Crowder v. Barbati</u>, 987 So. 2d 166, 168 (Fla. 4th DCA 2008) (sheriff entitled to absolute immunity for press release labeling father as "deadbeat parent"). Plaintiff's allegation that Blumstein made these statements outside the course of his duties as Town Manager is completely contradicted by the Town of Surfside Charter, which makes the Town Manager "responsible *to the commission* for the proper administration of all affairs of the town[,]" and requires that he "*[k]eep the commission advised* of the financial condition and future needs of the town and make such recommendations as may seem to him desirable." Town

30

of Surfside Charter, Art. III, Sec. 35 (emphasis added). All of Blumstein's alleged statements were made within the orbit of his prescribed responsibilities thereby making him absolutely immune from Plaintiff's defamation claim and requiring dismissal with prejudice of Count VI.  Grady v. Scaffe, 435 So. 2d 954, 955 (Fla. 2d DCA 1983) (affirming dismissal *with prejudice* of defamation complaint against county commissioner who allegedly made defamatory remarks at county commission meeting on absolute privilege grounds); see also Garate v. Town of Sw. Ranches, No. 24-CV-62089, 2025 WL 2933895, at *17 (S.D. Fla. July 28, 2025), report and recommendation adopted sub nom. Garate v. Town of Sw. Ranches, Fla., No. 24-62089, 2025 WL 2751040 (S.D. Fla. Sept. 26, 2025) (dismissing defamation claim against town council member where he was clearly acting within the orbit of his duties and responsibilities, and therefore afforded absolute privilege, when he made defamatory statements about plaintiff to the town council); Drisin v. Fla. Int'l Univ. Bd. of Trs., No. 1:16-CV-24939, 2017 WL 3505299, at *20 (S.D. Fla. June 27, 2017), report and recommendation adopted, No. 16-CV-24939-CIV, 2017 WL 10398209 (S.D. Fla. Sept. 28, 2017) (dismissing defamation claim where plaintiff did not plausibly claim that defendants exceeded the governmental privilege that absolutely protects their statements).[6]

### F. Doce Is Entitled to Qualified Immunity on Plaintiff's 1983 and Due Process Claims

Qualified immunity is intended to protect "government officials performing discretionary functions from the burdens of civil trials and from liability." Rioux v. City of Atlanta, 520 F.3d

---

[6] Plaintiff's claim for punitive damages against Blumstein should be stricken because it is supported by only conclusory allegations of "deliberate indifference," "reckless or callous indifference," and malice. See [ECF No. 35 at ¶¶ 213; 248; 291]; Eggleton v. Jackson, No. 09-CV-81292, 2011 WL 379186, at *14 (S.D. Fla. Jan. 13, 2011), report and recommendation adopted, No. 09-81292-CIV, 2011 WL 379175 (S.D. Fla. Feb. 2, 2011) (granting motion to dismiss/strike punitive damages where insufficient evidence existed that officer was motivated by malice). Conclusory allegations are not entitled to the assumption of truth, and legal conclusions must be supported by factual allegations. Randall v. Scott, 610 F.3d 701, 709–10 (11th Cir. 2010).

1269, 1282 (11th Cir. 2008) (quoting McMillian v. Johnson, 88 F.3d 1554, 1562 (11th Cir. 1996)). Government officials are shielded from liability to the extent that "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Id. at 1122 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). "The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation." See Harlow, 457 U.S. at 819. "If reasonable public officials could differ on the lawfulness of the defendants' actions, the defendants are entitled to immunity." Kingsland v. City of Miami, 382 F.3d 1220, 1231 (11th Cir. 2004) (citation omitted).

To receive qualified immunity, the public official claiming it must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Id. at 1232. Once the public official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. Id. To deny qualified immunity, the plaintiff must prove that "an official's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow, 457 U.S. at 818). There is a two-part standard that governs qualified immunity claims. First, the court must determine "whether the plaintiff's allegations, if true, establish a constitutional violation." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). Second, the violated right has to be clearly established at the time of the violation. Id.

As qualified immunity provides an entitlement not to face the burdens of litigation, the issue of qualified immunity is be resolved at the earliest possible stage in litigation. See Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003). Accordingly, it is appropriate to grant the defense

32

of qualified immunity at the motion to dismiss stage where the plaintiff failed to allege a violation of a clearly established constitutional right. *See id.*

In the instant case, accepting Plaintiff's allegations as true for purposes of this Motion, it is clear that Defendant Doce was acting within his discretionary authority as the Chief of Police in each allegation set forth by Plaintiff alleging any action taken by Defendant Doce. [ECF No. 35]. Moreover, as addressed more fully above, Plaintiff has wholly failed to establish there has been any 1983 violations in Counts I, II, and III; any due process violation where adequate state remedies not only exist, but Plaintiff has availed herself of the same; or that there was any denial of an opportunity for Plaintiff to clear her name where Plaintiff was afforded two hearings during which to contest the allegations brought against her, such that Plaintiff has not established that there has been any constitutional violation, and certainly not such that Defendant Doce knew he violated clearly established statutory or constitutional rights. Further, and as addressed fully herein, where Doce was not an official decisionmaker at any material time, and it is not clearly established that anyone other than an official decisionmaker can be held individually liable under § 1983 for the claims sought, Doce is entitled to qualified immunity on Counts I, II, III, IV, and V. See Hope, 536 U.S. at 741.[7]

**WHEREFORE,** Defendants, TOWN OF SURFSIDE, DOCE, and BLUMSTEIN respectfully request entry of an order dismissing the Amended Complaint, together with any other further relief deemed just and proper.

---

[7] Like with Plaintiff's claim for punitive damages against Blumstein, the same should be similarly stricken as it pertains to Doce, where the same is premised solely on conclusory allegations of "deliberate indifference," "reckless or callous indifference," and malice. [ECF No. 35 at ¶¶ 136, 137, 172, 173, 193, 194, 258]; Eggleton, 2011 WL 379186, at *14.

Dated: June 9, 2026

Respectfully submitted,

*/s/Mariela E. Tkacik, Esq.*
Mariela E. Tkacik
**Counsel for Defendant Town of Surfside**

*Lourdes Espino Wydler, Esq.*
Lourdes Espino Wydler
**Counsel for Defendant Mark Blumstein**

*Patricia M. Rego Chapman, Esq*.
Patricia M. Rego Chapman
**Counsel for Defendant Enrique Doce**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 9th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jeffrey L. Hochman*
Jeffrey L. Hochman
Fla. Bar. No. 902098

*/s/ Mariela E. Tkacik*
Mariela E. Tkacik
Fla. Bar. No. 1030433

Johnson, Anselmo, Murdoch,
Burke, Piper & Hochman, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, Florida 33304
Tel: (954) 463-0100
Fax: (954) 463-2444
hochman@jambg.com
metkacik@jambg.com
cardona@jambg.com
finley@jambg.com
cisaac@jambg.com

<u>**SERVICE LIST**</u>

**Brian H. Pollock, Esq.**
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel: 305-230-4884
brian@fairlawattorney.com
*Counsel for Plaintiff*

**Douglas T. Noah, Esq.**
**Patricia M. Rego Chapman, Esq.**
Dean Ringers et al
Capital Plaza I
201 East Pine Street, Suite 1200
Orlando, FL 32801
Tel: (407) 422-4310
dnoah@drml-law.com
PChapman@drml-law.com
*Counsel for Co-Defendant Enrique Doce*

**Lourdes Espino Wydler, Esq.**
Wydler Law
1550 Madruga Ave., Suite 400
Coral Gables, FL 33146
Office: 305-446-5528
lew@wydlerlaw.com

**Jeffrey L. Hochman, Esq.**
**Mariela E. Tkacik, Esq.**
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Ste. 1000
Ft. Lauderdale, FL 33304
Tel: 954-463-0100
hochman@jambg.com
METkacik@jambg.com
cardona@jambg.com
finley@jambg.com
cisaac@jambg.com
*Counsel for Defendant Town of Surfside*