UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-CV-20965-GAYLES/SHAW-WILDER

DINA GOLDSTEIN,

     Plaintiff,

vs.

TOWN OF SURFSIDE, FLORIDA;
ENRIQUE DOCE; AND
MARK BLUMSTEIN,

     Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS

Plaintiff, Dina Goldstein, responds to Defendants' Joint Motion to Dismiss ("MTD") [ECF No. 39], directed to the Amended Complaint [ECF No. 35], and requests that the Court deny it, as follows:

### I. INTRODUCTION

Mrs. Goldstein filed this lawsuit seeking recovery for race discrimination, retaliation, deprivation of her property and liberty interests without due process, and defamation arising from her termination from the Town of Surfside after more than sixteen years of exemplary service. [ECF No. 35.] Defendants responded with their Joint Motion to Dismiss the Amended Complaint ("MTD") [ECF No. 39], raising arguments that (1) the Town cannot be held liable under *Monell* because no unconstitutional policy or custom is alleged and because the final decisionmaker, Town Manager Jankowski, is not alleged to have harbored racial animus; (2) Doce, as Chief of Police, cannot be held individually liable under 42 U.S.C. § 1983 because he was not the official termination decisionmaker; (3) the cat's paw theory fails because independent actors broke any causal chain; (4) the comparators identified are invalid; (5) adequate state remedies existed for the due process claims; (6) Blumstein enjoyed qualified and absolute immunity; and (7) the defamation claim against Blumstein is barred by absolute privilege.

1

Not one of these arguments withstands scrutiny. Defendants ask the Court to disregard a complaint that alleges, in painstaking detail, how a police chief hired in April 2024 immediately set about constructing a pretextual investigation to remove a highly decorated White employee of sixteen years and replace her with three Hispanic employees he personally recruited, all while the Town Manager had no independent basis for the termination beyond the tainted investigation product the Chief handed him, while leaving the Hispanic officers who received additional benefits had no meaningful adverse employment actions taken. Defendants also ignore the state court's finding that the Personnel Appeals Board ("PAB") denied Mrs. Mrs.  due process and that the process it provided was "illusory," as further exemplified by the Town's failure to take any action in response to the mandate issued. And Defendants ask the Court to hold that a Town Manager appearing from a lectern in his personal capacity – in a desperate bid to save his own job – is absolutely immune from defamation liability when he publicly brands a former employee a fraudster. None of this reflects the law, and the Defendants' Motion to Dismiss must be denied.

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged claim. *Id.* at 556. "When considering a motion to dismiss for failure to state a claim, a Court must accept the allegations in the Amended Complaint as true, construing them in a light most favorable to the plaintiff." *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. NationsBank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993).) "The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). The standard for granting a motion to dismiss is high, considering that "A motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

facts in support of his claim which would entitle him to relief.'" *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The Court may not "resolve questions of fact, weigh evidence, [or] make credibility determinations … at the motion to dismiss stage." *Clear Spring Prop. v. Viking Power LLC*, 608 F. Supp. 3d 1220, 1227 (S.D. Fla. 2022). Each Defendant "bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.*, 144 F.3d 732, 735–36 (11th Cir. 1998) (citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)).

### III. ARGUMENTS AGAINST DISMISSAL

Defendants seek dismissal of all six counts of the Amended Complaint by relying on arguments that are either legally incorrect, factually unsupported by the pleadings, discovery-dependent, or a combination of these. In sum, none of the Defendants' arguments provides a basis for dismissal, requiring denial of their motion.

**A.**     **The Amended Complaint Adequately Pleads Claims For Race Discrimination In Counts I And II And Retaliation In Count III.**

Mrs. Goldstein alleged in Counts I and II that the Town and Doce discriminated against her because of her race and, in Count III, retaliated against her because she complained about the racial discrimination she experienced at work. Despite Defendants' attempt to have these claims dismissed at the pleading stage by quarreling with the extent of facts alleged, recasting detailed allegations as conclusory and threadbare, arguing that countervailing facts exist, or relying on inapposite cases decided at summary judgment, the Court properly considers these parlor tricks as mere distractions and finds the Amended Complaint sufficient to withstand dismissal. As is apparent from the matters set forth below, the law supports (if not requires) the Court's denial of their Motion after considering the facts relevant to the sufficiency of pleading at issue.

**1.**     **Clearly Established Law Prohibited Racial Discrimination and Retaliation in Public Employment.**

Section 1981 prohibits "intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Webster v. Fulton Cty.*, 283 F.3d 1254, 1256 (11th Cir. 2002); 42 U.S.C. § 1981. Section 1983 provides "the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575

F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing *Butts v. County of Volusia*, 222 F.3d 891, 894--95 (11th Cir. 2000)). Similarly, "The Equal Protection Clause of the Fourteenth Amendment prohibits race and sex discrimination in public employment." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018). Equal Protection Clause claims are also brought through § 1983. *See e.g.*, *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015) (analyzing § 1983 Equal Protection claims). Race discrimination claims brought under 42 U.S.C. § 1981 and the Equal Protection Clause, through the procedural vehicle of 42 U.S.C. § 1983, are analyzed under the same framework as those brought under Title VII. *Freeman v. Jupiter Inlet Colony*, 778 F. Supp. 3d 1326, 1336 (S.D. Fla. 2025) (citing *Cobb v. Floyd*, 2022 U.S. App. LEXIS 7701, at \*2 (11th Cir. Mar. 23, 2022); and *Lewis v. City of Union, Ga.*, 918 F.3d 2019, 1220 n.5 (11th Cir. 2019)). As Judge Lebowitz summarized in *Freeman*:

> A plaintiff can do this by (1) "present[ing] direct evidence of discriminatory intent," (2) "satisfying the burden-shifting framework set out in *McDonnell Douglas*," or (3) "demonstrat[ing] a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Reeves v. Columbus Consol. Gov't*, 2024 U.S. App. LEXIS 116, at \*1-2 (11th Cir. Jan. 3, 2024) (quoting *Lewis*, 918 F.3d at 1220 & n.6) (internal quotation marks omitted)).

778 F. Supp. 3d at 1336.

The right to be free from race discrimination in public employment has been clearly established in this Circuit since at least 1991. *See Busby v. City of Orlando*, 931 F.2d 764, 775 (11th Cir. 1991) ("it is clearly established that the equal protection clause affords [plaintiff] a right to be free from racial discrimination"; qualified immunity on this ground "clearly would have been erroneous"). This includes claims pursued under § 1981 and the Equal Protection Clause. "The Equal Protection Clause right to be free from race discrimination in public employment is clearly established." *Potter v. Williford*, 712 F. App'x 953, 954 (11th Cir. 2017) (*citing Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995)). Stated differently,

> In this Circuit, it is "beyond doubt" that the 'right to be free from intentional racial discrimination' is clearly established. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991). In particular, we "have often noted the patently obvious [\*9] illegality of racial discrimination in public employment." *Bryant v. Jones*, 575 F.3d 1281, 1300 (11th Cir. 2009) (quotation omitted).

*Garcia v. Riley*, 2021 U.S. App. LEXIS 27239, at \*8-9 (11th Cir. Sep. 10, 2021). This right to be free from racial discrimination in public employment extends equally to White, non-Hispanic employees: "[d]iscrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim." *Bass v. Board of County Commissioners*, 256 F.3d 1095 (11th Cir. 2001).

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

In addition, "Section 1981 supports a retaliation cause of action." *Webster*, 283 F.3d at 1256 (citing *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998)). The law prohibiting employers from retaliating against public employees who complain about racial discrimination was also clearly established. *Wiley v. Bd. of Ethics of DeKalb Cty.*, 2025 U.S. Dist. LEXIS 169673, at *69 (N.D. Ga. Aug. 6, 2025) (collecting cases) ("[T]he Eleventh Circuit has repeatedly held that retaliating against an employee for complaining about racial discrimination is unlawful under both Section 1981 and Title VII.")

### 2. Establishing Race Discrimination In Public Employment.

A plaintiff can establish discrimination by (1) direct evidence of discriminatory intent, (2) satisfying the *McDonnell Douglas* burden-shifting framework, or (3) presenting a "convincing mosaic" of circumstantial evidence warranting an inference of intentional discrimination. *Freeman*, 778 F. Supp. 3d at 1333 (citing *Reeves v. Columbus Consol. Gov't*, 2024 U.S. App. LEXIS 116 (11th Cir. Jan. 3, 2024))). The Eleventh Circuit applies this standard equally to non-minority plaintiffs alleging discrimination by a minority supervisor. *Jenkins v. Nell*, 26 F.4th 1243, 1250–51 (11th Cir. 2022) (reversing summary judgment; White plaintiff adequately presented convincing mosaic of race discrimination by Black supervisor without identifying a strict comparator).

### 3. Doce Is Individually Liable for Engaging in Racial Discrimination and Retaliation (Counts I$_A$, II$_A$, and III$_A$).

Defendants argue that the claims against Doce in Counts I$_A$, II$_A$, and III$_A$ must be dismissed because he was neither a final decisionmaker nor a policymaker. This argument fails for two independently sufficient reasons: (a) the Town's own Charter delegated decision-making authority over Police Department personnel to the Chief of Police, making Doce a decisionmaker in his own right; and (b) even if the Town Manager formally signed the termination letter, Doce is liable under the cat's paw doctrine because he infected the process that drove the termination.

#### a. Doce was a decisionmaker under the Town Charter.

Defendants selectively quote Art. III, Sec. 35 of the Town Charter for the proposition that only the Town Manager can hire and fire. [ECF No. 39 at 9]. But they omit the very same section's express delegation clause: "except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office." Art. III, Sec. 37 further provides that "[t]he town manager may delegate to each such department head the power to hire and discharge employees of his department with or without specific approval of the town manager."

5

Art. III, Sec. 39 expressly extends this authority to the Chief of Police: "[w]hen such power has been delegated to him by the town manager, he may hire and discharge his subordinates without specific approval of the town manager." The foregoing passages from the Town Charter establish that the Town Manager can delegate to the "head of a department or office" the authority to hire and fire. For this reason, Mrs. Goldstein alleged that Doce was "both a decisionmaker and policymaker" for the Town, [ECF No. 35 at ¶¶6, 102, and 157].

These Amended Complaint sufficiently alleges that Doce, as the Chief of Police and head of the Police Department, was "both a decisionmaker and policymaker" for the Town. [ECF No. 35 at ¶¶6, 102, 157.]. It goes on to allege that Doce exercised his decision-making authority in the adverse employment actions he took against Mrs. Goldstein as follows in the Amended Complaint:

- Doce (and Blumstein) coordinated to initiate and conduct the "Other Investigation" of Mrs. Goldstein, despite no policy, provision, or procedure rule, or regulation authorizing it. [ECF No. 35 at ¶¶25-31].

- Doce (and Blumstein) participated in the "Other Investigation" and shaped its Findings, Additional Findings, Conclusion, and Summary of Findings, after which Doce, as the Complainant, directed that an Internal Affairs investigation be opened against Mrs. Goldstein. *Id.*, at ¶¶32-52.

- Doce contacted Ramos, selecting him to conduct the Internal Affairs Investigation of Mrs. Goldstein, and the Town ratified that decision. *Id.*, at ¶¶53-57.

- Doce notified Mrs. Goldstein that she was suspended pending an investigation and directed that Mrs. Goldstein be placed virtual "house arrest" by establishing the requirements for her suspension (requiring that she remain at her home from 0900 to 1700 as of August 6, 2024, requiring she obtain authorization from the Captain of Police or his designee and use accrued leave time, and precluding her from earning/receiving holiday pay while relieved of duty with pay). *Id.*, at ¶¶55, 58.

- Doce decided that Mrs. Goldstein would not receive an Employee Performance Evaluation for 2023-23 or PAF. [ECF No. 35 at ¶76]. The Town ratified this decision. *Id.*, at §77.

- Doce terminated and/or caused Jankowski to terminate Mrs. Goldstein's employment based on the Ramos Report he orchestrated. *Id.*, at ¶¶78-79.

Whether Doce in fact received a delegation of hiring and firing authority is a factual question that cannot be resolved against Mrs. Goldstein at the pleading stage. *Clear Spring Prop.*, 608 F. Supp. 3d at 1227. Because the Court cannot, at the motion to dismiss stage, determine whether the Town Manager delegated decision-making authority to Doce and therefore weigh facts (including those

not alleged in the Amended Complaint), it must conclude that Mrs. Goldstein sufficiently alleged a factual basis to find that Doce was a decisionmaker.

The Amended Complaint alleges that Doce was both a "decisionmaker and policymaker" who wielded the authority to shape and effectuate the adverse employment actions taken against Mrs. Goldstein. [ECF No. 35 at ¶6.] The allegations that Doce initiated and shaped the two investigations of Mrs. Goldstein; selected and directed Ramos in his internal affairs investigation of Mrs. Goldstein (for which Doce was the complainant); arrived at the final version of the Ramos Report; framed its scope; reviewed drafts; determined the suspension terms; placed Mrs. Goldstein under "house arrest"; hired three Hispanic replacements in anticipation of terminating Mrs. Goldstein's employment (bypassing the pre-hiring background investigation); decided that Mrs. Goldstein would not receive her performance evaluation; and 'terminated and/or caused Jankowski to terminate' her employment; and continued to prosecute Mrs. Goldstein at the PAB hearing are more than sufficient to support an inference that Doce exercised decision-making authority over her employment. [ECF No. 35 at ¶¶6-7, 52-79.]

b.     Doce is liable under the cat's paw doctrine.

Even if Doce did not possess independent termination authority, he is liable under the cat's paw doctrine. Under this doctrine, a plaintiff may establish but-for causation "if she shows that the unbiased decisionmaker followed a 'biased recommendation without independently investigating the complaint against the employee.' In such a case, the recommender is using the decisionmaker as a mere conduit, or cat's paw, to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999); *see also Godwin v. WellStar Health Sys., Inc.*, 615 F. App'x 518, 528 (11th Cir. 2015) (same). The Eleventh Circuit has confirmed this framework applies equally in § 1983 cases. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) ("Because *Pennington*'s claims under § 1983 and Title VII generally have the same elements of proof and use the same analytical framework, we will only explicitly address the Title VII claims unless otherwise noted.").

The Supreme Court has further confirmed that an employer cannot invoke an 'independent investigation' defense when the investigation relied on information provided by the biased actor or the adverse action was not 'entirely justified apart from' the biased supervisor's contribution. *Staub v. Proctor Hospital*, 562 U.S. 411, 421–22 (2011). As the Supreme Court held: "If the employer's investigation takes 'into account' or relies on a biased supervisor's report, the

7

employer cannot claim the adverse action was entirely justified independently." Id. The burden falls on the employer — not the plaintiff — to demonstrate the adverse action was "entirety justified apart from" the biased actor's contribution. i.; see also *Duncan v. Alabama Dep't of Transp.*, No. 17-12406 (11th Cir. May 9, 2018) (following *Staub*: "there can be no proximate cause only if the adverse action is entirely justified apart from the biased supervisor's recommendation"; "burden falls on the employer"). Where the investigation is initiated, fed, and shaped by the discriminating actor, "the independent investigation defense is unavailable." *Jenkins v. Nell*, 26 F.4th 1243, 1252 (11th Cir. 2022); *see also Montoya v. Morgan*, 2018 U.S. Dist. LEXIS 168593, at *13-14 (N.D. Fla. Sept. 30, 2018) (finding triable issue on cat's paw theory where biased supervisor's input was the proximate cause of the demotion and the final decisionmaker took the biased input into account). When the final decision-maker relies on a biased investigation without conducting an independent evaluation, the cat's paw theory imposes liability on those who infected the process. *Freeman*, 778 F. Supp. 3d at 1340-41 (holding that *Monell* liability is consistent with a cat's paw theory "where the final decisionmaker… abdicated its role, sanctioned an outcome, or knowingly affixed its imprimatur to a process so infected by racial discrimination that the municipality itself was a 'but-for' cause of the unconstitutional deprivation"). [ECF No. 25 at ¶74].

The Amended Complaint alleges exactly this scenario. The Ramos Report — the sole basis for Jankowski's termination letter — was the product of an investigation that Doce initiated (as Complainant), shaped by scoping the investigation, directed in its approach, and provided virtually all of its substantive input. [ECF No. 35 at ¶¶45–74.] The Amended Complaint alleges the Ramos Report "was basically a repackaged summary of the materials provided to him by Doce and Holbrook." [ECF No. 35 at ¶72.] Jankowski conducted no independent review. [ECF No. 35 at ¶78.] Under *Staub* and *Jenkins*, Defendants cannot avoid liability on a cat's paw theory simply by pointing to a formal decisionmaker who blindly adopted the tainted product of Doce's discriminatory machinations.[1]

---

[1]    Although Defendants claim that Jankowski relied on the "findings of the Ramos Report," there is no allegation in the Amended Complaint that the Ramos Report contained any "findings" or drew any conclusions – because it did not. [*Compare* ECF No. 39 at 7; with ECF No. 35 at ¶¶72-74]. Instead, the Amended Complaint details that the Ramos Report resulted from a "sham" of an investigation that followed no rules or protocols, did not include any reasonable effort to obtain a statement from any witness other than Mrs. Goldstein, and relied almost entirely on the information and input Doce and other Town employees provided. [ECF No. 35 at ¶¶25-84].

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

The distinction Defendants rely upon — that *Pennington*'s independent investigation broke the causal chain — is factually inapposite. In *Pennington*, the deciding official personally conducted fresh interviews, reviewed materials independently, and received no further involvement from the biased subordinate. Here, Jankowski did none of that. He received the Ramos Report and acted on it. *Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.20 (11th Cir. 1999) (evidence that nondecisionmaker "manipulated the decisionmakers" establishes cat's paw liability). That suffices at the pleading stage.

### 2.   *Monell* Liability Attaches to the Town Under Multiple Theories.

A municipality can be held liable for race discrimination based on "(1) a formal regulation or policy, (2) an informal custom, (3) a decision of an employee with final policymaking authority, (4) final policymakers' ratification of their subordinates' decisions, or (5) a failure to adequately train or supervise employees." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). A single deliberate decision by a final policymaker constitutes municipal policy — no pattern or practice is required. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[i]f the decision to adopt a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly"); and *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713 (11th Cir. 1992) "While a municipality cannot be held liable "merely on a theory of respondeat superior… a single decision by an official policymaker can establish the existence of an unconstitutional municipal policy.")

Defendants' argument focuses exclusively on the absence of a formal unconstitutional policy and Jankowski's lack of racial animus. But that framing ignores the actual theories of municipal liability pled in the Amended Complaint. The Defendants' remaining arguments for dismissal of the § 1983 claims against the Town in I$_B$, II$_B$, and III$_B$ are neither based on controlling law nor the facts alleged in the Amended Complaint, but on a set of incongruent facts they hope will convince or confuse the Court. Defendants' parlor tricks do not require dismissal.

### a.   Doce was a policymaker.

As set forth above, the Town Charter expressly permits the Town Manager to delegate hiring and firing authority to department heads, including the Chief of Police. The Amended Complaint alleges that Doce was "both a decisionmaker and policymaker" and that, through his control over the investigative process, he exercised final decision-making authority over Mrs. Goldstein's employment. [ECF No. 35 at ¶¶6, 102, 157.] A single decision by an official

9

policymaker can establish Monell liability. *Martinez*, 971 F.2d at 713 ("a single decision by an official policymaker can establish the existence of an unconstitutional municipal policy"); *Pembaur*, 475 U.S. at 480. Whether Doce received a formal delegation of final policymaking authority as contemplated by the Town Charter — and therefore whether his decisions bind the Town — is a factual question not properly resolved on a motion to dismiss.

    b.  The Town ratified Doce's conduct and decisions.

Even if Doce lacked independent policymaking authority, the Town ratified his discriminatory decisions. "Municipal liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (municipal liability attaches "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."); *Hoefling*, 811 F.3d at 1279 (same). Ratification requires that the final policymaker approve "not only the decision itself, but also the unconstitutional basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality).

Rather than independently investigate or evaluate them, the Town rubber-stamped and ratified Doce's discriminatory employment decisions. The Amended Complaint details how the Town ratified Doce's decisions at every step taken: it accepted Doce's recommendation to investigate Mrs. Goldstein, it accepted as true the allegations that Doce shaped and repackaged in the Ramos Report, it used the Ramos Report as the basis for terminating Mrs. Goldstein's employment, and it had its PAB rubber-stamp the decision to terminate Mrs. Goldstein's employment for cause, the PAB's findings of no cause, and adopted Resolution No. 2025-3386 formally ratifying the termination of her employment.[2] [ECF No. 35 at ¶¶94-97, 122, 127, 131.]

Jankowski conducted no independent investigation. [ECF No. 35 at ¶78.] Where a final policymaker "abdicates its role" and "affixes its imprimatur to a process so infected by racial discrimination that the municipality itself was a 'but-for' cause of the unconstitutional deprivation," Monell liability attaches. *Freeman*, 778 F. Supp. 3d at 1340.

---

[2]  Meanwhile, the Town either delegated to Doce the decisions involving whether and who to hire to replace Mrs. Goldstein, the timing of those hirings, and authorized his decisions to deviate from the Town's standard background and hiring processes. [ECF No. 35 at ¶¶111-131].

Coral Gables, Florida | Detroit, Michigan

FairLaw Firm

Defendants' reliance on Praprotnik and the absence of Jankowski's personal racial animus is legally insufficient. The cat's paw theory specifically addresses situations where the discriminatory intent is held by the initiating official, not the formal decisionmaker. The Town's ratification of a process so thoroughly infected by Doce's racial animus — without independent review — is chargeable to the municipality. *Id.*

### 3. The Amended Complaint Alleges Valid Comparators.

Defendants cite *Johnson v. Miami-Dade Cnty.*, 169 F.4th 1301 (11th Cir. 2026), for the proposition that Mrs. Goldstein's comparators are invalid. [ECF No. 39 at 11]. *Johnson* is procedurally inapposite, as it affirmed the District Court's grant of summary judgment after full discovery. It does not address the pleading standard under Rule 12(b)(6). The Eleventh Circuit's en banc decision in *Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019), on which *Johnson* relies, was itself decided at the summary judgment stage. Neither case establishes any comparator-sufficiency threshold applicable at the pleading stage.

Even under the *Lewis* "similarly situated in all material respects" standard applied at summary judgment, a plaintiff's failure to produce a perfect comparator does not preclude survival of a disparate-treatment claim — comparator evidence that does not satisfy *Lewis* can still "contribute to a convincing mosaic' analysis." *Johnson*, 169 F.4th at 1310 ("Thus, our conclusion that *Johnson*'s comparators do not meet the *Lewis* standard at step one does not foreclose his argument that his comparators contribute to a convincing mosaic of discrimination. However, *Johnson*'s convincing mosaic argument fails because his comparators are the *only* evidence of discrimination he points to.")

The Amended Complaint specifically identifies Jose "Jay" Matelis, Julio Torres, and Jose Valino – all Hispanic police officers who were allowed to "bank" compensatory time beyond the 300-hour policy limit and who were not terminated as a result. [ECF No. 35 at ¶107.] While the officers benefited from the additional banked time, Mrs. Goldstein received no financial or other benefit from the officers' time submissions. [ECF No. 35 at ¶108.] Whether these officers are sufficiently similarly situated in all material respects is a fact-intensive inquiry the Court cannot resolve without discovery. The prima facie burden is "not onerous," *Lewis*, 918 F.3d at 1224, and it is plainly met at the pleading stage where the Amended Complaint alleges the same type of conduct (compensatory time banking) was treated differently based on race.

11

Further, while subject to the same rules and policies, the Amended Complaint also details that Doce knew that the City of Miami Beach Police Department investigated Michell Sancez and found violated various rules and ethics standards by taking $911.25 from its evidence room. *Id.*, at ¶¶113-16. Doce nonetheless urged her to apply, interviewed her, and had the Town hire her to replace Mrs. Goldstein, bypassing its standard hiring process in so doing. *Id.*, at ¶¶113-122.

The proper standard for comparator allegations at the motion to dismiss stage is plausibility, not the rigorous summary judgment inquiry employed in *Lewis*. In *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296-97 (11th Cir. 2021), the Eleventh Circuit reversed the district court's dismissal of a section 1981 discrimination claim under Rule 12(b)(6), holding that the plaintiff plausibly alleged discrimination by showing that only he and his fiancée — not other guests of different races — were singled out and removed from a hotel pool. The Eleventh Circuit applied *Twombly/Iqbal* plausibility, not *Lewis's* summary judgment framework, and held that at the pleading stage the plaintiff need not "conclusively rebut other possibilities." *Id.* at 1298. Likewise, in *McCarthy v. City of Cordele*, 111 F.4th 1141, 1143 (11th Cir. 2024), the Eleventh Circuit reversed the dismissal of section 1983 Equal Protection race discrimination claims against a municipal employer, holding that comparator allegations were sufficient to permit the reasonable inference of intentional discrimination at the 12(b)(6) stage. Here, the Amended Complaint alleges that Hispanic officers Matelis, Torres, and Valino engaged in the identical conduct — banking compensatory time beyond the 300-hour limit — without consequence, and that Sanchez was hired to replace her notwithstanding her having actually committed the violations Mrs. Goldstein was exonerated of – while Mrs. Goldstein was investigated and terminated. [ECF No. 35 at ¶¶107-108; 113-122.] Under *Ziyadat* and *McCarthy*, these allegations are sufficient at the pleading stage to withstand dismissal. As the Supreme Court recently confirmed in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), a plaintiff alleging adverse employment action need show only "some injury respecting her employment terms or conditions" – a standard easily satisfied by the termination of a sixteen-year employee. *Freeman*, 778 F. Supp. 3d at 1334 (quoting *Muldrow*).

### 4. Mrs. Goldstein's Equal Protection Claim At Count II Is Race-Based, Not a Class-of-One Claim, and Not Duplicative of Count I.

Defendants argue that Count II (Equal Protection via section 1983) must be dismissed because: (a) it proceeds on an impermissible "class of one" theory foreclosed by *Engquist v. Oregon*

*Dep't of Agriculture*, 553 U.S. 591 (2008); and (b) merely duplicates Count I (section 1981 via section 1983). Both arguments fail.

a.      <u>*Engquist* does not preclude race-based Equal Protection claims.</u>

The holding in *Engquist* is expressly limited: "all we decide [is] that the class-of-one theory of equal protection has no application in the public employment context." 553 U.S. at 607 (emphasis added). A "class of one" claim involves differential treatment with "no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A "class of one" plaintiff does not allege membership in a "protected class such as race or gender…." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1200 (11th Cir. 2007). In a "class of one" claim, "the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist*, 553 U.S. at 601. The hallmark of a class-of-one claim is that the plaintiff "does not allege membership in any particular class." *Alford v. Consol. Gov't of Columbus*, 438 Fed. Appx. 837, 840 (11th Cir. 2011) (citing *Engquist*, 553 U.S. at 594-95).

The Amended Complaint does not allege a "class of one claim;" rather, it alleges race discrimination as the basis for her Equal Protection claim. [ECF No. 335 at 156: "Mrs. Goldstein is White/non-Hispanic, and she was treated differently (worse than) her Hispanic counterparts;" 159, and 165]. *Engquist* did not abrogate race-based Equal Protection claims by public employees.

Race-based Equal Protection claims are categorically distinct: to state such a claim, a plaintiff must show "the state engaged in invidious discrimination against [her] based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). *Engquist* does not bar that claim because Mrs. Goldstein alleges discrimination based on her membership in a larger class of employees: namely, White, non-Hispanics.

Count II is squarely race-based. Mrs. Goldstein is White and non-Hispanic — a cognizable racial and ethnic classification — and she alleges the Town, through Doce, singled her out, treated her differently (worse than), and terminated her employment because of her race while Hispanic colleagues received favorable treatment. [ECF No. 35 at ¶¶1, 12, 107-110.] Discrimination based on membership in an identifiable protected class, not an arbitrary singling-out for no reason, does not put Count II within *Engquist. See Alford*, 438 Fed. Appx. at 840 (distinguishing class-of-one claims from claims grounded in race or national origin). Courts consistently recognize this distinction. *See Lawson v. Curry*, 244 F. App'x 986, 988 (11th Cir. 2007) ("'It is beyond doubt' that there is a federal

13

equal protection right to be free from racial discrimination, that this right is clearly established, and that it extends into the employment context.'") (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991); *Balaban v. Prummell*, 2026 U.S. Dist. LEXIS 298, at *14 (M.D. Fla. Jan. 5, 2026) (excepting gender Equal Protection claim in public employment from "class of one" claims precluded by *Engquist*); and *Gregory v. Louisville/Jefferson Cty. Metro Gov't*, 2021 U.S. Dist. LEXIS 247340, at *9 (W.D. Ky. Dec. 29, 2021) ("*Gregory*'s equal protection claim rests on the assertion that he was subjected to different treatment due to his membership in a particular class (i.e., race), not [class of one]. As a result, *Engquist*'s holding... is not applicable here."). Defendants' invocation of *Engquist* is a red herring.

b. <u>Counts I and II are distinct claims that can proceed simultaneously.</u>

Defendants' duplicativeness argument fares no better. Section 1981 (via section 1983, Count I) and the Equal Protection Clause (via section 1983, Count II) are analytically distinct claims that protect different interests. Both may be pleaded simultaneously at the Rule 12(b)(6) stage, and courts in this Circuit routinely allow parallel claims to proceed. See *McCarthy v. City of Cordele*, 111 F.4th 1141 (11th Cir. 2024) (reversing dismissal of both section 1981 and Equal Protection race discrimination claims brought through section 1983 against a municipal employer); *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (addressing section 1981 and Equal Protection claims under the same analytical framework without treating them as duplicative). Factual overlap is not a basis for Rule 12(b)(6) dismissal — any overlap goes to potential remedies at the end of the case, not to whether both claims may proceed. Defendants cite no authority dismissing a properly pleaded Equal Protection race discrimination claim as duplicative of a section 1981 claim at the Rule 12(b)(6) stage, because no such authority exists.

**B. <u>No "Meaningful" Mechanism Existed To Review The Decisions Affecting Mrs. Goldstein And Her Employment With The Town.</u>**

Mrs. Goldstein acknowledges that final policymaking authority "does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997). Defendants do not contend that all the discriminatory or retaliatory actions taken against Mrs. Goldstein were subject to administrative review. They merely contend that the decision to terminate her employment was subject to administrative review

14

by the PAB.[3] Therefore, none of the other discriminatory or retaliatory actions identified in the Amended Complaint were (or could have been) subject to administrative review.

The Amended Complaint sets forth facts establishing that the review process was anything but "meaningful." [ECF No. 35]; *compare Willingham v. City of Valparaiso Fla.*, 638 F. App'x 903, 908 (11th Cir. 2016) (distinguishing between review procedures "theoretically available on paper" and the lack of opportunity for "meaningful" review). "To succeed in such an argument, the plaintiff needs to show that the reviewing body has defective procedures, merely 'rubber stamps' the official's decision, or ratifies the official's decision and improper motive." *Lopez v. Gibson*, 770 F. App'x 982, 992 (11th Cir. 2019) (citing *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1326 (11th Cir. 2003); *Scala*, 116 F.3d at 1402).

The Amended Complaint details how the PAB's review of the decision to terminate Mrs. Goldstein's employment for cause was a charade of a proceeding so lacking any modicum of due process that it could not be considered a "meaningful" review as a matter of law. *Lopez*, 770 F. App'x 992. The Town permitted Blumstein, one of the key actors involved in the "Other Investigation," the Ramos Report, and the decisions to place Mrs. Goldstein on "house arrest" and then terminate her employment, to be the Town "prosecutor" in the proceedings despite his role(s) as a witness and active participant in the preceding events. [ECF No. 35 at ¶¶ 85-86]; *but see* Rule 4-3.7, Rules Regulating The Florida Bar. On February 28, 2025, the PAB expressly found no cause for termination of Mrs. Goldstein's employment. Ten days later, without any new evidence, it upheld the termination. [ECF No. 35 at ¶¶223, 225, 269, 275].

Upon review of the PAB decision(s), the Miami-Dade Circuit Court found the PAB to have acted as a "rubber stamp" for the decision to terminate Mrs. Goldstein for cause:

> The Board, however, proceeded to render a decision unsupported by competent and substantial evidence when, without any new evidence, it chose to uphold Petitioner's termination *after* finding there was no cause for termination.

(Exhibit "A" – decision and mandate).[4] The findings in the Mandate, set forth in ¶¶189, 225, 269, and 275 of the Amended Complaint and at Exhibit "A" hereto, foreclose any argument that the

---

[3]     Defendants did not argue, because they could not argue, that any other decisions or actions affecting Mrs. Goldstein were subject to administrative review, given that Art. II, Sec. 31.1 of the Town's Code of Ordinances limits an employee to seek review only where "[s]he claims to have been discharged or reduced in pay or rank without cause…."

[4]     The Court can "take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may

PAB provided a "meaningful" review. *See e.g.*, *Gilroy v. City of Ft. Pierce*, 2019 U.S. Dist. LEXIS 51865, at *11 (S.D. Fla. Mar. 26, 2019) (denying motion to dismiss in finding allegations that reviewing body acted as "rubber stamp" and sufficient allegations regarding de facto decisionmaker); (citing *Poole v. City of Plantation*, 2010 U.S. Dist. LEXIS 44119, at *80 (S.D. Fla. May 5, 2010) (collecting cases).

## C.   The Amended Complaint Adequately Pleads Retaliation (Count III).

The elements necessary to allege a prima facie case of retaliation are that "(1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Tucker v. Talladega City Sch.*, 171 F. App'x 289, 296 (11th Cir. 2006). The Amended Complaint satisfies this standard, as Mrs. Goldstein alleges that she engaged in protected activity by complaining to HR Director Slate-McCloud and to Acting Town Manager Vargas that Doce was discriminating against her, and that she suffered adverse employment actions shortly thereafter. [ECF No. 35 at ¶¶104-106, 185.]

### 1.   Mrs. Goldstein Engaged in Protected Activity.

The Amended Complaint alleges that Mrs. Goldstein complained directly to HR Director Slate-McCloud and to Acting Town Manager Vargas that Doce was treating her differently from Hispanic employees because of her race. [ECF No. 35 at ¶¶104–106.] The United States Supreme Court found that the term "'Discriminate against' means treat worse… But neither that phrase nor any other says anything about how much worse." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355, 144 S. Ct. 967, 974 (2024). When considered against the applicable pleading standard, the Amended Complaint sufficiently alleges that Mrs. Goldstein complained about race discrimination. *Dorest v. Clear Choice Mgmt. Servs., LLC*, 2026 U.S. Dist. LEXIS 121420, at *6 (S.D. Fla. June 2, 2026). This constitutes protected activity as a matter of law. "[S]tatutorily protected expression includes internal complaints of sexual harassment to superiors" and other forms of workplace discrimination. *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001) (quoted in *Alburquerque v. de Moya Grp., Inc.*, 2024 U.S. App. LEXIS 16518, at *5 (11th Cir. July 8, 2024)).

---

consider." *Universal Express Inc., v. S.E.C.*, 177 Fed. App'x 52, 53 (11th Cir. 2006). The Mandate and other docket entries from the state court case referred to in the Amended Complaint are public records.

16

The Eleventh Circuit has long recognized that "[t]he opposition clause of Title VII protects those who informally voice complaints to their supervisors." *Rollins v. State of Florida Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). "Statutorily protected activity is either the employee opposing an unlawful employment practice or the employee making a charge, testifying, or assisting, or participating in an investigation, proceeding, or hearing connected to an EEOC charge." *Bledsoe v. Palm Beach Cty. Bd. of Cty. Comm'rs*, 2019 U.S. Dist. LEXIS 214692, at *16 (S.D. Fla. Dec. 9, 2019). Even employees "informally complain[] of discrimination to a supervisor" are entitled to be protected from retaliation. *Muhammad v. Audio Visual Servs. Grp.*, 380 F. App'x 864, 872 (11th Cir. 2010).

Defendants argue that Goldstein's complaints were insufficiently specific to constitute protected activity. That argument contradicts both the substance of the Amended Complaint and controlling law. The law on this topic does not require any heightened specificity in a complaint lodged with an employer or an initial pleading (complaint) filed in court. No talismanic phrase is required. When "complaining to an employer about a supervisor's [race-based] harassment," the employee has engaged in protected activity. *Alburquerque*, 2024 U.S. App. LEXIS 16518, at *5.

Mrs. Goldstein alleges in the Amended Complaint that she told two Town officials that Doce was treating her differently from Hispanic employees because of her race, including by yelling, isolating her, and conducting work discussions in Spanish (a language she did not speak). [ECF No. 35 at ¶¶104-106.] A plaintiff need only have a "good faith, reasonable belief" that the employer is engaged in unlawful employment practices — and that belief need not be expressed using any specific legal terminology. *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Mrs. Goldstein's complaints plausibly reflect a good-faith, reasonable belief that unlawful race-based discrimination was occurring, entitling her to protection from retaliation. [ECF No. 35 at ¶¶104-107]; s*ee also Alburquerque v. de Moya Grp., Inc.*, 2024 U.S. App. LEXIS 16518, at *5 (11th Cir. July 8, 2024) (finding that complaining to an employer about being discriminated against based on his nationality constituted protected activity).

### 2.    The Adverse Employment Actions Satisfy the Standard.

The Amended Complaint details treatment that would likely dissuade a reasonable worker from making or supporting a discrimination complaint. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Amended Complaint further alleges that shortly after Mrs. Goldstein complained about Doce engaging in racial discrimination, he (and Blumstein) initiated the "Other

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

Investigation" to serve as a basis to initiate the Internal Affairs Investigation of Mrs. Goldstein, which was conducted by Ramos and resulted in the Ramos Report, as a means to concoct a basis to terminate Mrs. Goldstein for cause. [ECF No. 35 at ¶¶104-131, 154-168, and 185-202]. *Compare Alvarez v. Town of Surfside*, 2026 U.S. Dist. LEXIS 140143, at \*15 (S.D. Fla. June 24, 2026) (actions undertaken by the same Defendant were sufficient to establish an adverse employment action where "Plaintiff has alleged that Defendant's investigation was undertaken for an improper purpose (namely, to terminate Plaintiff's employment), that it lacked a reasonable basis, that it proceeded in a biased manner, that Defendant failed to investigate more egregious conduct, and that the investigation did in fact result in Plaintiff's termination."). The Amended Complaint alleges that by imposing house arrest conditions — mandatory home confinement Monday through Friday from 0900 to 1700, loss of holiday pay, and mandatory use of accrued leave for any absence [ECF No. 35 at ¶ 58] — Mrs. Goldstein was subjected to more than the "simple paid suspension" that courts have declined to treat as adverse. *Compare Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920 (11th Cir. 1993) (30-day paid suspension was a retaliatory adverse employment action).

Ordinarily, "a simple paid suspension is not an adverse employment action." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021). But, the Eleventh Circuit has acknowledged that a paid suspension "may constitute an adverse employment action in the retaliation context" because "[t]he standard to show an adverse employment decision in a retaliation case is more relaxed." *Davis v. Legal Services Alabama, Inc.*, 19 F.4th 1261 (11th Cir. 2021). The key inquiry requires consideration of all of the facts alleged to determine "whether the challenged conduct would, objectively, chill or deter" the conduct at issue – here, reporting race discrimination. *Bell v. Sheriff of Broward Cty.*, 6 F.4th 1374, 1379 (11th Cir. 2021). "In any event, atypical circumstances can 'escalate[]' a 'paid suspension to an adverse employment action.'" *Nesbitt v. Mia.-Dade Cty.*, 2024 U.S. Dist. LEXIS 920, at \*10 (S.D. Fla. Jan. 3, 2024) (quoting *Davis v. Legal Servs. Ala, Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021), 19 F.4th at 1267); and citing *Diaz v. Miami Dade Cnty.*, 2010 U.S. Dist. LEXIS 110050, 2010 WL 3927751, at \*2, \*8 (S.D. Fla. Aug. 17, 2010)). The Eleventh Circuit has found that even a 30-day paid suspension constituted a retaliatory adverse action under the right circumstances. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920 (11th Cir. 1993).

Mrs. Goldstein was not merely placed on paid leave. She was placed under de facto house arrest — confined to her home Monday through Friday from 0900 to 1700, denied holiday pay, required to use accrued leave for any absence, and prohibited from communicating with

18

colleagues. [ECF No. 35 at ¶58.] She was denied her 2023–2024 performance evaluation and merit increase. [ECF No. 35 at ¶76.] She was subjected to two pretextual investigations, in one which the Chief of Police was the Complainant and was ultimately terminated after sixteen years of lauded service based on findings the PAB itself found were unsupported. [ECF No. 35 at ¶¶ 58, 76–77, 78–81.] These facts go well beyond a simple paid suspension and collectively satisfy the adverse action element. Termination of her employment after sixteen years of lauded service, based on bogus claims that were totally unfounded, plainly constitutes an adverse action. Under *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024), a plaintiff needs to show only "some injury respecting her employment terms or conditions." *Freeman*, 778 F. Supp. 3d at 1334.

**3.      The Amended Complaint Sufficiently Alleges Causation.**

Defendants' causation argument reduces to a single proposition: Jankowski signed the termination letter and had no knowledge of Mrs. Goldstein's protected activity; therefore, there is no causation. This argument fails for the same reason the cat's paw argument succeeds: the causal chain runs through Doce. The Amended Complaint alleges that adverse actions began "shortly after" Mrs. Goldstein complained to HR and the Acting Town Manager and that the progression from complaint to escalated investigations to suspension to termination reflects a coordinated retaliatory campaign. [ECF No. 35 at ¶¶105–106, 185.] Under the cat's paw theory, Jankowski's lack of awareness of the protected activity does not insulate Doce from liability for the causal chain he himself set in motion. *Pennington*, 261 F.3d at 1270; *Staub*, 562 U.S. at 420–22.

The state court's Mandate further supports the existence of pretext and improper motive, finding that the Town upheld Goldstein's termination "simply because it found the remedies available to it too unpopular, inconvenient, or inexpedient," supporting at least an inference that the termination itself was improperly motivated and the PAB acted as nothing more than a rubber stamp. [ECF No. 35 at ¶189; *see also* Exhibit "A."] Under either the *McDonnell Douglas* or convincing mosaic standard, the allegations in the Amended Complaint more than plausibly allege a causal connection between her protected activity and the retaliatory adverse actions taken to withstand dismissal. *Ismael*, 161 F.4th at 761.

**C.      <u>The Amended Complaint Adequately Alleges The Deprivation Of Mrs. Goldstein's Property Interest (Count IV).</u>**

Coral Gables, Florida │ Detroit, Michigan
FairLaw Firm

To plead a procedural due process claim based on a protected property interest, a plaintiff must allege: (1) deprivation of a constitutionally protected property interest; (2) governmental action; and (3) constitutionally inadequate process.

### 1. Mrs. Goldstein Had a Protected Property Interest in Her Continued Employment with the Town.

Chapter 6, Section B.2 of the Town's Employee Handbook provides that employees who have completed two or more years of full-time employment may only be terminated for "cause." [ECF No. 35 at ¶203.] Mrs. Goldstein's more than 16 years of employment restricted the Town's ability to terminate her employment only for cause. [ECF No. 35 at ¶¶23-24.] "Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way 'limits the power of the appointing body to dismiss an employee.'" *Ross v. Clayton Cty.*, 173 F.3d 1305, 1307 (11th Cir. 1999) (quoting *Barnett v. Housing Auth. of City of Atlanta*, 707 F.2d 1571, 1577 (11th Cir.1983)). The right to continued employment absent cause is the paradigmatic protected property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–40 (1985). Defendants do not contest that Mrs. Goldstein had a protected property interest; they focus entirely on the adequacy of the process provided. That concession is significant.

### 2. The Process Provided Was Constitutionally Inadequate.[5]

Defendants argue that because Mrs. Goldstein's attendance at two PAB hearings and success in obtaining certiorari relief establishes that state remedies existed, defeating her § 1983 due process claim at Count IV under *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), and *Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000). Both authorities cut against Defendants on the facts alleged herein.

A § 1983 due process claim arises "when the state refuses to provide a process sufficient to remedy the procedural deprivation." *Cotton*, 216 F.3d at 1330-31. *Cotton* itself confirms that when the state process is constitutionally inadequate, the § 1983 claim survives. *Id*. The existence of certiorari review as a theoretical vehicle does not establish that the process actually provided was constitutionally adequate. As the Eleventh Circuit has recognized, "the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked." *Horton v. Bd.*

---

[5] Mrs. Goldstein also addressed the lack of a meaningful review process in Section B, above, which is incorporated herein by reference to avoid unnecessary duplication or repetition.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

*of Cty. Comm'rs of Flagler Cty.*, 202 F.3d 1297, 1300 (11th Cir. 2000). The critical question is not whether some hearing occurred, but whether the process provided was constitutionally meaningful. *See Hollant*, 2018 U.S. Dist. LEXIS 118894, at \*4 (recognizing that "the sufficiency of such a hearing is a factual determination that should not be made at the dismissal stage") (citing *Wilson v. Farley*, 203 F. App'x 239, 249 (11th Cir. 2006); *Lapham v. Fla. Dept. of Corr.*, 2009 U.S. Dist. LEXIS 3798, 2009 WL 151161, at \*3 (S.D. Fla. Jan. 21, 2009); amd *Dressler v. Jenne*, 87 F. Supp. 2d 1308, 1313 (S.D. Fla. 2000). Where the state court's own judgment found that the process was not merely inadequate but "illusory," *McKinney* and *Cotton* do not foreclose the § 1983 claim — they confirm its viability.

Here, the Miami-Dade Circuit Court's Mandate found that "the Board's actions rendered Petitioner's opportunity to be heard 'illusory,' and, as a result, deprived Petitioner of the due process of law." [ECF No. 35 at ¶189.] Since the Mandate was issued on December 29, 2025, the Town has taken no action regarding Mrs. Goldstein's employment: it has not reinstated her or restored her good name. [ECF No. 35 at ¶271.] The Mandate recognized that the Town has no policy or mechanism to restore an employee's good name or reinstate her following reversal of a "for cause" termination. [ECF No. 35 at ¶¶228-230.] A remedy that the state itself has not implemented and that the Town lacks any mechanism to provide is not an "adequate" remedy but an "illusory" one, for which a § 1983 claim remains viable. The sufficiency of the process provided is a factual determination that should not be made at the dismissal stage. *Hollant v. City of North Miami*, 2018 U.S. Dist. LEXIS 118894, at \*10 (S.D. Fla. July 17, 2018) (denying motion to dismiss on § 1983 due process claim; finding "the sufficiency of such a hearing is a factual determination that should not be made at the dismissal stage").

### 3.  Blumstein's Multiple Roles and Influence Infected the Process.

The Amended Complaint alleges that Blumstein simultaneously served as the architect of the charging instrument, advisor on the scope of the IA investigation, an attendee at the sworn interrogation, legal counsel to the terminating authority, and – in his later role as Town Manager – the *de facto* prosecutor at the PAB hearing. [ECF No. 35 at ¶¶85-86, 210, 224.] By occupying all of those roles without any separation of functions or appointment of conflict counsel, Blumstein deprived Mrs. Goldstein of the ability to have a fair or meaningful hearing before an unbiased decisionmaker. [ECF No. 35 at ¶210.]

21

The Due Process Clause requires that an adjudicator have "no actual bias against the defendant or interest in the outcome of his particular case." *Withrow v. Larkin*, 421 U.S. 35, 58 (1975). Where a government official has "significant, personal involvement" as an investigator or prosecutor in a case and then participates in the adjudication of that same case, due process is violated as a structural matter. *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (prior significant personal involvement as a prosecutor in a critical decision regarding the case "creates an unconstitutional potential for bias"; structural error not subject to harmless-error review). The Supreme Court confirmed in *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) that an official "should not have participated in making the determination under review." An official who both initiates and prosecutes the charges against an employee, as Blumstein did here, cannot satisfy the constitutional requirement of a fair and unbiased hearing.

The constitutional right to process before an unbiased decisionmaker is not derived from the Town's policies; it derives from the Fourteenth Amendment itself. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-43 (1985). The state court's finding that the PAB process was "illusory" and violative of due process confirms that this is a viable federal constitutional claim, not a state procedural irregularity. As for the meaningless nature of the Town's review process, its Response to Mrs. Goldstein's request for the state court to enforce its Mandate forecloses any legitimate argument that further review would be "meaningful" or provide any "meanginful" relief given that over six months have already passed. (Exhibit "B").

**D.** **The Amended Complaint Adequately Pleads Deprivation of a Liberty Interest Without Due Process (Count V).**

A plaintiff establishes a liberty interest claim by alleging: (1) a false statement; (2) of a stigmatizing nature; (3) attending a governmental employee's discharge; (4) made public; (5) by the governmental employer; (6) without a meaningful opportunity for a name-clearing hearing. *Buxton v. City of Plant City*, 871 F.2d 1037, 1043-44 (11th Cir. 1989); *Cotton*, 216 F.3d at 1330. The Amended Complaint satisfies each element.

**1.** **The False Statements Are Stigmatizing.**

The Amended Complaint provides sufficient detail for the Court to find that the false statements the Defendants disseminated about Mrs. Goldstein were stigmatizing. The Ramos Report, the suspension letter, the termination letter, the PAB proceedings, and Resolution No. 2025-3386 each contain findings that Mrs. Goldstein committed "fraud," divulged sensitive

information, and engaged in payroll misconduct. [ECF No. 35 at ¶¶58, 78, 81, 260–263.] In *Andreu v. Sapp*, 919 F.2d 637, 644 (11th Cir. 1990), the Eleventh Circuit Court of Appeals found that statements that "impugn[e] petitioners honesty and integrity" and that involve allegations of criminal conduct are stigmatizing as a matter of law. *Quoting Owen v. City of Independence, Mo.*, 445 U.S. 622, 633 n. 13, 100 S. Ct. 1398, 1406-07 n. 13, 63 L. Ed. 2d 673 (1980); and citing *Board of Regents v. Roth*, 408 U.S. 564, (1972); and *Paul v. Davis*, 424 U.S. 693 (1976).

### 2. The Stigmatizing Statements Were Made Public.

The Ramos Report, the suspension letter, the termination letter, the PAB proceedings, and Resolution No. 2025-3386 were placed in Mrs. Goldstein's personnel file and in official Town records. [ECF No. 35 at ¶¶58, 78, 81, 260-263.] Each of these documents constitutes a public record under Florida's Public Records Act, Fla. Stat. § 119.01. Placement of stigmatizing information in a public employee's personnel file or public administrative record "constitutes sufficient publication to implicate the liberty interest under the due process clause." *Buxton*, 871 F.2d at 1044. "Because the information in the file may be reviewed years after it is filed, its publication, for due process purposes, must be held to occur at the time of filing." *Id.*

Additionally, Blumstein made false, stigmatizing statements about Goldstein at a public Town Commission meeting on October 22, 2025, stating she had "continue[d] to overpay" the Town's police officers and "provide favorable treatment at her discretion," and fabricating a narrative connecting her to internal FOP politics. [ECF No. 35 at ¶289.] That publication – in a public meeting, before the Town's elected officials – satisfies the publication element independently of the personnel file.

### 3. No Meaningful Name-Clearing Hearing Was Provided.

Defendants argue that Goldstein's PAB hearings constituted a meaningful opportunity to clear her name. The state court's Mandate forecloses Defendants' argument by finding the PAB process "illusory" and concluding that the Town "deprived Petitioner of the due process of law." [ECF No. 35 at ¶189; Exhibit "A".] A process that the state's own courts have found illusory cannot satisfy the constitutional requirement of a "meaningful" name-clearing hearing.

Moreover, the PAB hearings were not designed to address the false, stigmatizing charges attached to Goldstein's name; they were designed to evaluate whether she was properly terminated. The Town has no mechanism in Section 2-152 of the Town Code to restore an employee's good name following reversal of a "for cause" termination. [ECF No. 35 at ¶¶272-273, 278.] The

23

Amended Complaint also alleges that Goldstein was never afforded an opportunity to address the stigmatizing information from the "Other Investigation," the IA investigation, the house-arrest letter, the termination letter, or Resolution No. 2025-3386 in any forum specifically designed to clear her name. [ECF No. 35 at ¶279.] The constitutional purpose of a name-clearing hearing is not to re-evaluate the termination decision; it is to allow the employee to clear her name. *Campbell v. Pierce Cty., Ga.*, 741 F.2d 1342, 1345 (11th Cir. 1984). A hearing focused on whether there was cause to terminate employment — rather than on the truth or falsity of the stigmatizing charges — does not satisfy the name-clearing requirement. The *Buxton* framework requires a meaningful opportunity for the employee "to refute the charge." *Codd v. Velger*, 429 U.S. 624, 627 (1977). The constitutional purpose of a name-clearing hearing is not to re-evaluate the termination decision; it is to allow the employee to clear her name. *Campbell v. Pierce Cty., Ga.*, 741 F.2d 1342, 1345 (11th Cir. 1984). A hearing focused on whether there was cause to terminate employment — rather than on the truth or falsity of the stigmatizing charges — does not satisfy the name-clearing requirement. *Codd*, 429 U.S. at 627.

A more recent Eleventh Circuit treatment of *Buxton* confirms that a "meaningful opportunity" requires the employee to have been given the opportunity to "cross-examine witnesses or rebut their claims." *Johnston v. Borders*, 36 F.4th 1254, 1264 (11th Cir. 2022). The PAB proceedings — run by the same official who helped draft the charges, and resulting in an about-face without new evidence — could not have provided such an opportunity. [ECF No. 35 at ¶¶85–92.] Whether the process was constitutionally adequate is a factual determination not suited to resolution at the dismissal stage. *Hollant*, 2018 U.S. Dist. LEXIS 118894 at *5.

The Amended Complaint also alleges that Mrs. Goldstein was never afforded any opportunity to address the stigmatizing information placed in the public record through the "Other Investigation," the internal affairs investigation report, the house-arrest letter, the termination letter, or Resolution No. 2025-3386 in any forum specifically designed to clear her name. [ECF No. 35 at ¶¶272–279.] The Town has no mechanism in Section 2-152 of its Code (or elsewhere) to restore an employee's good name following reversal of a for-cause termination. A remedy the state has not implemented and lacks the mechanism to provide is not an adequate remedy; it is illusory.

**E.**     **Neither Doce Nor Blumstein Is Entitled to Qualified Immunity.**

24

Defendants argue that both Doce and Blumstein are entitled to qualified immunity on all federal counts. Qualified immunity shields government officials from civil suit only when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). The defense is defeated where, as here, the rights at issue have been clearly established for decades.

### 1. The Right to Be Free from Racial Discrimination in Public Employment Was Clearly Established.

The threshold question in the qualified immunity analysis is whether the plaintiff has alleged a violation of a clearly established constitutional right. "It is clearly established that the equal protection clause affords [a plaintiff] a right to be free from racial discrimination" in employment. *Busby*, 931 F.2d at 775. The Eleventh Circuit has reaffirmed this principle repeatedly. *Garcia v. Riley*, 2021 U.S. App. LEXIS 27239, at \*8–9 (11th Cir. Sept. 10, 2021) ("it is 'beyond doubt' that the 'right to be free from intentional racial discrimination' is clearly established"); *Potter v. Williford*, 712 Fed. Appx. 953, 955 (11th Cir. 2017) (affirming denial of qualified immunity in §§ 1983 and 1981 race discrimination case; employee's "constitutional right to be free from race discrimination in public employment" was clearly established). A government official who initiates, directs, and shapes a pretextual investigation for the purpose of removing a White employee cannot claim he lacked fair warning that such conduct violated the Equal Protection Clause and § 1981. A government official who initiates, directs, and shapes a pretextual investigation for the purpose of removing a White employee and replacing her with Hispanic employees cannot claim that he did not have "fair warning" that such conduct violated the Equal Protection Clause. *Busby*, 931 F.2d at 775.

The constitutional right to be free from race discrimination in public employment was clearly established "long before" any of the events at issue in this case. *Wiley v. Bd. of Ethics of DeKalb Cty.*, 2025 U.S. Dist. LEXIS 169673, at \*69 (N.D. Ga. Aug. 6, 2025) (collecting cases). Consequently, qualified immunity does not shield Doce from liability.

### 2. Doce Is Not Entitled to Immunity.

Mrs. Goldstein relies on the factual and legal arguments in Section A.3.a. and b. to establish Doce's role as an "official decisionmaker," rendering Defendants' reliance on *Quinn v. Monroe County*, 330 F.3d 1320 (11th Cir. 2003), and *Kamensky v. Dean*, 148 F. App'x 878 (11th Cir. 2005),

for the proposition that only an "official decisionmaker" can be held individually liable under § 1983, as misplaced. Even if he were not an "official decisionmaker," neither case is on point.

*Quinn* and *Kamensky* addressed supervisors whose only actionable conduct was making a recommendation that a separate official then approved — nothing more. Here, Doce did not merely recommend termination. The Amended Complaint alleges that Doce personally initiated two investigations, served as the Complainant in the IA investigation, selected and directed the outside investigator, reviewed and shaped the Ramos Report, placed Mrs. Goldstein under house arrest, hired three Hispanic replacements before her termination, and delivered the termination letter. [ECF No. 35 at ¶¶25–79.] This is participatory unconstitutional conduct — not mere recommendation.

Individual liability under § 1983 attaches when an official "personally participates" in unconstitutional conduct, "directs" subordinates to act unconstitutionally, or knows they will and fails to stop them. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). An official who drafts the charging framework, supervises and shapes the investigation, and appears as the moving party in the adjudicatory proceeding has "personally participated" in the constitutional violation well beyond any recommender role. See *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004) (individual liability established where official initiated, facilitated, and approved unconstitutional conduct even though she did not administer the punishment). *Kamensky* is not only unpublished and non-binding, but also factually distinguishable on precisely this ground.

At the pleading stage, *Quinn* and *Kamensky* present, at most, a fact question about the scope of Doce's authority and role that cannot be resolved in Defendants' favor. Qualified immunity at the 12(b)(6) stage requires that the complaint, accepted as true, fail to plausibly allege a constitutional violation of a clearly established right. Given the Amended Complaint's detailed allegations — accepted as true — that standard is not met.

### 3.      Blumstein Is Not Entitled to Qualified Immunity.

The right to pre-deprivation process before an unbiased decisionmaker in connection with Mrs. Goldstein's property interest in continued employment was clearly established well before Blumstein's conduct. *Loudermill*, 470 U.S. at 542-43 (establishing the right to notice and an opportunity to be heard before a neutral decisionmaker). The right to a name-clearing hearing when stigmatizing information is placed in the public record in connection with a government employee's discharge was clearly established by *Buxton* in 1989. 871 F.2d at 1044. The right to an

26

adjudicator without significant, personal prior involvement in the charges was established in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and *Williams v. Pennsylvania*, 579 U.S. 1 (2016). No reasonable official could have believed that occupying every role in a disciplinary proceeding — charging-instrument drafter, investigation architect, interrogation attendee, legal counsel to the terminating authority, and de facto PAB prosecutor — was constitutionally permissible under clearly established law.

Defendants argue that because Blumstein was not the "official decisionmaker," it is not clearly established that he can be held individually liable. But Blumstein's liability does not rest on a decision he made — it rests on his active participation in a process that systematically deprived Mrs. Goldstein of constitutionally required process at every stage. Under *Cottone* and *Holloman*, an official who personally participates in constitutional violations — rather than merely recommending a final decision — is individually liable. Whether those prior decisions are being challenged at the pleading stage is a fact-intensive inquiry precluding dismissal. *Hollant*, 2018 U.S. Dist. LEXIS 118894, at \*5-6 (denying qualified immunity at the motion to dismiss stage on due process claims arising from an employment termination). By alleging that Blumstein's multiple simultaneous roles – charging-instrument drafter, investigation architect, interrogation attendee, and *de facto* prosecutor – when taken together, go beyond any legitimate exercise of discretion and instead constitute a systemic deprivation of the unbiased process Goldstein was entitled to receive. *But see* Rule 4-3.7, Rules Regulating The Florida Bar.

**F.      The Defamation Claim Against Blumstein Survives (Count VI).**

Defendants argue that Blumstein's statements at the Town Commission meeting on October 22, 2025, are absolutely privileged as made within the scope of his official duties as Town Manager. [ECF No. 39 at __]. Florida's absolute immunity doctrine protects statements made by public officials "in connection with the performance of the duties and responsibilities of their office." *McNayr v. Kelly*, 184 So. 2d 428, 433 (Fla. 1966). The critical limiting principle is whether the communication was "within the scope of the officer's duties" — an official who acts "out of personal motives not connected with the public good should not escape liability." *Id*. at 433, 430. "In order to invoke the absolute immunity doctrine, an official must be acting within the scope of his powers." *Albritton v. Gandy*, 531 So. 2d 381, 386 (Fla. 1st DCA 1988). "Where an official makes statements that fall outside the authority of his office, the immunity does not attach." *Id*. In *Albritton*, the Florida First DCA held that a county commissioner who made statements resulting in an

27

employee's discharge was not protected by absolute immunity because he had no authority over hiring or firing and "there was no official purpose for his statements." *Id.*

The Amended Complaint alleges that Blumstein appeared at the October 22, 2025 Commission meeting from a lectern — not from the dais — and made statements about Mrs. Goldstein's termination specifically to justify his own continued employment in the face of the FOP's unanimous Vote of No Confidence against him. [ECF No. 35 at ¶¶284–291.] The Amended Complaint alleges that Blumstein fabricated a false narrative about Mrs. Goldstein to deflect scrutiny from his own performance failings and blunders. *Id.*, at ¶291. The Amended Complaint specifically alleges that these statements were made in his personal capacity and not in discharge of any official duty. *Id.*, at ¶¶241-242. Under *Albritton*, statements made for purely personal, self-interested reasons — without "official purpose" — fall outside the scope of absolute immunity.

Whether those statements were made in discharge of official duties or in a personal capacity to protect his employment is a factual question that cannot be resolved on a motion to dismiss. *Cameron v. Jastremski*, 246 So. 3d 385 (Fla. 4th DCA 2018) (reversing dismissal on absolute immunity grounds; "entitlement to claim absolute immunity did not appear on the face of the complaint"; "the issue was one of proof, which may be raised at a limited evidentiary hearing or on summary judgment"). Absolute immunity is an affirmative defense that requires the official to establish that the statements were made "within the scope of his powers." *McNayr*, 184 So. 2d at 433. Where — as the Amended Complaint alleges — the statements were made in a personal defensive capacity to save one's job, that showing cannot be made on the face of the complaint alone. *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970) (absolute privilege extends to statements made "in connection with official duties" — not to personal self-interested statements made by someone who happens to hold office).

Defendants' invocation of the Town Charter's requirement that the Town Manager "keep the commission advised" does not end the inquiry. The Charter did not require Blumstein to attend the October 22, 2025, meeting to defend himself against the union "Vote of No Confidence" by publicly defaming a former employee. The question of whether those statements were made in execution of an official duty — or in a personal, self-interested capacity — is precisely the factual determination that *Cameron* and *Albritton* confirm cannot be resolved on a motion to dismiss.

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

**G.**     **The Amended Complaint Sufficiently Alleges Punitive Damages.**

Defendants request (in footnotes) that the Court strike punitive damages claims against Doce and Blumstein as conclusory. [ECF No. 39 at 36-37, fn. 6, 7.] Their requests fail because the Amended Complaint's punitive damages allegations are tied directly to specific factual allegations of malicious and reckless conduct, despite knowledge of the falsity of the accusations and statements regarding Mrs. Goldtewein and despite the law precluding the actions they took, intending to damage and that actually resulted in her suffering significant damages. [ECF No. 35, *passim*.] The punitive damage recovery is not based on conclusory recitations but particularized factual allegations that raise at least a plausible inference of the deliberate and reckless disregard required for punitive damages, properly sought and included in the Amended Complaint.

> The Eleventh Circuit has explained that there is no heightened pleading standard for a claim of punitive [*12] damages, so the pleading standard of Federal Rule of Civil Procedure 8(a)(3) applies. *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999), *opinion vacated in part on other grounds on reh'g*, 204 F.3d 1069 (11th Cir. 2000). Cunningham's allegations—that Moxley's intentional actions to silence him and treat him differently due to his race were "taken with malice or with reckless disregard and/or reckless indifference"—are sufficient to satisfy the pleading requirement for punitive damage under Rule 8(a)(3). Accordingly, the Court denies Defendants' requests to strike Cunningham's claims for punitive damages against Moxley.

*Cunningham v. Sch. Bd. of Lake Cty.*, 2016 U.S. Dist. LEXIS 127700, at *11-12 (M.D. Fla. Sep. 20, 2016). The Amended Complaint makes similar allegations against Doce and Blumstein, precluding dismissal of the punitive damage claims against them. [ECF No. 35.] Mrs. Goldstein alleged facts satisfying the standard for imposition of punitive damages against Blumstein for defamation under the pleading standard applicable to claims under Florida as well. *See Perlmutter v. Fed. Ins. Co.*, 51 Fla. L. Weekly S163 (Fla. June 11, 2026).

**H.**     **The Court Cannot Permit New Arguments in Reply.**

Should Defendants raise arguments in their reply, including arguments addressing concessions they implicitly made by failing to contest certain claims, Mrs. Goldstein requests that the Court decline to consider those new arguments since she will have no opportunity to respond to arguments not presented in the motion. Therefore, permitting such arguments would be fundamentally unfair, and the Court's review should be limited to the arguments actually presented in the MTD [ECF No. 39].

Coral Gables, Florida | Detroit, Michigan

FairLaw Firm

**I.**     <u>**Any Dismissal Should Be Without Prejudice.**</u>

Goldstein submits that she has sufficiently alleged all claims against all Defendants. The Court has not yet addressed the viability of the Amended Complaint, which is the subject of the pending MTD [ECF No. 39]. If the Court finds that any count fails to allege sufficient facts, Goldstein respectfully requests leave to amend. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Defendants have not demonstrated any prejudice that would justify a dismissal with prejudice of any count. The only extraordinary request — a dismissal with prejudice of Count VI — is unwarranted given that the personal-capacity/scope-of-duties question is inherently factual and not resolved against Mrs. Goldstein on the face of the Amended Complaint.

## V. CONCLUSION

For the foregoing reasons, Mrs. Goldstein requests that the Court deny Defendants' Joint Motion to Dismiss the Amended Complaint. If the Court determines that any count is insufficiently pled, Mrs. Goldstein requests that any dismissal be without prejudice and that she be granted leave to amend to address any perceived deficiencies in a further amended pleading.

Respectfully submitted this <u>1st</u> day of July 2026,

> s/ Brian H. Pollock
> Brian H. Pollock, Esq. (174742)
> brian@fairlawattorney.com
> FAIRLAW FIRM
> 135 San Lorenzo Avenue
> Suite 770
> Coral Gables, Florida 33146
> Tel: (305) 230-4884
> *Counsel for Plaintiff*

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm