UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:26-CV-20965

DINA GOLDSTEIN

       Plaintiff,

v.

TOWN OF SURFSIDE, FLORIDA,
ENRIQUE DOCE, and,
MARK BLUMSTEIN

       Defendants.

_____/

## DEFENDANTS, TOWN OF SURFSIDE, ENRIQUE DOCE, AND MARK BLUMSTEIN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

The Defendants, TOWN OF SURFSIDE ("Town"), ENRIQUE DOCE ("Doce"), and MARK BLUMSTEIN's ("Blumstein") by and through their undersigned attorneys and pursuant to Local Rule 7.1, submits this reply memorandum in support of its Joint Motion to Dismiss [ECF No. 39] the Amended Complaint [ECF No. 35] ("Amended Complaint") filed by the Plaintiff, DINA GOLDSTEIN ("Plaintiff"), and states as follows:

Plaintiff's Response in Opposition to Defendants' Joint Motion to Dismiss, [ECF No. 43], provides no compelling reason or legal authority for the Plaintiff's claims against the Defendants to withstand dismissal. The case law cited by Plaintiff is easily distinguished and cannot overcome (1) Blumstein and Doce's entitlement to both qualified and absolute immunity, (2) Monell Liability against the Town and (3) Plaintiff's Procedural Due Process Claims cannot meet all the elements to support such claims.

## I. The Claims Against Blumstein Cannot Withstand Dismissal.

**A.  Blumstein is entitled to qualified immunity on Plaintiff's property interest claim.**

Plaintiff argues that Blumstein's "multiple roles and influence" infected the process Plaintiff received; however, the case law cited by Plaintiff is distinguishable and does not stand for the proposition that Blumstein, who was never the official decisionmaker, can be held individually liable for his "multiple roles and influence." See [ECF No. 43 at pp. 21-22]. In fact, Plaintiff cites to a quotation in her Response that is found nowhere in the cited opinion. See [ECF No. 43 at p. 22] (stating that "no actual bias against the defendant or interest in the outcome of his particular case" is a quote from Withrow v. Larkin, 421 U.S. 35, 58 (1975)). Moreover, Plaintiff's citation to Williams v. Pennsylvania, 579 U.S. 1 (2016) is misleading.

In Williams, a **judge** had prior involvement in a case as a prosecutor. *Id*. at 8. The Court held there was "an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Id*. Here, Blumstein was never a judge in any proceedings. Plaintiff herself labels Blumstein a "*de facto* prosecutor at the PAB hearing", not a judge or adjudicator. [ECF No. 43 at p. 21].

Neither Withrow or Williams supports Plaintiff's claim that Blumstein's participation in both the investigation and the Personnel Appeals Board hearing constitute a Due Process violation. Withrow actually states the opposite. 421 U.S. at 58 ("the combination of investigative and adjudicative functions does not, without more, constitute a due process violation'"). Regardless, it is clear from the face of the Amended Complaint that **Blumstein was never an adjudicator to begin with**; rather, that power rested with the Personnel Appeals Board. See Town of Surfside Charter, Art. II, Sec. 31.1. These cases do not support liability against Blumstein.

Likewise, Plaintiff's citation to Goldberg v. Kelly, 397 U.S. 254 (1970) is unavailing. There, the Court held that "prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker[, but] [h]e should not [] have participated in

making the determination under review." Id. at 271. Blumstein made no determination that he later reviewed as an adjudicator. By the time Blumstein became Town Manager, Plaintiff had already been terminated by Jankowsky. [ECF No. 35 at ¶¶ 9; 78-79]. It was the Personnel Appeals Board that upheld Jankowsky's termination of Plaintiff, and it was the Town's Commission that voted to adopt the findings of the Board. [ECF No. 35 at ¶¶ 92; 94].

Plaintiff bears the burden of establishing qualified immunity is not appropriate by showing a violation of a constitutional right that was clearly established at the time of the alleged misconduct. Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018) She has failed to meet that burden, for she has provided no case law whatsoever for the proposition that a person like Blumstein, who never acted as the official decisionmaker, can be held individually liable under these circumstances. Rather, the case law is clear that Blumstein is entitled to qualified immunity on Count IV$_A$. See Kamensky v. Dean, 148 F. App'x 878, 880 (11th Cir. 2005) ("In the termination context, a 'decisionmaker' has the power to terminate an employee, not merely the power to recommend termination."); Broberg v. Gerrard, No. 09-CV-82279, 2010 WL 2869539, at *3-4 (S.D. Fla. July 20, 2010) (granting defendant's motion to dismiss because the defendant mayor had no decision-making authority and he could not be individually liable for the actions of the commission); Sinclair v. Town of Yankeetown, No. 1:07-CV-035-SPM, 2008 WL 660089, at *2 (N.D. Fla. Mar. 7, 2008) ("Though Mayor Clary recommended to the town council that Plaintiff be terminated, the final decision was up to the council members, not Mayor Clary. The mayor was not the final 'decision maker' and therefore, not able to be held individually liable."); Kopp v. City of Greensboro, No. 3:15-CV-17 (CAR), 2016 WL 4435085, at *7 (M.D. Ga. Aug. 18, 2016) (granting qualified immunity to defendant mayor because it is not clearly established that anyone other than the official decisionmaker could be individually liable under § 1983).

3

**B.  Blumstein is entitled to qualified immunity on Plaintiff's liberty interest claim.[1]**

Plaintiff's liberty interest claim against Blumstein is premised upon the drafting of "the discipline-policing framework" and statements made at the October 22, 2025 Commission meeting. [ECF No. 35 at ¶¶ 240; 243].

> To recover under § 1983 for a procedural due process claim for deprivation of liberty, plaintiff must show that a (1) false **statement**, (2) of a stigmatizing nature, (3) attending governmental employee's discharge, (4) was made public, (5) by governmental employer, (6) without meaningful opportunity for an employee name-clearing hearing.

Spechler v. Tobin, 591 F. Supp. 2d 1350, 1360 (S.D. Fla. 2008), aff'd, 327 F. App'x 870 (11th Cir. 2009) (internal citations omitted) (emphasis added). Drafting a "framework" cannot form the basis of the claim against Blumstein because it is not a statement, let alone a false and stigmatizing one.

The only basis that remains for Plaintiff's liberty interest claim against Blumstein is the commentary made on October 22, 2025; however, such commentary likewise cannot form the basis for Plaintiff's claim. "[A] plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause[.]" i.e., the stigma-plus test. Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001) (internal citations omitted). Plaintiff cannot meet this test because Blumstein's statements were not made incident to Plaintiff's termination that occurred nearly **a year prior**. See

---

[1] As a preliminary matter, Plaintiff asserts for the first time in her Response that stigmatizing statements were made public due to their presence in her personnel file and in Town records: namely, the Ramos Report, the suspension letter, the termination letter, the PAB proceedings, and Resolution No. 2025-3386. [ECF No. 43. at p. 23]. The only items the Amended Complaint alleges were in Plaintiff's personnel file were various awards and Resolution No. 2025-3386. [ECF No. 35 at ¶¶ 22; 263]. Plaintiff cannot amend her Amended Complaint via a response to a motion to dismiss. Guerrero v. Target Corp., 889 F. Supp. 2d 1348, 1356 n. 6 (S.D. Fla. 2012). Moreover, per the Amended Complaint, none of those items form the basis of Plaintiff's liberty interest claim against Blumstein. [ECF No. 35 at ¶¶ 240; 243].

[ECF No. 35 at ¶ 242]; Diaz v. Miami-Dade Cnty., 849 F. App'x 787, 793 (11th Cir. 2021) (arrest could not serve as basis of liberty interest claim where allegedly defamatory statements were made two months later); Von Stein v. Brescher, 904 F.2d 572, 582 (11th Cir. 1990) ("We do not think the law of this Circuit has established that defamation occurring other than in the course of dismissal from a job or in the termination or significant alteration of some other legal right or status will suffice to constitute a deprivation sufficient to state a claim under section 1983.").

Moreover, in her Response, Plaintiff fails to address Blumstein's argument that he could not provide Plaintiff with any name-clearing hearing after his October 22, 2025 comments because he was **no longer employed by the Town**. The law is clear that "[b]ecause [a name-clearing hearing] is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to [her] termination or to the publication of related information adverse to [her] interests." Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1046 (11th Cir. 1989) (internal citations omitted). Blumstein definitively could not provide Plaintiff with any name-clearing hearing after he made his comments because he was removed as the Town Manager that same day. [ECF No. 35 at ¶ 9]. Once again, Blumstein definitively was not a decisionmaker for purposes of granting or denying Plaintiff any alleged due process, i.e., a name-clearing hearing, and Plaintiff provided no case law showing that Blumstein, as a non-decisionmaker, violated a clearly established constitutional right.

Ultimately, Plaintiff concedes that Blumstein was not the official decisionmaker at any time, stating that **"Blumstein's liability does not rest on a decision he made[;]"** instead, Plaintiff argues that Blumstein's "active participation" in the events that allegedly deprived Plaintiff of due process establishes his liability. [ECF No. 43 at p. 27]. This is not the law. Plaintiff's citations to Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003) and Holloman ex rel. Holloman v. Harland, 370

F.3d 1252 (11th Cir. 2004) for the proposition that "an official who personally participates in constitutional violations — rather than merely recommending a final decision — is individually liable" are grossly insufficient. [ECF No 43 at p. 27]. These cases neither strip Blumstein of qualified immunity, nor do they establish his liability via "active participation."

In Cottone, the representative of a murdered inmate's estate brought deliberate indifference and supervisor liability claims against jail guards and supervisors. 326 F.3d at 1356-1357. Plaintiff here haphazardly draws from the law on supervisory liability that is cited in Cottone, which supports supervisory liability under § 1983 when a supervisor "personally participates" in alleged unconstitutional conduct. See id. at 1360. However, Plaintiff's claim is not premised on supervisor liability. The Amended Complaint does not even allege Blumstein was a supervisor. Plaintiff's reliance on Cottone does not support Blumstein's individual liability here.

Likewise, in Holloman, a student brought First Amendment claims against his teacher and principal where the teacher issued a verbal censure for the student's speech and reported the incident, and the principal enacted a physical punishment. 370 F.3d at 1259; 1268-69. This case is inapposite. The plaintiff there brought free speech claims, not due process claims premised on a purported liberty interest. Because Plaintiff has presented no case law that is even remotely on point to the facts and claims here, Plaintiff has failed to carry her burden under the qualified immunity framework, and Blumstein is entitled to immunity on Count $V_A$.

**C. Blumstein is entitled to absolute immunity on Plaintiff's defamation claim.**

Like Plaintiff's arguments in favor of her Due Process claims, Plaintiff's arguments in favor of her defamation claim fail to overcome Blumstein's entitlement to immunity. Plaintiff relies primarily on two cases—Albritton v. Gandy, 531 So. 2d 381 (Fla. 1st DCA 1988) and Cameron v. Jastremski, 246 So. 3d 385 (Fla. 4th DCA 2018)—both of which can be distinguished.

6

In Albritton, a county commissioner made comments in personal conversations with county administrators indicating that the plaintiff should no longer be employed. 531 So. 2d at 384. The Court held that absolute immunity did not apply to the commissioner's comments because he was "not in charge of hiring or firing, and thus, there was no official purpose for [his] statements regarding [plaintiff]'s county employment." Id. at 387.

Here, Blumstein was not commenting on Plaintiff's termination in personal conversations; rather, he made his comments before the Town Commission pursuant to his official duties as Town Manager. See Town of Surfside Charter, Art. III, Sec. 35 (Town Manager is "responsible to the commission for the proper administration of all affairs of the town"). Unlike the commissioner in Albritton, as Town Manager, Blumstein was responsible for hiring and firing. See id. (Town Manager required to "[a]ppoint and remove officers and employees of the town"). Though Blumstein was not the Town Manager who terminated Plaintiff, as the acting Town Manager, it was well-within the orbit of his responsibilities to comment on a termination by the preceding Town Manager. See Hauser v. Urchisin, 231 So. 2d 6, 8 (Fla. 1970) ("Any public servant should expect that those having authority to discharge him will explain their reasons for such dismissal.")

Despite Plaintiff's reliance on Cameron, that case is also distinguishable. There, a college professor attempted to invoke the absolute immunity doctrine when she passed along "gossipy repetition of a professor's critical comments of her department and the dean" to her supervisor. Cameron, 246 So. 3d at 389-90. The Court noted that "[t]he primary function of a college professor is teaching students" and held that the issue of immunity could not be resolved at the motion-to-dismiss stage. Id. at 390.

Blumstein was not passing along "gossipy" information; he was speaking to the Town Commission, to which he was responsible to, on a variety of matters, one of which included

Plaintiff's termination. Blumstein's responsibilities as Town Manager are delineated in the Town Charter, and Plaintiff does not dispute that the Town Charter can be considered by this Court. See Mikov v. Vill. of Palm Springs, No. 23-81565-CIV, 2025 WL 1312506, at *5 n. 5 (S.D. Fla. Mar. 15, 2025) (finding that the Court could take judicial notice of the municipal code as it was a public record not subject to reasonable dispute and whose accuracy could not be questioned). It is clear on the face of the Amended Complaint that absolute immunity protects Blumstein's statements because they were made "in connection with the performance of the duties and responsibilities of [his] office[.]" McNayr v. Kelly, 184 So. 2d 428, 433 (Fla. 1966). Blumstein is absolutely immune for what Plaintiff characterizes as "publicly brand[ing] a former employee a fraudster." See [ECF No. 43 at p. 2]; Crowder v. Barbati, 987 So. 2d 166, 168 (Fla. 4th DCA 2008) (sheriff entitled to absolute immunity for press release labeling father as "deadbeat parent"). Dismissal on absolute immunity grounds is required at this juncture. Garate v. Town of Sw. Ranches, No. 24-CV-62089, 2025 WL 2933895, at *17 (S.D. Fla. July 28, 2025), report and recommendation adopted sub nom. Garate v. Town of Sw. Ranches, Fla., No. 24-62089, 2025 WL 2751040 (S.D. Fla. Sept. 26, 2025) (dismissing defamation claim against town council member when he made defamatory statements about plaintiff to the town council); Grady v. Scaffe, 435 So. 2d 954, 955 (Fla. 2d DCA 1983) (affirming dismissal *with prejudice* of defamation complaint against county commissioner who made defamatory remarks at county commission meeting on absolute privilege grounds).[2][3]

---

[2] As to the striking of Plaintiff's punitive damages claim, Blumstein relies on the arguments set forth in the Joint Motion to Dismiss. [ECF No. 39 at p. 31 n. 6].

[3] As a final matter, Plaintiff requests leave to amend in his Response. [ECF No. 43 at p. 30]. This request is improper, for "a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion." Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc., No. 5:17-CV-187-OC-34PRL, 2017 WL 9938032, at *1 (M.D. Fla. July 20, 2017); see Newton v. Florida, 895 F.3d 1270, 1277 (11th Cir. 2018) (request for leave to amend is not properly raised if embedded in a memorandum in

**II. The Plaintiff's Claims Against the Town Fail[4]**

    **A.   Plaintiff Has Not Identified a Formal Policy or Widespread Custom**

The allegations in Plaintiff's Amended Complaint are wholly conclusory and do not identify any widespread practice, pervasive custom, by which the Town violated Plaintiff's constitutional rights. First, the Plaintiff's response attempts to collapse the Town's Monell theory because Doce was a Policymaker.[5] By alleging that Doce is the alleged Town Policymaker she must allege facts to support her conclusory assertion and she does not. It is not clear as to what policy the Plaintiff attempts to identify Doce as the policymaker for. As a matter of law, the Chief does not have policymaking authority. Next, Doce could not make the decision to terminate the Plaintiff with final legal effect. Robert v. City of Boca Raton, Florida, No. 18-81227-CIV, 2021 WL 4517475, at *13 (S.D. Fla. Sept. 30, 2021), aff'd, No. 21-13779, 2024 WL 3066604 (11th Cir. June 20, 2024) (holding the City Manager was the final policy maker and therefore was the only official whose decision could subject the City to § 1983 liability); see Kamensky v. Dean, 148 F. App'x 878, 880 (11th Cir. 2005) ("A governmental employee is considered a 'final policymaker' for governmental liability purposes 'only if his decisions have legal effect without further action by the governing body, and if the governing body lacks the power to reverse the ... employee's

---

opposition to a motion to dismiss). Moreover, the request should be denied for failure to confer with the parties on the leave for amendment. S.D. Fla. L.R. 7.1(2).

[4] The Plaintiff's Response to the Defendants Joint Motion to Dismiss is lengthy and therefore due to page constraints, the Town relies upon its arguments in its Joint Motion to Dismiss and addresses the salient issues in its Reply.

[5] The Plaintiff does not allege in her Amended Complaint that the Town's policy is discriminatory or retaliatory because she cannot, the Town has a policy which includes an Anti-Discrimination, Harassment and Other Complaint Policy, specifically stating "Discrimination and harassment are illegal and will not be tolerated." See attached Exhibit "A." Additionally, the Plaintiff's attempt to point at the Town Charter stating that Doce was appointed by the Town Manager to remove or appoint subordinates conflates the issues.

decision.' " (omission in original) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1292 (11th Cir. 2004)). Third, the Plaintiff does not allege that Doce created a discriminatory or retaliatory policy that became a Town custom or Policy. Fourth, the Plaintiff alleges that Oswaldo Ramos ("Ramos") "did not follow the Town or the City of Miami Beach protocol for internal affairs investigations."[ECF No. 35 ¶71]. The Plaintiff identifies no policy that the Town followed consistent with discrimination or retaliation.  See McCants v. City of Mobile, 752 F. App'x 744, 748 (11th Cir. 2018) (affirming dismissal of claims against city because plaintiffs "fail to support their municipal liability claims with anything other than 'a formulaic recitation of the elements of the cause of action.'").

To prove § 1983 liability against a municipality based on unofficial custom, the Plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Heath v. Miami-Dade Cnty., 736 F. Supp. 3d 1149, 1159–60 (S.D. Fla. 2024) (quoting Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991)). In other words, the unofficial custom must be "so pervasive" as to constitute the "functional equivalent" of an official policy, and an isolated incident is insufficient to rise to that level. Id. (citing Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1330 n.6 (11th Cir. 2003)). The Plaintiff's allegations do not plausibly demonstrate that the Town's conduct constituted the adoption of anything other than its Anti-Discrimination policy. Cf. Heath, 736 F. Supp. 3d at 1160 (finding plaintiff plausibly alleged a § 1983 claim based on defendant's "years-long, de facto, and unwritten policy of deliberate indifference to the serious medical needs of inmates, like [the plaintiff]."). Therefore, the Plaintiff cannot demonstrate there is an unofficial custom or policy that the Town has implemented or adopted that is discriminatory or retaliatory based on race. "To have final policy making authority

10

means the government agent possess 'final authority to establish municipal policy with respect to the action ordered.'" <u>Betts v. Boone Cnty., Illinois,</u> 178 F.4th 1051, 1056 (7th Cir. 2026) (citing <u>Pembaur v. City of Cincinnati,</u> 475 U.S. 469, 481 (1986)). Doce clearly did not have policy making authority.

**B.   Plaintiff Attempts to Use Doce as a Final Decisionmaker**

The Plaintiff advances a new theory in support of municipal liability that Doce is in fact the Final Decisionmaker. However, she does not identify which adverse action he is the decision maker for. The Plaintiff cannot allege that Doce was the Final Decisionmaker for her termination because she specifically alleges that the Town Manager, Peter Jankowski, terminated her employment. The Plaintiff claims in her response that "the Town Charter expressly permits the Town Manager to delegate firing and hiring authority to department heads, including the Chief of Police." [ECF No. 43 at p. 9]. Omitted from the Plaintiff's Amended Complaint is whether Doce has the authority "to establish municipal policy with respect to the action ordered." Although, the Plaintiff's Amended Complaint conclusively asserts that Doce was "both a decisionmaker and policymaker." [ECF No. 35 at ¶6].  She does not sufficiently allege facts to support this theory. Instead, the Amended Complaint affirmatively alleges that the Town operated under a "commissioner-manager system of local government under which the Town Manager has the final decision and policymaking authority." [ECF No. 35 at ¶5]. Jankowski was the Town Manager at the time of the Plaintiff's termination. The Plaintiff does not allege that any of the Town's decisionmakers, Jankowski, the Town Commission or the Personnel Appeals Board, were tainted because of discrimination or retaliation.

**C.   The Ratification Theory Fails Because Plaintiff Has Not Alleged the Town Adopted Any Discriminatory Basis**

The Plaintiff's ratification theory fails because there is no unconstitutional basis for the challenged decision as to the actual, final decisionmaker, Jankowski. Municipal liability on a ratification theory requires that the final policymaker adopt not only the decision itself, but also, the unconstitutional basis for it. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). The Plaintiff's Amended Complaint does not allege any facts that Jankowski, the Personnel Appeals Board, or the Town Commission were aware of, endorsed or adopted any racially discriminatory or retaliatory motive toward the Plaintiff. In contrast, the Amended Complaint alleges that Jankowski's termination decision was predicated on the Ramos Report, an investigation conducted by an independent outside investigator at the City of Miami Beach Police Department whom the Town did not control. [ECF No. 35 at ¶¶ 57, 78].

> Specifically, the Plaintiff's Amended Complaint alleges that the Ramos Report generated in connection with SPD Case No. 2024-2092, and on behalf of the Town **used it as the basis to find** Mrs. Goldstein 'in violation of the Town's Compensatory Leave Policy, that she divulged sensitive, privileged information to the public that she could only have only learned from her employment with the Town and role with SPD, and that she did so without authorization, and 'oversight of the Parking Program referenced in the Report to be at least a neglect of duty, incompetence, the result of poor judgment, and/or a violation of Town Code, it's policies and procedures.'

> [ECF No. 35 ¶78].

Although the Plaintiff attempts to suggest that the Ramos Report and investigation were tainted, the Plaintiff does not dispute the reasons contained within the report. It is undisputed conduct that Ramos found to have occurred, for example as it pertained to banking the police officers time, there is no allegation refuting that she was aware of it. The idea that Ramos' Report is tainted is unsupported by the Plaintiff's Amended Complaint. The Plaintiff does not allege that the actual findings are tainted in any material way.

12

Nowhere does the Amended Complaint plead that Jankowski's termination decision was based on anything other than the Ramos Report. The Plaintiff does not allege that he was aware of any ulterior race discrimination motive or even that Doce provided the Ramos Report to him. The Plaintiff does not allege that Jankowski or the Town adopted any decision because of race or retaliation but is based on actual factual findings. The Ramos Report listed several non-discriminatory and non-retaliatory reasons as to the Plaintiff's violation of Town policy.[6]

The Plaintiff cites Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016), which supports the Town's position that:

> A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). See Monell, 436 U.S. at 661, 694–95, 98 S.Ct. 2018; McKusick v. City of Melbourne, 96 F.3d 478, 483 (11th Cir.1996). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. See Bd. of Cty. Commissioners v. Brown, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 n. 11 (11th Cir.1991). And a municipality can be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir.2002).

Here, as detailed above, none of the options apply and therefore municipal liability pursuant to Monell cannot attach. The Plaintiff's claims for (1) Race Discrimination via § 1981 via § 1983 against the Town, (2) Race Discrimination in violation of the Equal Protection Clause and (3) Retaliation in violation of 42 U.S.C. § 1981 via § 1983 against the Town fail as a matter of law.[7]

---

[6] Additionally, the Plaintiff relies on Freeman v. Jupiter Inlet Colony, 778 F. Supp. 3d 1326 (S.D. Fla. 2025), to support a cat's paw theory on the basis of a summary judgment motion. Here, Doce did not use Jankowski as a "mere conduit" because the Miami Beach Police Department conducted the investigation and created the report.

[7] The Plaintiff cites to McCarthy v. City of Cordele, 111 F.4th 1141 (11th Cir. 2024) stating that it reverses dismissal on both § 1981 and Equal Protection claim through § 1983 against a municipal

**D.   Plaintiff's Response Confirms Adequate State Remedies Existed and Were Used Successfully**

The Fourteenth Amendment requires that the Plaintiff have the opportunity to tell her side of the story. The State of Florida framework gave the Plaintiff (1) a hearing before the Personnel Appeals Board, (2) a second hearing before the Personnel Appeals Board, (3) an opportunity to appeal the decision of the Personnel Appeals Board, and (4) the opportunity to move for a rehearing on that decision. The State of Florida provided all that it is required to do. The Plaintiff's Response confirms that adequate existed in the multiple Personnel Appeal Board hearings and the certiorari review before the Miami-Dade Circuit Court. The Plaintiff's focal argument is that because the Town has not yet complied with the Circuit Court's mandate, the state remedy was rendered "illusory." [ECF No. 43 at p. 22]. The relevant due process inquiry asks only whether the State provided, or would have provided, an adequate process to remedy the alleged wrongful termination. The State has and the Plaintiff still has post appeal opportunities. The relevant inquiry is not whether the ultimate outcome was to Plaintiff's satisfaction or whether compliance has been completed. See Cotton v. Jackson, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (citing McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994)) ("Only when the state refuses to provide a sufficient remedy to remedy the procedural deprivation does a constitutional violation actionable under Section 1983 arise."). Plaintiff's own allegations establish that the Miami-Dade Circuit Court

---

employer. However, the citation is incorrect because the claims are for a Section 1981 race discrimination claim and a Title VII claim not an Equal Protection claim. Furthermore, the court in Santillana v. Florida State Court Sys., Eighteenth Judicial Circuit, Seminole Cnty. Courts, No. 6:09-CV-2095-ORL-19, 2010 WL 6774486 at *3 (M.D. Fla. June 4, 2010) found the Equal Protection claim and Section 1983 claim duplicative and dismissed the Equal Protection claim on the Defendants motion to dismiss. The court held that the "two claims assert the same factual basis for relief. In each claim, the defendants allegedly elevated the plaintiff and terminated the plaintiff because the plaintiff was white and less likely to bring a racial discrimination claim." Id. Therefore, the Plaintiff's argument that there is no law to support duplicative claims fails.

accepted jurisdiction, reviewed the merits, and quashed the Personnel Appeals Board decision [ECF No. 35 at ¶¶261-264, 268-269].[8]

If the Plaintiff is claiming that that the Town's compliance with the mandate is pending, it is a matter for enforcement in the state court that issued it. It is not the basis for a separate federal due process claim because she still has Florida state court remedies to vindicate her alleged wrongful termination. "We, o[f] course, have authority to take corrective action where we find the trial court has departed from the directions of our mandate and opinion." Dep't of Transp. v. Burnette, 399 So. 2d 51, 54 (Fla. 1st DCA 1981) E.g., Robinson v. Gale, 380 So.2d 513 (Fla.3d DCA 1980); Modine Manufacturing Co. v. ABC Radiator, Inc., 367 So.2d 232 (Fla.3d DCA 1979). Additionally, "[t]he Constitution does not create property interests." Leis v. Flynt, 439 U.S 438, 441 (1979). Rather an 'independent source such as state law' creates those rights, and the Constitution 'extends various procedural safeguards.'" Id. (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). See also Leis v. Flynt, 439 U.S. 438, 441 (1979) ("[t]he constitution does not create property interests. Rather it extends various procedural safeguards to certain interests 'that stem from an independent source such as state law.").

See Young v. Akal, 985 F. Supp. 2d 785, 804 (W.D. La. 2013) ("[I]t is clear a claim of deprivation of procedural due process cannot proceed because the plaintiffs have adequate post-deprivation state tort remedies to pursue a recovery for their alleged injuries, that is, plaintiffs may bring state tort action against the deputies in quest to attempt to recover for the injuries they allege.") See McKinney, 20 F. 3d at 1563 (holding that, in the context of a property deprivation, a

---

[8] The Plaintiff's reliance on Hollant v. City of N. Miami, Florida, No. 17-24197-CIV, 2018 WL 3448096 (S.D. Fla. July 17, 2018), is misplaced because the court did not rely upon a proceeding through the Miami-Dade Circuit Court and instead relies upon a predetermination hearing. There is a distinct difference because the Plaintiff received multiple hearings on the merits of her case and received a decision.

15

plaintiff has not suffered a violation of his or her procedural due process rights unless and until the State of Florida refuses to make available sufficient means to remedy the deprivation.) Therefore, the Plaintiff cannot prevail on a claim for Property Due Process against the Defendants.

### E.  The Plaintiff Received a Meaningful Name Clearing Hearing

The State of Florida was open to hearing the Plaintiff's side of the story and therefore the Plaintiff meaningful opportunity for a name-clearing hearing. The Plaintiff cannot prevail over her deprivation of liberty interest claim because she cannot meet the sixth element. The Plaintiff continues to have post appeal enforcement rights. She was afforded the opportunity to be heard at both the Personnel Appeals Board hearings and an opportunity at the Miami Dade Circuit Court. "Affording an employee the opportunity to respond after being confronted with the charges is all that pretermination due process requires of the employer." Harrison v. Wille, 132 F.3d 679, 684 (11th Cir. 1998), as amended (Apr. 1, 1998) (quoting Buckner v. City of Highland Park, 901 F.2d 491, 496 (6th Cir.1990). "The fact that [Plaintiff] had to choose whether to talk or to remain silent offends neither the [F]ifth nor the [F]ourteenth [A]mendment." Gniotek v. City of Philadelphia, 808 F.2d 241, 245 (3d Cir.1986). In cases that involve liberty interests, the courts "have required only that the claimant be accorded notice of the charges against him and an opportunity 'to support his allegations by argument however brief, and, if need be, by proof, however informal.'" Campbell v. Pierce Cnty., Ga. By & Through Bd. of Com'rs of Pierce Cnty., 741 F.2d 1342, 1345 (11th Cir. 1984) (quoting Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 16 n. 17, 98 (1978)).

In Ratlieff v. City of Fort Lauderdale, 748 F. Supp. 3d 1202 (S.D. Fla. 2024), the court held that the plaintiff failed to provide any evidence regarding the inadequacy of Florida process to remedy any conceivable deprivation of her liberty, she has failed to establish a genuine issue of

16

material fact as to the third element of a § 1983 procedural due process claim. Since the purpose of the Personnel Appeal Boards hearings was to give the Plaintiff an opportunity to clear her name, it does not matter if the investigation leading to the termination of her job was fair or if the members of the hearing panel were not impartial. Dressler v. Jenne, 87 F. Supp. 2d 1308 (S.D. Fla. 2000) See Campbell v. Pierce County, Georgia, 741 F.2d 1342, 1346 (11th Cir.1984). ("As to appellant's charge that the composition of the tribunal rendered impartiality impossible, we agree with the district court that the nature of the hearing resolves this question. Because the purpose of the hearing was not to reevaluate appellant's termination but to allow her to clear her name, the fact that the tribunal was composed of members of the Board of Commissioners did not impair its ability to preside in an acceptably impartial manner."). The Plaintiff had the opportunity to clear her name through two Personnel Appeals Board Hearings, the Circuit Court of Miami Dade County Circuit Court and still has post enforcement rights. She cannot satisfy the sixth element of her claim. Therefore, the Plaintiff cannot prevail on her liberty interest claim.

**III.     The Claims Against Doce Cannot Withstand Dismissal**

   **A.     Doce Is Not an Official Decisionmaker For Purposes of Individual Liability**

Plaintiff's Response does not dispute that the Doce was not the decisionmaker who handled Plaintiff's termination and instead seeks to make new allegations not in the Amended Complaint.

As an initial matter, Plaintiff looks to Art. III, Sec. 25 of the Town's Charter to argue that the Town Manager "may authorize head of a department or office to appoint and remove subordinates…" and this section alone makes Doce a final decisionmaker. Importantly, this section and the others cited, on their face, only apply in specific circumstances when the Town Manager has actually "delegated the power." Here, Plaintiff's Amended Complaint is devoid of any allegations whatsoever that Doce was delegated any such power and instead Plaintiff's allegations

17

make clear that Doce was not delegated such authority as Plaintiff alleges the termination was completed by the Jankowski and the Personnel Appeal Board. Kamensky v. Dean, 148 Fed. Appx. 878 (11th Cir. 2005) (holding that there is no individual liability as a "decisionmaker" where the individual merely recommends termination rather than actually terminating the employee).

Similarly, Plaintiff's Response cites to no caselaw for her proposition that decision making authority can be established against someone who does not "immediately effectuate the termination" as is required. Instead, here Plaintiff's allegations make clear that Doce had no such authority. Broberg v. Gerrard, No. 09–CV–82279, 2010 WL 2869539, at *3 (S.D. Fla. July 20, 2010) (holding that someone without the power to immediately terminate cannot be a decision marker); Sanders v. City of Selma, No. Civ.A.04–753 B, 2005 WL 3411342, at *4 (S.D. Ala. Dec.13, 2005) (city council, rather than mayor, was the decisionmaker, even if council rubber-stamped mayor's recommendation).

Next, in Plaintiff's response, Plaintiff assert for the first time that they are proceeding under a "cat's paw" theory to impose individual liability on Doce. Besides, Plaintiff making no such allegations to support such a theory in the Amended Complaint, a review of the governing caselaw, shows this theory similarly fails. As an initial matter, Plaintiff's Amended Complaint fails to make any allegations that either Jankowski and the Personnel Appeal Board merely "rubber stamped" the decision. Specifically, the Eleventh Circuit has held that Plaintiff is required to plead allegations that the independence of the terminating entity was undermined. Lontoc v. School Board of Palm Beach, No. 24-12386, 2025 WL 3000545, at *5 (11th Cir. Oct. 27, 2025). Additionally, Plaintiff fails to make any allegations that the actual process used by Jankowski and the Personnel Appeal Board was deficient, as is also required. Durance v. School Board of Glades Cnty, Fla., Case No.: 2:25-cv-137-SPC-NPM, 2025 WL 3071382, at *4 (M.D. Fla. Nov. 4, 2025).

18

Also, though again absent here, Plaintiff must make allegations of a direct and actual causal connection between the alleged discriminatory animus and the final decision. Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999). Lastly, Plaintiff's Response cites various cases that are clearly distinguishable. Staub v. Proctor Hospital, 562 U.S. 411 (2011) (not dealing with individual liability under a Cat's Paw theory); Jenkins v. Nell, 26 F.4th 1243 (11th Cir. 2022) (not discussing the Cat's Paw theory at all); Wright v. Southland Corp., 187 F.3d 1287, 1304 n.20 (11th Cir. 1999) (not dealing with individual liability under a Cat's Paw theory).

**B.      Doce is entitled to Qualified Immunity on Plaintiff's Claims**

Next, in Plaintiff's Response, Plaintiff seeks to overcome that fact that Doce is not a decisionmaker for purposes of qualified immunity by claiming he "personally participated" in the constitutional violation of Plaintiff's termination. As an initial matter, Plaintiff's Response does not dispute that Doce was acting within his discretionary authority. As noted above, the caselaw cited by Plaintiff in Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003) and in Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004) is distinguishable as in both cases the individual actions were in of themselves the direct cause of the constitutional violations complained of. Here, there are no allegations that the actions of Doce was both the actual and proximate cause of the constitutional violations complained of, i.e. Plaintiff's termination. See Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Zuniga v. City of Groveland, Case No: 5:23 cv-351-PRL, 2023 WL 5573962, at *4 (M.D. Fla. Aug. 29, 2023).

Additionally, Plaintiff's Response fails to address how the specific actions of Doce violate a clearly established law. For a right to be clearly established, it must be "sufficiently clear that every reasonable official would understand that what he is doing" violates it. District of Columbia v. Wesby, 583 U.S. 48, 62–63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018). "What's more, the "nature

19

of particular conduct" is the key inquiry." <u>Foster v. Echols County School District</u>, 169 F. 4th 1291 (11th Cir. 2026) (internal citation omitted). Here, Plaintiff does not allege how any act of Doce is in and of itself a violation of clearly establish law. As a result, Doce is clearly entitled to qualified immunity.

**WHEREFORE**, Defendants, TOWN OF SURFSIDE, ENRIQUE DOCE, and MARK BLUMSTEIN's, respectfully request entry of an order dismissing the Amended Complaint, together with any other further relief deemed just and proper.

Respectfully submitted,

*/s/Mariela E. Tkacik, Esq.*
Mariela E. Tkacik
**Counsel for Defendant Town of Surfside**

*Alandra Tejedor, Esq.*
Alandra Tejedor
**Counsel for Defendant Mark Blumstein**

*Patricia M. Rego Chapman, Esq*.
Patricia M. Rego Chapman
**Counsel for Defendant Enrique Doce**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 22nd day of July, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jeffrey L. Hochman*
Jeffrey L. Hochman
Fla. Bar. No. 902098

*/s/ Mariela E. Tkacik*
Mariela E. Tkacik
Fla. Bar. No. 1030433

Johnson, Anselmo, Murdoch,
Burke, Piper & Hochman, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, Florida 33304
Tel: (954) 463-0100
Fax: (954) 463-2444
hochman@jambg.com
metkacik@jambg.com
cardona@jambg.com
finley@jambg.com
cisaac@jambg.com

21

**SERVICE LIST**

**Brian H. Pollock, Esq.**
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel: 305-230-4884
brian@fairlawattorney.com
*Counsel for Plaintiff*

**Douglas T. Noah, Esq.**
**Patricia M. Rego Chapman, Esq.**
Dean Ringers et al
Capital Plaza I
201 East Pine Street, Suite 1200
Orlando, FL 32801
Tel: (407) 422-4310
dnoah@drml-law.com
PChapman@drml-law.com
*Counsel for Co-Defendant Enrique Doce*

**Lourdes Espino Wydler, Esq.**
Wydler Law
1550 Madruga Ave., Suite 400
Coral Gables, FL 33146
Office: 305-446-5528
lew@wydlerlaw.com

**Jeffrey L. Hochman, Esq.**
**Mariela E. Tkacik, Esq.**
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Ste. 1000
Ft. Lauderdale, FL 33304
Tel: 954-463-0100
hochman@jambg.com
METkacik@jambg.com
cardona@jambg.com
finley@jambg.com
cisaac@jambg.com
*Counsel for Defendant Town of Surfside*